Daniel Low, SBN 218387
dlow@kotchen.com
**KOTCHEN & LOW LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
Fax: (202) 280-1128

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTY PALMER, VARTAN PIROUMIAN, and EDWARD COX,<br><br>Plaintiffs,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and, COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION,<br><br>Defendants. | Case No. 2:17-cv-06848<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hon. Dolly M. Gee<br><br><u>Hearing</u><br>Date: December 15, 2017<br>Time: 9:30 a.m.<br>Place: 350 West 1st St., L.A., CA 90012<br>Courtroom 8C |

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO COGNIZANT'S MOTION TO DISMISS ........ 1

I. FACTUAL ALLEGATIONS ........ 1

II. LEGAL STANDARD ........ 5

III. ARGUMENT ........ 6

A. Plaintiffs Properly Allege Race Discrimination. ........ 6

B. Plaintiffs Have Standing To Assert § 1981 Claims, And Cognizant's "Standing" Argument Is A Premature Challenge To Class Certification. ........ 9

C. Plaintiffs Have Standing To Seek Injunctive Relief, As Each Would Likely Seek Employment With Cognizant If Its Discriminatory Practices Ended. ........ 13

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

## Cases


*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975) ............ 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............ 5, 6

*Benigni v. City of Hemet*, 879 F.2d 473 (9th Cir. 1988) ............ 8

*Bennett v. Schmidt*, 153 F.3d 516 (7th Cir. 1998) ............ 6

*Bernhardt v. Cnty. of L.A.*, 279 F.3d 862 (9th Cir. 2002) ............ 5, 6

*Bertoli v. Cascade Precision, Inc.*, No. CV 03-1698, 2004 U.S. Dist. LEXIS 8211 (D. Or. Apr. 14, 2004) ............ 8

*Blyden v. Navient Corp.*, No. 14-CV-02456, 2015 U.S. Dist. LEXIS 96824 (C.D. Cal. July 23, 2015) ............ 11

*Cormier v. All Am. Asphalt*, 458 F. App'x 620 (9th Cir. 2011) ............ 5

*Criswell v. W. Airlines*, 709 F.2d 544 (9th Cir. 1983) ............ 15

*De Los Santos v. Panda Express, Inc.*, No. 10-1370, 2010 U.S. Dist. LEXIS 127788 (N.D. Cal. Dec. 3, 2010) ............ 11

*Erickson v. Pardus*, 551 U.S. 89 (2007) ............ 5, 6

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 929 (N.D. Cal. 2008) ............ 9

*Fonseca v. Sysco Food Serv. of Az., Inc.*, 374 F.3d 840 (9th Cir. 2004) ............ 8

*Freitag v. Ayers*, 463 F.3d 838 (9th Cir. 2006) ............ 14

*Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147 (1982) ............ 12

*Graham v. FEMA*, 149 F.3d 997 (9th Cir. 1998) ............ 5

*Gratz v. Bollinger*, 539 U.S. 244 (2003) ............ 12, 14

*Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49 (1987) ............ 14

*Heldt v. Tata Consultancy Servs.*, 132 F. Supp. 3d 1185 (N.D. Cal. 2015) ....... passim

*HomeAway Inc. v. San Francisco*, 2015 U.S. Dist. LEXIS 9912 (N.D. Cal. Jan. 27, 2015) ........ 9

*In re VeriSign, Inc.*, No. 02-02270, 2005 U.S. Dist. LEXIS 10439 (N.D. Cal. Jan. 13, 2005) ........ 10

*Johnson v. GMRI, Inc.*, No. CV F 07-283, 2007 U.S. Dist. LEXIS 66058 (E.D. Cal. Aug. 27, 2007) ........ 15

*Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975) ........ 14

*Koehler v. Infosys Techs., Ltd¸* 107 F. Supp. 3d 940 (E.D. Wis. 2015) ........ 7

*Labriola v. Bank of Am., N.A.*, No. C 12-79 CW, 2012 U.S. Dist. LEXIS 65853 (N.D. Cal. May 10, 2012) ........ 13, 14

*Logan v. Union Sec. Ins. Co.*, No. 14-CV-1174, 2015 U.S. Dist. LEXIS 79986 (C.D. Cal. March 31, 2015) ........ 11

*Maduka v. Sunrise Hosp.*, 375 F.3d 909 (9th Cir. 2004) ........ 5

*Magana v. N. Mariana Islands*, 107 F.3d 1436 (9th Cir. 1997) ........ 8

*Manatt v. Bank of Am., NA*, 339 F.3d 792 (9th Cir. 2003) ........ 8

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ........ 13

*Nanty v. Barrows Co.*, 660 F.2d 1327 (9th Cir. 1981) ........ 13, 14

*O'Shea v. Littleton* 414 U.S. 488 (1974) ........ 11

*Sanders v. Sodexo, Inc.*, No. 15-cv-00371, 2015 U.S. Dist. LEXIS 96073 (D. Nev. July 20, 2015) ........ 9

*St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604 (1987) ........ 8

*Stromberg v. Ocwen Loan Servicing, LLC*, No. 15-cv-4719-JST, 2017 U.S. Dist. LEXIS 96738 (N.D. Cal. June 22, 2017) ........ 14

*Table Bluff Reservation v. Philip Morris, Inc.*, 256 F.3d 879 (9th Cir. 2001) ........ 13

*Vildosola v. Hornbeak*, No. CV 08-6590-VAP (JEM), 2010 U.S. Dist. LEXIS 35816 (C.D. Cal. Feb. 25, 2010) ........ 14

*Vivid Entm't, LLC v. Fielding*, 965 F. Supp. 2d 1113 (C.D. Cal. 2013) ........ 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........ 12

*Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033 (9th Cir. 2006)........ 13, 14

*Warth v. Seldin*. 422 U.S. 490 (1975) ........ 11, 13

*Waters v. Heublein, Inc.*, 547 F.2d 466 (9th Cir. 1976)........ 10

*Wofford v. Safeway Stores*, 78 F.R.D. 460 (N.D. Cal. 1978)........ 15

**Statutes**

42 U.S.C. § 1981 ........ passim

**Rules**

Fed. R. Civ. P. 12 ........ 8

Fed. R. Civ. P. 8 ........ 5

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO COGNIZANT'S MOTION TO DISMISS

Defendants' motion to dismiss (Dkt. #16) should be denied in its entirety. First, Defendants Cognizant Technology Solutions Corporation and Cognizant Technology Solutions U.S. Corporation (collectively "Cognizant") argue that Plaintiffs do not allege racial discrimination. Cognizant is mistaken. *See* Compl. ¶¶ 1-2, 16-24, 26-32, 34-49, 51-56, 67-71 (Dkt. #1) (alleging racial discrimination). Second, Cognizant argues that Plaintiffs may not represent a class that includes applicants who were not hired, but this is a class certification issue inappropriate for resolution now. Third, injunctive relief is appropriate even though the named Plaintiffs are former employees, as they are likely to reapply to Cognizant if Cognizant's discriminatory conduct is enjoined.

## I. FACTUAL ALLEGATIONS

*Summary.* As alleged in the complaint, Cognizant operates a company-wide discriminatory scheme throughout its U.S. operations, favoring South Asians in hiring, promotion, and termination, in violation of the 42 U.S.C. § 1981. Compl. ¶¶ 1-2. Cognizant provides IT services to companies in the United States. *Id.* ¶ 15. Cognizant operates approximately 37 offices, and employs about 40,000 individuals, in the United States. *Id.* ¶ 14. Of these 40,000 individuals, 75% or more are South Asian, despite South Asians making up only about 1-2% of the U.S. population and about 12% of the U.S. IT industry. *Id.* ¶ 24.

*Cognizant's Business Model and Staffing System.* Cognizant contracts with clients to provide IT-related services. *Id.* ¶ 15. Once it secures a contract, it hires individuals to staff positions at the client site. *Id.* Both external applicants and current employees must apply and interview to be selected for these positions. *Id.* ¶¶ 15, 20. Employees not currently assigned to a project are placed in Cognizant's Corporate Deployment Pool, which is referred to as being placed on the "bench." *Id.* ¶ 15. These individuals must locate and apply to open positions, just as external applicants do. *Id.*

Individuals who remain on the bench for more than about 5 weeks are terminated. *Id.* ¶ 23.

*Cognizant's Discriminatory Scheme.* Cognizant prefers to hire, promote, and retain South Asian individuals for U.S. positions, and has instituted four practices to achieve a predominantly South Asian U.S. workforce. First, Cognizant secures work visas for South Asians, the vast majority of whom reside in India. *Id.* ¶¶ 16-17. Each year, Cognizant applies for tens of thousands of visas. *Id.* ¶ 19 (explaining that in 2016, for example, Cognizant obtained over 21,000 H-1B visas through the visa lottery – almost a third of all available visas). Once visas are approved for South Asians, these "visa ready" individuals must apply and interview for open positions in the U.S. – just as non-South Asians are required to do – and are given preference for open positions over non-South Asians. *Id.* ¶ 20. As a result, non-South Asian applicants are passed over for open positions, including non-South Asian benched employees and prospective employees who have applied to Cognizant. *Id.*

Second, in addition to hiring for U.S. positions visa-ready South Asians located in India, Cognizant also prefers to hire South Asians located in the U.S. *Id.* ¶ 21. Within the U.S., Cognizant relies on external recruiters to supply it with South Asian candidates. *Id.* Likewise, Cognizant's internal recruiters prefer South Asians over non-South Asians. *Id.* As a result, South Asians located in the U.S. are hired at disproportionately high rates for U.S. positions, compared with non-South Asians. *Id.*

Third, Cognizant disfavors non-South Asians in promotions. *Id.* ¶ 22. Each year, employees receive performance review grades from 1 to 5. *Id.* South Asians are consistently awarded higher grades. *Id.* Because promotions are tied to performance review scores, South Asians receive promotions more frequently than non-South Asians. *Id.*

Fourth, Cognizant fires non-South Asians at disproportionately high rates. *Id.* ¶ 23. Because South Asians are given preference when Cognizant fills open positions, non-South Asian individuals are regularly relegated to the bench, unable to secure a

new position. *Id.* Individuals who spend more than about five weeks on the bench are terminated. *Id.* As a result, non-South Asians are terminated at disproportionately high rates compared with South Asians. *Id.*

The end result of Cognizant's discriminatory scheme is a workforce in the U.S. that is 75% or more South Asian. *Id.* ¶ 24.

*The Named Plaintiffs.* As alleged in the Complaint, the three named Plaintiffs each experienced discrimination in a manner representative of Cognizant's discriminatory scheme. Named Plaintiff Christy Palmer was hired by Cognizant in December 2012 and worked for three years in a management-level role overseeing client projects. *Id.* ¶ 25. During her tenure with Cognizant, Ms. Palmer was removed from her position servicing Cognizant clients on at least two occasions and replaced with South Asian workers. *Id.* ¶ 26. In her manager-level role, Ms. Palmer witnessed Cognizant's preference for South Asians first hand. For instance, Ms. Palmer was instructed by Cognizant to replace non-South Asian employees with South Asian workers in positions servicing Cognizant clients, and Cognizant routinely provided Ms. Palmer with South Asian profiles when she asked for additional resources to staff open positions in the U.S. *Id.* ¶ 28.

Despite Ms. Palmer's strong performance throughout her tenure with Cognizant, she repeatedly received unjustifiably low performance ratings from her South Asian managers, and never received a promotion at Cognizant. *Id.* ¶ 29. Ms. Palmer was also excluded from all-team meetings, and even told to "shut the f*ck up" by a South Asian Director when contributing to a business-related discussion in 2015. *Id.* ¶ 30. As a result of Cognizant's discriminatory conduct, Ms. Palmer was forced to resign from the company on December 9, 2016. *Id.* ¶ 32.

Named Plaintiff Vartan Piroumian, an Enterprise Architect with over thirty years of professional experience, was also the victim of repeated discriminatory conduct by Cognizant during his six-year tenure with the company. *Id.* ¶¶ 33, 48. On at least nine occasions, Mr. Piroumian was prematurely removed from positions

servicing Cognizant clients, replaced with less qualified South Asian employees, and relegated to the bench. *Id.* ¶¶ 34, 35, 38, 42. While on the bench, Mr. Piroumian was forced to apply to and interview for open positions within Cognizant, yet on multiple occasions, Mr. Piroumian was rejected in favor of a South Asian worker. *Id.* ¶¶ 35-37. In July 2016, when he was assigned to a client project, his South Asian manager, Mr. Roy, refused to provide him with work to perform. *Id.*¶ 41.

Mr. Piroumian repeatedly reported Cognizant's discriminatory conduct to Mr. Roy, but no action was taken to address his complaints, and Mr. Roy made no effort to escalate Mr. Piroumian's concerns to the appropriate Human Resources manager. *Id.* ¶¶ 38-40, 42-43. Mr. Roy also gave Mr. Piroumian unjustifiably low performance appraisals, and, as a result, Mr. Piroumian never received a promotion at Cognizant. *Id.* ¶ 45. In June 2017, Mr. Piroumian was placed on the bench and discussed with Cognizant just two open positions over a six-week benching period. *Id.* ¶¶ 46, 48. However, these discussions were cursory, and Mr. Piroumian was never provided with any significant details regarding the open positions and was not invited to interview for the available roles. *Id.* ¶ 47. Cognizant terminated Mr. Piroumian's employment on August 2, 2017. *Id.* ¶ 48.

Named Plaintiff Edward Cox worked for Cognizant from January 2014 to April 2017 as an Infrastructure Engagement Manager / Program Manager (a senior level, director role). *Id.* ¶¶ 50, 56. Mr. Cox reported to three different South Asian managers during his tenure with Cognizant. *Id.* ¶¶ 51-52. These managers talked over him in client-facing meetings, excluded Mr. Cox from business-related conversations by speaking in Hindi, and took little interest in Mr. Cox's work. *Id.* Moreover, Mr. Cox did not receive a single performance review or any regular feedback from his managers during his employment with Cognizant, and subsequently, Mr. Cox was precluded from receiving a raise or a promotion while at the company. *Id.* ¶¶ 52-53. Similar to Ms. Palmer and Mr. Piroumian, Mr. Cox was subject to a hostile work environment. *Id.* ¶ 54.

In January 2017, Mr. Cox was placed on the bench. *Id.* ¶ 55. Despite interviewing for multiple open roles within Cognizant, Mr. Cox was not selected for a single position, and was told by Cognizant that he was not "vetted" or qualified for roles that he had performed well the year prior. *Id*. On April 3, 2017, Cognizant terminated Mr. Cox's employment. *Id.* ¶ 56.

## II. LEGAL STANDARD

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bernhardt v. Cnty. of L.A.*, 279 F.3d 862, 867 (9th Cir. 2002); Defs.' Mem. at 2 n.1. The court must "'construe the complaint in favor of the complaining party.'" *Bernhardt*, 279 F.3d at 867 (quoting *Graham v. FEMA*, 149 F.3d 997, 1001 (9th Cir. 1998)); *Heldt v. Tata Consultancy Servs.*, 132 F. Supp. 3d 1185, 1189 (N.D. Cal. 2015) ("All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff") (citing *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011)). "[A] complaint asserting a claim for employment discrimination pursuant to 42 U.S.C. § 1981 'must contain only a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002));[1] *accord* Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). A motion to dismiss for failure to state a claim should be denied if a plaintiff

---

[1] "*Swierkiewicz* is still good law after *Twombly* and *Iqbal*." *Cormier v. All Am. Asphalt*, 458 F. App'x 620, 620 (9th Cir. 2011) (citing *Starr v. Baca*, 652 F.3d 1202, 1213-16 (9th Cir. 2011)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 569-70 (2007) (explaining that the Court's "analysis [did] not run counter to *Swierkiewicz*").

alleges "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A motion to dismiss for lack of standing should be denied where the plaintiff "plead[s] general factual allegations of injury." *Bernhardt*, 279 F.3d at 867.

## III. ARGUMENT

### A. Plaintiffs Properly Allege Race Discrimination.

Cognizant argues that the "true nature" and "thrust" of the complaint is national origin discrimination. Defs.' Mem. at 1, 6. Cognizant's argument is premised on a handful of instances in which Plaintiffs identify the country of origin of the majority of Cognizant's South Asian workers (India), and the fact that many of the South Asians Cognizant hires are from India and work in the U.S. pursuant to a visa. *See id.* at 5-7. Cognizant's argument fails for three reasons.

First, Cognizant ignores the actual allegations in the complaint, which explicitly allege racial discrimination. *See, e.g.*, Compl. ¶ 1 (providing an overview of Cognizant's discriminatory scheme to favor individuals of South Asian race); ¶¶ 16-24 (detailing Cognizant's scheme to favor South Asians in hiring, promotions, and retention decisions); ¶¶ 25-55 (detailing the discrimination faced by each of the Named Plaintiffs as a result of their race). These allegations must be "accept[ed] as true" and construed in Plaintiffs' favor. *Erickson*, 551 U.S. at 94; *Bernhardt*, 279 F.3d at 867; *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (holding that, to state a claim for race discrimination, "'I was turned down for a job because of my race' is all a complaint has to say").

Second, Cognizant's argument that the complaint's allegations concerning its reliance on the visa system means Plaintiffs are, in reality, alleging national origin discrimination is misplaced. As alleged, Cognizant favors hiring *South Asians*. *See, e.g.*, Compl. ¶¶ 1, 16, 19 (alleging, *e.g.*, that "[t]hrough its visa practices, Cognizant has successfully built a robust inventory of South Asians available to staff U.S. positions"). The fact that many of Cognizant's hires for U.S. positions are from India and have visas does not convert Plaintiffs' explicit allegations of racial discrimination

into allegations of national origin discrimination. Courts have repeatedly denied motions to dismiss § 1981 racial discrimination claims premised, in part, on an employer's preference for hiring South Asians who travel to the U.S. on work visas. *See Koehler v. Infosys Techs., Ltd*¸ 107 F. Supp. 3d 940, 944, 947-48 (E.D. Wis. 2015) (denying motion to dismiss § 1981 and Title VII race discrimination claims where plaintiffs alleged that defendants maintained a practice "of setting visa quotas for each office, recruiting persons of the South Asian race … and securing visas for those persons to work in the U.S."); *Heldt*, 132 F. Supp. 3d at 1189-90 (rejecting argument on motion to dismiss § 1981 claim that defendant's reliance on visa program to recruit South Asian workers from overseas was non-discriminatory).

Moreover, Cognizant ignores Plaintiffs' allegations that its scheme extends beyond its reliance on South Asian visa workers, and includes its preference for hiring South Asians located in the U.S., promoting South Asians at disproportionate rates, and terminating non-South Asians at disproportionate rates, resulting in a workforce that is at least 75% South Asian. Compl. ¶¶ 21-24. Cognizant also ignores Plaintiffs' individual allegations of racial discrimination *Id.* ¶¶ 25-56.

Third, the fact that the majority of the South Asians Cognizant hires come from India is irrelevant to Plaintiffs' allegations of racial discrimination. In cases involving U.S. workforces consisting primarily of individuals from India, courts have repeatedly rejected motions to dismiss § 1981 claims asserting discrimination in favor of South Asians and against non-South Asians. *Compare* Am. Compl. ¶ 2, *Koehler v. Infosys Techs. Ltd.*, 2:13-cv-885 (E.D. Wis. Sept. 27, 2013) (asserting § 1981 claim and alleging "roughly 90% of Infosys's U.S. workforce is of South Asian descent (primarily Indian)"), *with Koehler*, 107 F. Supp. 3d at 946 (deny motion to dismiss amended complaint and holding, "[t]he court concludes that the plaintiffs' allegations are sufficient to state claims that the defendants intentionally discriminated against them because of *the plaintiffs'* race, and the complaint is clear that the plaintiffs regard their race as distinct from the 'South Asian race' that the defendants allegedly favor")

(emphasis in original); *compare* Am. Compl. ¶ 1, *Heldt v. Tata Consultancy Servs. Ltd.*, 4:15-cv-1696 (N.D. Cal. July 6, 2015) (asserting § 1981 claim and alleging "approximately 95% of Tata's United States-based workforce is of South Asian descent (primarily from India)"), *with Heldt*, 132 F. Supp. 3d at 1193 (denying motion to dismiss amended complaint).

These decisions make sense. As defined in the complaint, "'South Asian race' refers to individuals who trace their ancestry to the Indian sub-continent." Compl. ¶ 1 n.1 (citing *Fonseca v. Sysco Food Serv. of Az., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004)). "Under 42 U.S.C. § 1981, discrimination based on 'ancestry or ethnic characteristics,' is prohibited." *Fonseca*, 374 F.3d at 850 (quoting *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)). Moreover, "race has been defined broadly to cover immigrant ethnic groups" such that, even if Plaintiffs did allege discrimination in favor of Indians (rather than South Asians), their claims would still survive. *Id.*; *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) (explaining that under § 1981, "race" is to be defined broadly to include "ethnic groups such as the Chinese"); *Magana v. N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997) ("discrimination based on ancestry or ethnic characteristics, and discrimination based on place or nation of . . . origin, [are] … [o]ften … identical as a factual matter") (citation omitted); *Benigni v. City of Hemet*, 879 F.2d 473, 478 (9th Cir. 1988) ("targets of race discrimination for purposes of section 1981 include groups that today are considered merely different ethnic or national groups, such as Arabs, Jews, Germans and Italians") (citation omitted); *Bertoli v. Cascade Precision, Inc.*, No. CV 03-1698, 2004 U.S. Dist. LEXIS 8211, at *5 (D. Or. Apr. 14, 2004) (holding that "Plaintiff has stated a claim for race discrimination under § 1981 based on his Italian ancestry").

Finally, Cognizant argues, in a footnote, that Plaintiffs' allegations concerning its use of the visa system to employ South Asians in the U.S. are "immaterial" and "should be stricken from the Complaint and excluded from any future discovery." Defs.' Mem. at 7 n.2 (citing Fed. R. Civ. P. 12(f)). Cognizant is wrong: using the visa

system to accomplish a discriminatory objective is both material and actionable under § 1981. *See Heldt*, 132 F. Supp. 3d at 1189-90 (rejecting defendant's argument that § 1981 claim cannot be based on "alleged use of the visa programs to recruit foreign workers to achieve its goal of discrimination against persons who are not South Asian"); *Koehler*, 107 F. Supp. 3d at 948-49 (rejecting defendants' argument that plaintiffs cannot invoke § 1981 to challenge their discrimination in favor of South Asians through H-1B visa practices). In addition, "'[a] footnote is the wrong place for substantive arguments on the merits of a motion," and Cognizant has therefore waived this argument. *HomeAway Inc. v. San Francisco*, 2015 U.S. Dist. LEXIS 9912, at *32-33 (N.D. Cal. Jan. 27, 2015) (quoting *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 929, 935 (N.D. Cal. 2008); *accord Sanders v. Sodexo, Inc.*, No. 15-cv-00371, 2015 U.S. Dist. LEXIS 96073, *13-14 (D. Nev. July 20, 2015) ("Defendants are cautioned that this court will continue to ignore substantive arguments raised in footnotes").

**B. Plaintiffs Have Standing To Assert § 1981 Claims, And Cognizant's "Standing" Argument Is A Premature Challenge To Class Certification.**

This case involves a scheme in which both prospective employees and benched employees must apply and interview for U.S. positions. Compl. ¶ 15. As alleged, Cognizant prefers South Asians for such positions. *Id.* ¶¶ 16-21. Cognizant argues that Plaintiffs, each of whom was benched and rejected for U.S. positions, lack standing to represent prospective employees who were also rejected for U.S. positions. Defs.' Mem. at 8-12. Cognizant's argument is misplaced for two reasons.

First, Cognizant's argument is an issue for class certification, not a motion to dismiss. Whether a named plaintiff has standing to bring a claim for racial discrimination under § 1981 is a separate inquiry from whether the plaintiff is an adequate and appropriate class representative to assert the alleged class claims, including claims brought on behalf of prospective employees. *Heldt*, 132 F. Supp. 3d at 1191-92. In *Heldt*, a class action alleging employment discrimination against non-

South Asians, the defendant argued on a motion to dismiss that "because TCS hired plaintiff Heldt, he does not have standing to bring a failure to hire claim." *Id.* at 1191. However, it was "undisputed that plaintiff Heldt has standing to pursue claims under Title VII for adverse employment actions, including his termination." *Id.* at 1191-92. The court found that "[n]othing more is required to maintain his cause of action for discrimination." *Id.* at 1192 (citing *In re VeriSign, Inc.*, No. 02-02270, 2005 U.S. Dist. LEXIS 10439, at *10-11 (N.D. Cal. Jan. 13, 2005); *Waters v. Heublein, Inc.*, 547 F.2d 466, 469-70 (9th Cir. 1976)). Further, the court found that the defendant's argument for dismissal of a failure to hire theory of discrimination "conflate[d] the standing requirements for plaintiff Heldt to bring a claim under Title VII with his ability to represent a class of persons not hired by TCS." *Id.* The court rejected the defendant's effort to "disqualify plaintiff Heldt as a class representative for [such] claims at the pleading stage," and denied the motion to dismiss. *Id.* [2]

---

[2] *See also Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 571 (N.D. Cal. 2013) (rejecting defendant's effort to "[t]ransmogrify[] typicality or commonality into an issue of standing"); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921-22 (N.D. Cal. 2012) (determining that plaintiff individually had standing, and concluding that whether he may assert claims of class members with similar, but not identical injuries, "boil[s] down to questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, issues that are better resolved at the class certification stage"); 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §1785.1, at 388-89 (3d ed. 2005) ("Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.").

Here, as in *Heldt*, there is no question Plaintiffs have standing to assert § 1981 claims, as each Plaintiff alleges that Cognizant took numerous adverse actions against them because of their race. Compl. ¶¶ 26, 29-32, 34-48, 51-56 (alleging, e.g., that each of the Plaintiffs were repeatedly removed from projects in favor of South Asians, benched, not hired for new positions, denied promotions, and terminated or forced to resign). "This alone is dispositive of [Cognizant's] motion under Rule 12(b)(1)." *Heldt*, 132 F. Supp. 3d at 1192.

The cases cited by Cognizant do not support its argument, as the plaintiffs in those cases failed to allege (or prove after trial) that they were actually harmed by the policies they sought to enjoin. *See Warth v. Seldin*. 422 U.S. 490, 504 (1975) (finding the "record devoid of" allegations that there was a substantial probability the plaintiffs would actually be harmed by challenged zoning practice); *Lewis v. Casey*, 518 U.S. 343, 357-59 (1996) (noting that case was "beyond the pleading stage," and finding, after trial, that only one of several plaintiffs was actually harmed by the defendant's policies, which necessarily impacted the scope of the injunction the Court could enter); *O'Shea v. Littleton* 414 U.S. 488, 495-96 (1974) (finding that plaintiffs failed to allege that they were actually harmed by practices they argued were unconstitutional); *Logan v. Union Sec. Ins. Co.*, No. 14-CV-1174, 2015 U.S. Dist. LEXIS 79986, at *19-20 (C.D. Cal. March 31, 2015) (noting that plaintiff's claim "[wa]s not premised" on the harm she sought to remedy, and that "she herself would not be a part of" the class she sought to represent); *Blyden v. Navient Corp.*, No. 14-CV-02456, 2015 U.S. Dist. LEXIS 96824, at *19, 23 (C.D. Cal. July 23, 2015) (noting that plaintiff recognized "she has no individual standing to sue trusts that never owned her loan," and holding that "because Plaintiff cannot trace any personal injury to the [these trusts], she lacks standing to sue them"). Likewise, Cognizant's reliance on *De Los Santos v. Panda Express, Inc.* is misplaced. There, unlike here, the plaintiffs failed to allege a scheme that harms both prospective employees and benched employees seeking positions with an employer. *See* No. C-10-1370, 2010 U.S. Dist. LEXIS 127788, at *19 (N.D. Cal.

Dec. 3, 2010). Moreover, *De Los Santos* cites no authority that supports its distinction between applicants and employees, and, as the same district court found five years later in *Heldt*, such a position "conflates the standing requirements" with the ability of a plaintiff "to represent a class of persons not hired" by the defendant. 132 F. Supp. 3d at 1192.

Second, Cognizant's premature argument will fail when this case reaches the class certification phase. The Supreme Court has explained that where an employer "'operate[s] under a general policy of discrimination … a class of both applicants and employees,'" would be appropriate "'if the discrimination manifested itself in hiring and promotion practices in the same general fashion.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011) (quoting *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 159 n.15 (1982)). Likewise, where an employer engages in a discriminatory practice that prejudices "'both applicants for employment and incumbent employees, a class action on behalf of every applicant and employee who might have been prejudiced'" by the practice "'*clearly* would satisfy the commonality and typicality requirements of Rule 23(a).'" *Id.* (quoting *Falcon*, 457 U.S. at 159 n.15) (emphasis added); *see also Gratz v. Bollinger*, 539 U.S. 244, 262-68 (2003) (finding that single class representative could represent a class of two separate groups of applicants because, despite some differences, each was subject to a discriminatory practice that applied on a "classwide basis").

Here, in filling U.S. positions, Cognizant discriminates against non-South Asian prospective employees and benched employees, as South Asians are given preference for open positions. Compl. ¶¶ 15, 19-21, 23. Each of the Plaintiffs was subjected to this classwide discrimination – not hired for new positions after being placed on the bench. *See, e.g.*, *id.* ¶¶ 46-48 (discussing how Mr. Piroumian was not invited to interview for a single open position within Cognizant while on the bench and was then terminated); *id.* ¶¶ 55 (discussing how Cognizant refused to hire Mr. Cox for open positions while on the bench in favor of less qualified, South Asian employees); *id.* ¶

61 (alleging that, as a result of Cognizant's discriminatory scheme, Plaintiffs and the class "were denied the opportunity to fairly compete for and obtain employment with Cognizant").

### C. Plaintiffs Have Standing To Seek Injunctive Relief, As Each Would Likely Seek Employment With Cognizant If Its Discriminatory Practices Ended.

Cognizant argues that Plaintiffs lack standing to seek injunctive relief. Defs.' Mem. at 12-13. But a former employee has standing to seek injunctive relief against a former employer if there is "a prospect that he may . . . be subjected to the challenged policy again." *Labriola v. Bank of Am., N.A.*, No. C 12-79 CW, 2012 U.S. Dist. LEXIS 65853, at *19 (N.D. Cal. May 10, 2012).[3] In deciding whether a plaintiff has standing to seek injunctive relief, on a motion to dismiss, plaintiffs may submit supporting affidavits or declarations, which must be accepted as true. *Warth*, 422 U.S. at 501-02; *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *Table Bluff Reservation v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001). "[A] suit will not be dismissed for lack of standing if there are sufficient 'allegations of fact' – not proof –

---

[3] *See also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding standing to seek injunctive relief may be appropriate if former employees were "seeking reinstatement" or were "seeking work from that employer," but denying standing where there was "no indication" that the plaintiff "has any interest in returning to work" for defendant); *Nanty v. Barrows Co.*, 660 F.2d 1327, 1333 (9th Cir. 1981) (unsuccessful job applicant who has been "the subject of unlawful discrimination in the employment process . . . is entitled to an injunction against future, or continued, discrimination" to ensure fair treatment "if he seeks similar employment in the future.").

in the complaint or supporting affidavits." *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 65 (1987).[4]

Here, Plaintiffs each affirm that, if Cognizant's discriminatory policies are enjoined, they will likely seek employment with the company again in the future. Decl. of C. Palmer ¶ 2; Decl. of V. Piroumian ¶ 2; Decl. of E. Cox ¶ 2. This is enough to establish standing to seek injunctive relief. *See Gratz*, 539 U.S. at 262 ("After being denied admission, [plaintiff] demonstrated that he was 'able and ready' to apply as a transfer student should the University cease to use race in undergraduate admissions. He therefore has standing to seek prospective relief with respect to the University's continued use of race in undergraduate admissions."); *Walsh*, 471 F.3d at 1037 (noting that standing can exist where plaintiff seeks "reinstatement to their former positions, or seek[] work from that employer") (citing *Freitag v. Ayers*, 463 F.3d 838, 856-57 (9th Cir. 2006); *Nanty*, 660 F.2d at 1327)); *Labriola*, 2012 U.S. Dist. LEXIS 65853, at *18-19.

Moreover, denying injunctive relief where an employer discriminatorily fires its employees would be contrary to public policy and the remedial purpose of the discrimination laws. *See, e.g.*, *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975) ("An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief").[5] Indeed, denying injunctive relief to terminated

---

[4] *See also Stromberg v. Ocwen Loan Servicing, LLC*, No. 15-cv-4719-JST, 2017 U.S. Dist. LEXIS 96738, at *15-17 (N.D. Cal. June 22, 2017) (considering plaintiff's affidavit and denying motion to dismiss for lack of standing); *Vivid Entm't, LLC v. Fielding*, 965 F. Supp. 2d 1113, 1123-24 & n.3 (C.D. Cal. 2013) (same); *Vildosola v. Hornbeak*, No. CV 08-6590-VAP (JEM), 2010 U.S. Dist. LEXIS 35816, at *21 (C.D. Cal. Feb. 25, 2010) (same).

[5] *See also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-19 (1975) ("Where racial discrimination is concerned, the [district] court has not merely the power but the

employees would create a perverse incentive for employers to terminate employees who complain of discrimination and would allow employers to indefinitely avoid injunctions against their unlawful conduct. *Cf. Wofford v. Safeway Stores*, 78 F.R.D. 460, 490 & n.6 (N.D. Cal. 1978) (rejecting argument that former employees could not represent current employees in class action, and noting that such a rule "would allow an unscrupulous employer to immunize himself from class action suits").

## IV. CONCLUSION

For the foregoing reasons, Cognizant's motion to dismiss should be denied. To the extent the Court grants any aspect of Cognizant's motion, Plaintiffs request that dismissal be without prejudice.

---

duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future") (citation omitted); *Criswell v. W. Airlines*, 709 F.2d 544, 558 (9th Cir. 1983) (noting "remedial" purpose of discrimination laws was the elimination of discrimination "on the basis of class-wide characteristics," and holding that, once plaintiff established that defendant's policy was discriminatory, "system-wide injunctive relief was properly granted"); *Johnson v. GMRI, Inc.*, No. CV F 07-283, 2007 U.S. Dist. LEXIS 66058, at *12-13 (E.D. Cal. Aug. 27, 2007) (holding that "public policy purposes dissuade striking injunctive relief at this early stage. Disqualifying plaintiffs [former employees] to seek injunctive relief would unfairly advantage defendants and rob potential class members of a remedy").

Dated: November 24, 2017

Respectfully submitted,

By: /s/Daniel Low
Daniel Low, SBN 218387
**KOTCHEN & LOW LLP**

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served today on all counsel of record by electronic service through the Court's CM/ECF filing system.

Dated: November 24, 2017

/s/Daniel Low