Daniel Low, SBN 218387
dlow@kotchen.com
Michael von Klemperer (*pro hac vice*)
mvk@kotchen.com
**KOTCHEN & LOW LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
Fax: (202) 280-1128

Navid Soleymani, SBN 219190
soleymani@ymsllp.com
Navid Yadegar, SBN 205315
navid@ymsllp.com
**YADEGAR, MINOOFAR & SOLEYMANI LLP**
1875 Century Park East, Suite 1240
Los Angeles, CA 90067
Telephone: (310) 499-0140
Fax: (888) 667-9576

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTY PALMER, VARTAN PIROUMIAN, and EDWARD COX,<br><br>Plaintiffs,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and, COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION,<br><br>Defendants. | Case No. 2:17-cv-06848<br><br>**SECOND AMENDED COMPLAINT**<br><br>FOR EMPLOYMENT DISCRIMINATION<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Christy Palmer, Vartan Piroumian, and Edward Cox bring this action on behalf of themselves and a class of similarly situated individuals to remedy pervasive, ongoing race and national origin discrimination by Defendants Cognizant Technology Solutions Corporation and Cognizant Technology Solutions U.S. Corporation (collectively "Cognizant"), and allege as follows:

## NATURE OF THE ACTION

1.   Cognizant is an American multinational corporation that provides information technology and consulting services to customers worldwide. Cognizant employs approximately 40,000 individuals in the United States. While only about 12% of the United States' IT industry (the industry in which Cognizant operates) is South Asian, at least 75% (if not more) of Cognizant's United States workforce is South Asian (all, or substantially all, of whom are Indian).[1] As discussed further below, this grossly disproportionate workforce is the result of a pervasive and egregious discriminatory scheme to favor South Asians and Indians (and disfavor non-South Asians and non-Indians) in hiring, promotion, and termination decisions.

2.   Cognizant's employment practices violate the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Plaintiffs seek, on their own behalf, and on behalf of a class of similarly situated individuals, declaratory, injunctive, and other equitable relief, compensatory and punitive damages, including pre- and post-judgment interest, attorneys' fees, and costs to redress Cognizant's pervasive pattern and practice

---

[1] As used herein, "South Asian" refers to individuals who trace their ancestry to the Indian sub-continent. *See, e.g.*, *Fonseca v. Sysco Food Serv. of Az., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004) ("Under 42 U.S.C. § 1981, discrimination based on ancestry or ethnic characteristics is prohibited" as discrimination based on race) (citation omitted). "Indian" refers to individuals born in India, or whose ancestors came from India. *See, e.g.*, *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 154 F.3d 1117, 1119 (9th Cir. 1998) (holding that "national origin" refers to both a person's place of birth, and the country from which his or her ancestors came).

SECOND AMENDED COMPLAINT

1    of discrimination.

2

## **PARTIES**

3    3.   Plaintiff Christy Palmer is a citizen of the United States, born in the United
4    States, and of American national origin and Caucasian race. Ms. Palmer is a resident
5    of Arizona.

6    4.   Plaintiff Vartan Piroumian is a citizen of the United States, born in the United
7    States, and of American national origin and Caucasian race. Mr. Piroumian is a resident
8    of California.

9    5.   Plaintiff Edward Cox is a citizen of the United States, born in the United States,
10    and of Hispanic national origin and Caucasian race. He is a resident of Texas.

11    6.   Plaintiffs are all members of a protected class, as recognized by 42 U.S.C. §
12    1981 and Title VII. Plaintiffs Palmer, Piroumian, and Cox have exhausted their
13    administrative remedies and have complied with the Title VII statutory prerequisite of
14    filing charges against Cognizant with the U.S. Equal Employment Opportunity
15    Commission ("EEOC"), and receiving notices of their right to sue.[2]

16    7.   Defendant Cognizant Technology Solutions Corporation is an American
17    multinational corporation that provides information technology and consulting
18    services. Cognizant Technology Solutions Corporations is a Delaware corporation and
19    maintains its World Headquarters and principal place of business in Teaneck, New
20    Jersey.

21    8.   Cognizant Technology Solutions U.S. Corporation was incorporated in 1996
22    and is a Delaware corporation. It operates as a subsidiary of Cognizant Technology
23    Solutions Corporation and is headquartered in College Station, Texas.

24

25

26    [2] Mr. Cox's recent EEOC charge incorporated all allegations from the First Amended
27    Complaint, including the Title VII disparate impact claims arising out of Cognizant's
     practice of applying for visas. *See* Ex. 1.

28

SECOND AMENDED COMPLAINT

## JURISDICTION

9.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f), *et seq.*, and 42 U.S.C. § 1981(a).

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) as this matter is a class action with an amount in controversy of greater than $5 million, exclusive of interest and costs, and involves at least one class member who is a citizen of a state and is brought against a corporation that is a citizen of a different state.

12. This Court has personal jurisdiction over Cognizant because it engages in continuous and systematic business contacts within the State of California and maintains a substantial physical presence in this State, including the operation of a global delivery center in Sacramento, California, and a U.S.-based office in San Ramon, California. Additionally, Plaintiffs' claims arise, in part, out of Cognizant's activities in California.

## VENUE

13.  Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)-(c) because Cognizant resides in this District, conducts business within this District, and committed some of the acts giving rise to this action within this District, as described below, including in Cerritos, Irvine, and Carpenteria, California.

## STATEMENT OF FACTS

### *Overview of Cognizant's Business Model*

14. Cognizant has approximately 37 offices in the United States and employs approximately 40,000 employees domestically. Cognizant collected over $13.4 billion in revenue in the past fiscal year. The company derives over 78% of its revenue from North America, the vast majority of which is from the United States.

SECOND AMENDED COMPLAINT

15. Cognizant contracts with U.S. companies to provide IT-related services.  Once Cognizant secures a contract with a client, it hires individuals to fill positions to service the client. Both external applicants and existing employees must apply and interview for these positions. Once a position servicing a client comes to an end (or if an employee is removed from a position), individuals are placed in a Corporate Deployment Pool, also known as being placed on the "bench" or being "benched." Once on the bench, individuals must again seek new positions within Cognizant, going through an application and interview process, just as external applicants must.

*Overview of Cognizant's Discriminatory Scheme*

16. Cognizant prefers South Asians and Indians in employment decisions and has instituted four corporate practices to fulfill its discriminatory preference. First, Cognizant prefers to employ South Asians and Indians in U.S. positions for whom Cognizant secures visas, primarily H-1B visas. The federal government annually awards 65,000 H-1B visas.  Given the cap on H-1B visas, companies compete to secure visas. Each year, H-1B visa applications are submitted at the beginning of April and visas are then awarded in October. An H-1B visa application must identify a new position within the U.S. available for the individual for whom the application is submitted.

17. To fulfill its employment preference for South Asians and Indians, Cognizant seeks to maximize the number of visas it receives each year from the federal government. All, or substantially all, of the individuals for whom Cognizant secures visas are South Asian and Indian. Cognizant was the top recipient of H-1B visas from the U.S. government in 2015 and 2016, and received 15,547 and 21,459 newly approved visa petitions in 2015 and 2016, respectively. (Cognizant also has filed almost 20,000 L-1 petitions over the past decade.) A U.S. Senior Administration Official recently commented on Cognizant's use of the visa program to build an inventory of South Asians:

Right now, as you may know, H1B visas are awarded by random lottery. . . . Just to illustrate a little bit more how the lottery works -- so some companies oftentimes are called outsourcing firms. You may know their names well, but … the top recipients of the H-1B visa are companies like Tata, Infosys, Cognizant -- they will apply for a very large number of visas, more than they get, by putting extra tickets in the lottery raffle, if you will, and then they'll get the lion's share of visas. Which is very different than I think how most people think of the H1B program -- they imagine it for more -- being for -- again, they would think of it as being for skilled domestic work, rather than contract work.[3]

18. One way Cognizant has become the top recipient of H-1B visas year after year is by submitting visa applications for jobs that do not exist.  As part of this application process, Cognizant drafts "invitation letters" stating that clients have new work for Cognizant that Cognizant will need to staff. These invitation letters identify the foreign worker employed by Cognizant who will work in a specific job, at a specific U.S.-based location, and under the supervision and control of a specific Cognizant employee in the U.S.  Cognizant then submits these letters to the federal government in support of Cognizant's H-1B visa applications.

19. Cognizant's invitation letters are routinely false, and the jobs that Cognizant represents in visa applications as available and requiring staffing routinely do not exist. The federal government then awards visas against these fictitious positions.

20. Through its visa practices, Cognizant has successfully built a robust inventory of South Asian and Indians available to staff U.S. positions. These individuals re given first – if not exclusive – preference for new U.S. positions, as they become available. These individuals are also sometimes used to replace non-South Asians and non-Indians working in existing U.S. positions. Cognizant's explicit preference to staff visa

---

[3] *Background Briefing on Buy American, Hire American Executive Order,* The White House, Office of the Press Secretary (Apr. 17, 2017), *available at* https://www.whitehouse.gov/the-press-office/2017/04/17/background-briefing-buy-american-hire-american-executive-order.

SECOND AMENDED COMPLAINT

holders in U.S. positions minimizes or eliminates competition for the jobs from non-South Asians and non-Indians residing in the U.S. (including both external applicants and existing employees).   As a result,   non-South Asians and non-Indians are disproportionately relegated to the bench, as jobs are given to South Asians and Indians.

21. Second, Cognizant gives preference to South Asian and Indian applicants located in the U.S. over non-South Asian and non-Indian applicants. Cognizant has an internal recruiting department responsible for locating talent within the U.S. These efforts are supplemented by third-party recruiting companies. On information and belief, both Cognizant's internal recruiters and its third-party recruiters give preference to locating and recruiting South Asian and Indian candidates, who are then given preference throughout the hiring process. As a result, on information and belief, Cognizant hires a disproportionately high percentage of South Asians and Indians within the United States that far exceeds the proportion of those individuals in the relevant labor market.

22. Third, because of its discriminatory preference for South Asians and Indians, Cognizant promotes South Asians and Indians at disproportionately high rates compared to non-South Asians and non-Indians. Employees in the U.S. are awarded Year End Appraisals ("YEAs") on a scale of 1 to 5 (5 being the highest, indicating that the employee exceeded all expectations). Promotions at Cognizant are tied to an employee's YEA score, and employees receiving scores of 4 or 5 are more likely to receive a promotion from Cognizant.  Upon information and belief, non-South Asians and non-Indians are typically awarded lower YEA scores, and thus, non-South Asians and non-Indians are promoted less frequently than South Asians at Cognizant.

23. Fourth, because of its discriminatory preference for South Asians and Indians, Cognizant terminates non-South Asians and non-Indians at disproportionately high rates compared to South Asians and Indians. Cognizant has a policy to terminate

employees who are on the bench for more than five weeks. Because South Asians and Indians are given preference for new positions, and these individuals are also used to displace non-South Asians and non-Indians on existing projects, non-South Asians and non-Indians are disproportionately relegated to the bench and unable to secure new positions. This leads to their termination at disproportionate rates.

24. Cognizant's discriminatory scheme is intentional and results in a disparate impact on non-South Asian and non-Indian individuals. Cognizant's U.S. workforce reflects the result of its discriminatory scheme. At least 75% (if not more) of Cognizant's United States-based workforce is South Asian (all, or substantially all, of whom are Indian).  By contrast, during the 2010 census, all Asian subgroups combined made up 4.8% of the U.S. population.   South Asians made up 1-2% of the U.S. population and about 12% of the U.S. IT industry.

*Plaintiff Palmer's Experiences*

25. Ms. Palmer has almost 20 years of advanced training and job experience in the IT services industry, including extensive senior management experience. She obtained a Bachelor of Applied Science degree from the University of Phoenix in 2005 and has also taken related courses at Pima Community College.  She was hired by Cognizant in December 2012 and worked for three years in a management-level role overseeing client projects. Her main responsibilities included serving as a Consulting Manager across all roles, an Application Migration Manager, and a UAT Program Manager. Ms. Palmer first reported to Raj Swaminathan, a Client Partner, who is South Asian.

26. During her tenure with Cognizant, Ms. Palmer was repeatedly removed from her position servicing Cognizant clients and replaced with Indian South Asian workers. For example, in early 2013, Cognizant required Ms. Palmer to relocate from Tucson, Arizona to Cerritos, California to work for Cognizant client Caremore. However, just four months later, Ms. Palmer was prematurely removed from this position and replaced without any explanation by Kumar Praveen, who is South Asian. Ms. Palmer

SECOND AMENDED COMPLAINT

then relocated to Phoenix, Arizona, as requested by Cognizant, to perform work for Cognizant client United Healthcare. Just six months later, she was again prematurely removed from her position servicing United Healthcare and replaced by an Indian South Asian employee, Avanthi Kalidindi.

27. In her manager-level role, Ms. Palmer oversaw the staffing of various positions servicing Cognizant clients. Ms. Palmer observed that Cognizant staffed initial client-based roles with non-South Asian, non-Indian employees and later replaced these individuals with visa holding South Asians once the project was in good standing. The non-South Asian, non-Indian employees were then benched and forced to look for new positions within the company.

28. When Ms. Palmer needed an additional employee to service a Cognizant client, she would contact executive leadership. Cognizant routinely provided Ms. Palmer with profiles of South Asian and Indian employees available to fill the openings. On one occasion in early 2016, Ms. Palmer requested a specific non-South Asian, non-Indian employee out of Michigan who was a good fit for the Enterprise Architect role for Cognizant client BARD, but was told by Cognizant that a South Asian H-1B worker from India would assume the position instead, despite being unqualified for the role. On another occasion, upper management at Cognizant instructed Ms. Palmer to replace a non-South Asian, non-Indian employee who had been working for BARD for three to four months with an Indian South Asian. Ms. Palmer was later instructed to replace a non-South Asian, non-Indian employee servicing Cognizant client PHH with a South Asian employee.

29. Despite being hired by Cognizant as a manager of client projects, Ms. Palmer was improperly reviewed as an infrastructure architect, and received unjustifiably low performance ratings from her managers. For instance, in early 2016, Ms. Palmer received a YEA of 3 on a scale of 1 to 5. Ms. Palmer contested this low rating, as she had served as an Application Migration Lead for Cognizant's CIS Horizontal Division

the prior year in Thousand Oaks, California. Ms. Palmer had performed well in this role, and her team sold and signed over $10 million worth of deals for Cognizant over a 5-month period. Moreover, Ms. Palmer was consistently sought out by other business units for help and education in the Cognizant Applicant Lead Migration methodology sold by the company. However, Cognizant refused to alter Ms. Palmer's appraisal score and forced her to take coaching classes. Ms. Palmer never received a promotion from Cognizant, despite performing well with the company for three years.

30. Ms. Palmer was subject to a hostile work environment by South Asian and Indian employees. Ms. Palmer was often the only non-South Asian and non-Indian employee at her work location and was intentionally left off meeting invites and not invited to group lunches or after-work events. For instance, when working in Cerritos, California for Cognizant client Caremore, Ms. Palmer's manager, Mr. Swaminathan, would often invite the entire staff except Ms. Palmer to all-team meetings, and would exclude her from the meetings. In the few instances that Ms. Palmer was invited to team meetings, South Asian and Indian managers would turn their back on Ms. Palmer when she was speaking, and ignore her ideas and suggestions. In fact, in late 2015, during an all-team meeting with Cognizant client PPH, Ms. Palmer was told to "shut the f*ck up" by Dimple Shah, an Indian South Asian Director from Cognizant, when contributing to the meeting.

31. In the fall of 2016, Ms. Palmer was assigned to a position servicing Cognizant client AGI in Phoenix, Arizona that was scheduled to continue into 2017. Despite performing well in her managerial role, Ms. Palmer was asked to relocate to Cleveland, Ohio so she could be replaced with an Indian South Asian worker. Ms. Palmer's project team, however, advocated for her to remain with AGI for the duration of the contract, and Ms. Palmer was allowed to continue with her work.

32. In December 2016, Ms. Palmer was forced to resign from Cognizant because of the company's discriminatory practices and hostile work environment. Her last day

SECOND AMENDED COMPLAINT

with the company was December 9, 2016.

*Plaintiff Piroumian's Experiences*

33. Vartan Piroumian has over 30 years of professional experience and advanced training in software engineering, software architecture, and enterprise architecture. He holds a Bachelor's Degree in Computer Science and has studied at both MIT and UC Irvine. Mr. Piroumian has authored 8 publications on Java technology and was a staff instructor for the UC Santa Cruz Professional Extension program.

34. Mr. Piroumian began working with Cognizant on April 1, 2012 as an Enterprise Architect. During his tenure with Cognizant, Mr. Piroumian's was repeatedly removed from positions servicing Cognizant clients prematurely and replaced with less qualified, Indian South Asian employees. Examples of this pattern include:

- In 2012, with client News America Marketing, Krishna Marepalli, Director of Business Development, replaced Mr. Piroumian with an Indian South Asian employee;

- In September 2012, with client John Wiley and Sons, Mr. Piroumian was replaced after just 6 weeks by a less qualified Indian South Asian employee;

- In March 2013, with client Ithaka, Cognizant's all-Indian account team replaced Mr. Piroumian with an Indian South Asian employee;

- In 2013, with client PR Newswire, Mr. Piroumian was replaced by an Indian South Asian employee;

- In January 2014, with client Optum Rx in Irvine, California, Mr. Piroumian was prematurely replaced with a less qualified Indian South Asian employee;

- On May 3, 2015, with client Prudential, Mr. Piroumian was released prematurely despite performing well in his role;

- On May 27, 2016, with client CR Bard, Mr. Piroumian was released from his position and replaced by Prabaharan Kalirethinam, an Indian South Asian employee, despite the protests of Christy Palmer, the project manager, who

23

praised Mr. Piroumian's work;

- In September 2016, with client AIG in Houston, Texas, despite receiving a favorable review from John Troxel, the Cognizant Program Manager with AIG, Mr. Piroumian was removed from a 9-month project after just four weeks, and the South Asian account manager, Deepak Jha, replaced him with an Indian South Asian employee, Thirunavukkarasu Sagadevan, who was not a qualified Enterprise Architect and did not have the proper skillset to assume the role;

- On March 10, 2017, with client Gymboree in San Francisco, Mr. Piroumian was prematurely removed despite receiving positive feedback from Biswadeep Hota, the Cognizant Project Manager.

35. Mr. Piroumian also experienced discrimination in his efforts to obtain new positions with Cognizant clients. For example, on July 29, 2013, Mr. Piroumian performed well during an interview for Cognizant client Comcast, which selected him for the role, and informed him that he was the first of 25 candidates to pass the client's technical phone screen. On August 2, 2013, however, Cognizant informed Mr. Piroumian that he was not being allocated to the role, and instead an Indian South Asian employee was selected for the opening.

36. On May 8, 2014, Mr. Piroumian performed well during an interview for an Enterprise Architect role with Cognizant client Bank of America and was selected by the client. Later that day, Mr. Piroumian received an email from Basavaraj Hukkeri, a South Asian Director at Cognizant, informing Mr. Piroumian that he was "not [the] right fit" for the position.[4] Instead, an Indian South Asian employee was selected for the role.

37. On May 16, 2014, after performing well during a Xerox client interview, Mr.

---

[4] Later that same day, Mr. Piroumian received a second email from Mr. Hukkeri stating, "I found Vartan to be [a] highly proficient Enterprise level solution Architect. Please feel free to consider him for any of your requirements[.]"

SECOND AMENDED COMPLAINT

Piroumian was notified by Pamod Kariyadath Panaghat, the team's Indian South Asian account manager, that he was selected for the opening. Mr. Piroumian placed several calls to Mr. Panaghat over the next few days regarding his allocation, yet received no reply, and was never allocated to Xerox.

38. Mr. Piroumian repeatedly complained about his discriminatory treatment, but his complaints proved futile. Mr. Piroumian complained of discrimination to his manager, Purna Roy, during an August 10, 2015 telephone call, in hopes that Mr. Roy would escalate his complaint to the appropriate Human Resources manager. Specifically, Mr. Piroumian informed Mr. Roy that his release from his position servicing Prudential on May 3, 2015 was discriminatory, as despite his exemplary work, he was removed from his role, whereas Saisekhar Patnaik, an Indian South Asian employee who performed similar work, was retained. Mr. Roy, however, failed to escalate or investigate Mr. Piroumian's complaint, and instead informed him that he should not question Indian management's directives.

39. In January 2016, Mr. Piroumian again reported Cognizant's discrimination to Mr. Roy and informed him of a certain Indian South Asian manager's attempts to discredit his work. Mr. Roy took no action.

40. On January 11, 2016, Mr. Piroumian began servicing Cognizant client CR Bard. The two project Directors, Nadimpalli Narasimha Rao and Gopakumar Narayanan Nair, both Indian South Asians, instructed Mr. Piroumian not to meet with the client or attend any client-facing meetings, thereby preventing him from fully participating in the contracted work. The following month, Mr. Rao instructed Mr. Piroumian to work from home, further impeding his ability to lead and take initiative among his peers. On February 1, 2016, during his weekly status report to leadership in India, Mr. Piroumian highlighted the discriminatory communication, coordination, and planning issues he noticed while servicing CR Bard, yet no action was taken by management. On April 9 and April 20, 2016, Mr. Piroumian asked his manager, Mr. Roy, to provide

SECOND AMENDED COMPLAINT

him with the appropriate contact in Human Resources to report Cognizant's discriminatory conduct, but his requests were ignored.

41.  In July 2016, Mr. Roy stopped giving Mr. Piroumian work, negatively affecting Mr. Piroumian's utilization rate at Cognizant.

42.  Mr. Piroumian worked with Cognizant client AIG in Houston, Texas for four weeks beginning August 29, 2016. He was prematurely replaced with an unqualified Indian South Asian employee even though Mr. Piroumian had received a favorable review on the project from the Cognizant Program Manager with AIG.  On October 4, 2016, Mr. Piroumian informed Mr. Roy that his removal from AIG was discriminatory. Mr. Roy refused to acknowledge Mr. Piroumian's grievance and informed him that his early removal from the position indicated that his work was unsatisfactory even though Mr. Piroumian had received accolades for his work.

43.  On May 2, 2017, Mr. Piroumian again requested that Mr. Roy provide him with Human Resources' contact information, so that he could submit a formal complaint of discrimination. Mr. Roy finally answered Mr. Piroumian's inquiries on May 8.

44.  On May 16, 2017, Mr. Piroumian spoke with Human Resources Director Paul Vanbuhler and Human Resources Compliance and Employee Relations Advisor Sabrena Civil. During the call, Mr. Piroumian outlined the discrimination he had experienced during his tenure at Cognizant, and requested a written summary of their ensuing investigation, but they refused.

45.  Mr. Piroumian received discriminatory performance appraisals from his Indian South Asian supervisors at Cognizant and never received a promotion. In 2014, Mr. Piroumian received YEA scores of 5 out of 5 (5 being the highest) when reporting to Jean-Claude Franchitti, who is not Indian or South Asian. In 2015, when he was reporting to Mr. Roy, who is an Indian South Asian, Mr. Roy awarded him a YEA rating of 3. While Mr. Piroumian repeatedly requested documentation and feedback supporting Mr. Roy's low appraisal, his requests were ignored. Despite performing

well throughout 2016, Mr. Piroumian received a "meets some expectations" YEA (a 2 out of 5) from Mr. Roy. Mr. Piroumian vehemently contested the low appraisal score, and forwarded Mr. Roy various accolades he had received throughout the year. Mr. Piroumian also requested that Mr. Roy provide him with documentation of his poor performance. Mr. Roy refused to address Mr. Piroumian's concerns.

46. On May 25, 2017, Mr. Piroumian asked Mr. Roy to allocate him to an open position within Cognizant. Mr. Roy informed Mr. Piroumian that a few opportunities were available, and that his profile would be submitted for an open role. Five days later, Mr. Piroumian received a voicemail message from Mr. Roy, informing him that he was being placed on the bench effective May 31, 3017. Mr. Piroumian later received an email stating his first day on the bench was June 19.

47. While benched, Mr. Piroumian was contacted by just two Cognizant employees concerning open roles within the company. On July 19, he received an email from Sandeep Mehta discussing an Enterprise Architect role in Denver, Colorado or Atlanta, Georgia. However, Mr. Mehta failed to provide Mr. Piroumian with any details as to his proposed job functions, and failed to call him to discuss the role as promised. As a result, he was not offered the Enterprise Architect position. On July 24, Mr. Piroumian was contacted by Kapil Apshankar regarding a DevOps Transformation Director role in Toronto, Canada. After exchanging initial emails with Mr. Apshankar discussing the role, Mr. Piroumian never heard back from Mr. Apshankar, and was not invited to interview for the open position.

48. Mr. Piroumian remained on the bench for approximately six weeks. Cognizant terminated his employment on August 2, 2017.

49. Cognizant's discriminatory conduct has caused Mr. Piroumian to seek medical treatment for stress, anxiety, and sleep-related issues. Mr. Piroumian first visited his primary care physician in November 2016, and was prescribed an antidepressant. His physician increased his dosage in May 2017, as the result of increased stress and Mr.

Piroumian's continued inability to sleep. Mr. Piroumian was also referred to a psychiatrist who he began seeing in June 2017.

*Plaintiff Cox's Experiences*

50. Edward Cox is an experienced and highly skilled IT professional with over 35 years of academic and work experience. Mr. Cox began working for Cognizant in January 2014 as an Infrastructure Engagement Manager / Program Manager (a senior level, director role) supporting infrastructure services and staffing sales and delivery for North American clients.

51. During his first year at Cognizant, Mr. Cox reported to Anil Bhandari, who is South Asian and Indian. During client-facing meetings, Mr. Bhandari would talk over Mr. Cox, and refuse to allow him to speak to the client. Mr. Bhandari routinely spoke in Hindi while discussing client-related work and sales opportunities.

52. Starting in 2015, Mr. Cox began reporting to Deepak Parameswaran, Senior Vice President, Infrastructure Services.  In early 2016, Mr. Cox began reporting to Bala Balasubmaranian, a Senior Director. Both Mr. Parameswaran and Mr. Balasubmaranian are South Asian and Indian. Mr. Parameswaran and Mr. Balasubmaranian took little interest in Mr. Cox or his work, and failed to provide him with any performance reviews or regular feedback.

53. Mr. Cox did not receive a single performance review during his three years of employment with Cognizant, thereby precluding him from receiving a raise or a promotion, despite performing well. Further, when Mr. Cox's travel and hospitality vertical met all of its revenue goals in 2016, and ranked first in four key customer attributes, Mr. Cox received a lower bonus than his South Asian and Indian team members.

54. Mr. Cox was treated poorly by his South Asian and Indian colleagues and managers, who created a hostile work environment for him. For instance, in late 2016, Mr. Cox's manager, Mr. Balasubmaranian, intentionally did not invite Mr. Cox to the

annual pre-sales kickoff meeting, preventing Mr. Cox from participating in defining Cognizant's sales strategy as he had done in prior years. Mr. Cox's managers and team members also spoke Hindi socially and during meetings, precluding Mr. Cox from fully participating in client-based work.

55. In January 2017, Mr. Cox's manager, Mr. Balasubmaranian, informed him that he was being benched. While on the bench, Mr. Cox interviewed for multiple open roles within Cognizant, but was told that he was not "vetted" or proven qualified for the positions, despite having already performed the same role for Cognizant client PHH Mortgage the prior year and meeting all project deliverables and milestones on time and under budget. Less qualified Indian South Asian employees were selected for the open positions. On one occasion, Mr. Cox was asked to meet with Cognizant client Country Financial in Illinois to develop an agenda and presentation to address the client's IT needs. After Mr. Cox spoke with the client and completed this preliminary work, Cognizant refused to allow him to travel for the presentation two days later, and the role was given to a less qualified, Indian South Asian employee.

56. Cognizant terminated Mr. Cox's employment on April 3, 2017 with no severance. Although Cognizant informed Mr. Cox that his termination was due to his prolonged period on the bench, Mr. Cox was actually terminated because of Cognizant's preference for employees of South Asian race and Indian national origin.

57. In November 2017, Mr. Cox was contacted by Dave Stark, an employee of Cognizant, regarding a senior-level role on Mr. Stark's team. Mr. Cox told Mr. Stark that he was interested in the position, and in late December 2017, Mr. Cox interviewed with two senior members of Mr. Stark's team. Both individuals agreed that he was qualified for the position and informed Mr. Cox that they were looking forward to him joining the team.

58. He then spoke with John Hardeman, a Senior Manager / Senior Executive Recruiter at Cognizant who told Mr. Cox that Cognizant intended to make an offer and

SECOND AMENDED COMPLAINT

provided specific information regarding a compensation package. In January 2018, Mr. Cox learned that Cognizant was still working through the offer approval process, and that Mr. Hardeman hoped to have the offer letter prepared shortly.

59. Since that time, Mr. Cox has repeatedly tried to contact Mr. Stark by phone and text message to check when Cognizant will be extending the offer, but he has not received any response from him. Nor has he heard from Mr. Hardeman, or otherwise received an offer from Cognizant.

## CLASS ACTION ALLEGATIONS

60. Plaintiffs bring this Class Action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), seeking injunctive, declaratory, equitable, and monetary relief for Cognizant's systematic pattern and practice of discriminatory employment practices based upon individuals' race and national origin. This action is brought on behalf of the following class of individuals:

> All persons who are not of South Asian race or Indian national origin and who applied for positions with (or within) Cognizant and were not hired, who were not promoted after being in a position at least 12 months, and/or who were terminated.

61. The class period runs from September 18, 2013 onwards.

62. Members of the class are so numerous and geographically dispersed across the United States that joinder is impracticable. While the exact number of class members is unknown to Plaintiffs, it is believed to be in the thousands. Furthermore, the class is readily identifiable from information and records in Cognizant's possession.

63. There are numerous questions of law and fact common to the class. Among the common questions of law or fact are:   (a) whether Cognizant has intentionally discriminated against individuals who are not of South Asian race or Indian national origin in making employment decisions; (b) whether Cognizant has intentionally favored South Asians and Indians in hiring, promotion, and termination/retention decisions; (c) whether Cognizant's employment practices have resulted in a disparate

23

impact against non-South Asian and non-Indian individuals; (d) whether Cognizant has violated 42 U.S.C. § 1981; (e) whether Cognizant has violated Title VII; (f) whether equitable and injunctive relief is warranted for the class and (g) whether punitive damages are warranted for the class.

64. Plaintiffs' claims are typical of the class. All members of the class were damaged by the same discriminatory policies and practices employed by Cognizant, *i.e.*, they were denied the opportunity to fairly compete for and obtain employment with Cognizant, and were denied positions and promotions within the company.

65. Plaintiffs will fairly and adequately protect the interest of other class members because they have no interest that is antagonistic to or which conflicts with those of any other class member, and Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in class litigation to represent them and the class.

66. Because of Cognizant's actions, Plaintiffs and the class they seek to represent have suffered substantial harm for which punitive damages is warranted.

67. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Cognizant has acted and/or refused to act on grounds generally applicable to the class, making declaratory and injunctive relief appropriate with respect to Plaintiffs and the class as a whole. Members of the class are entitled to declaratory and injunctive relief to end Cognizant's systematic, common, uniform, unfair, and discriminatory policies and practices.

68. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) for determination of the damage claims of individual class members because the issue of liability is common to the class and the common nucleus of operative facts forms the central issue, which predominates over individual issues of proof. The primary question common to the class is whether Cognizant has discriminated on the basis of race and national origin in their employment practices. This question is central

to the case and predominates over individual issues among the members of the proposed class. Cognizant has engaged in a common course of discriminatory conduct in a manner that has harmed all of the class members. Class certification under Rule 23(b)(3) would be superior to other methods for fair and efficient resolution of the issues because certification will avoid the need for repeated litigation by each individual class member. The instant case will be manageable as a class action. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

69. In the alternative, class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(c)(4) to litigate Plaintiffs' claims for prospective classwide compliance and affirmative injunctive relief necessary to eliminate Cognizant's discrimination. Certification under this rule is also appropriate to decide whether Cognizant has adopted a systemic pattern and practice of race and national origin discrimination in hiring and employment decisions and/or has engaged in practices that have resulted in a disparate impact against non-South Asian and non-Indian individuals, and to determine classwide damages, including punitive damages.

## COUNT I
**(Disparate Treatment on the Basis of Race)**
**(Violation of Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981)**
**(On behalf of all Plaintiffs and the Class)**

70. Plaintiffs re-allege each preceding paragraph as though fully set forth herein.

71. This claim is brought by Plaintiffs on behalf of themselves and the class.

72. Throughout the class liability period, Cognizant has engaged in a pattern and practice of discriminating against individuals who are not of South Asian race by: (a) knowingly and intentionally favoring South Asian individuals in employment decisions, including hiring, promotion, and termination decisions, (b) knowingly and intentionally disfavoring non-South Asian individuals (including Plaintiffs) in employment decisions, including hiring, promotion, and termination decisions, (c)

knowingly and intentionally creating and maintaining an overwhelmingly disproportionate workforce in the United States consisting of at least 75% (if not more) South Asian employees.

73. As a direct and proximate result of Cognizant's intentional discrimination, Plaintiffs and members of the class have been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to advancement, and/or continued employment with Cognizant.

74. Cognizant's actions constitute unlawful discrimination on the basis of race in violation of 42 U.S.C. § 1981.

## COUNT II
### (Disparate Treatment on the Basis of Race and National Origin)
### (Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*)
### (On behalf of all Plaintiffs and the Class)

75. Plaintiffs re-allege each preceding paragraph as though fully set forth herein.

76. This claim is brought by Plaintiffs on behalf of themselves and the class.

77. Throughout the class liability period, Cognizant has engaged in a pattern and practice of discriminating against individuals who are not of South Asian race or Indian national origin by: (a) knowingly and intentionally favoring individuals of South Asian race and Indian national origin in employment decisions, including hiring, promotion, and termination decisions, (b) knowingly and intentionally disfavoring individuals who are not of South Asian race and Indian national origin (including Plaintiffs) in employment decisions, including hiring, promotion, and termination decisions, and (c) knowingly and intentionally creating and maintaining an overwhelmingly disproportionate workforce in the United States consisting of at least 75% (if not more) South Asian employees (all, or substantially all, of whom are Indian).

78. As a direct and proximate result of Cognizant's intentional discrimination, Plaintiffs and members of the classes have been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to

promotion and/or continued employment with Cognizant.

79. Cognizant's actions constitute unlawful discrimination on the basis of race and national origin in violation of 42 U.S.C. § 2000e, *et seq.*

## COUNT III
### (Disparate Impact on the Basis of Race and National Origin)
### (Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*)
### (On behalf of all Plaintiffs and the Class)

80. Plaintiffs re-allege each preceding paragraph as though fully set forth herein.

81. This claim is brought by Plaintiffs on behalf of themselves and the class.

82. Throughout the class liability period, Cognizant has used policies and practices related to hiring, promotion, and termination of individuals that have had a disparate impact on the basis of national origin and race (harming those who are not of South Asian race or Indian national origin) that are neither job-related for the positions at issue nor consistent with business necessity.

83. Cognizant's actions constitute unlawful discrimination on the basis or race and national origin in violation of 42 U.S.C. § 2000e, *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the class pray for relief as follows:

a. Certification of the case as a class action pursuant to Federal Rule of Civil Procedure 23;

b. Designation of Plaintiffs as representatives of the class;

c. Designation of Plaintiffs' counsel as counsel for the class;

d. A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. § 1981 and Title VII;

e. A permanent injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in unlawful policies, practices, customs, and usages set forth herein;

f. Order Defendants to adopt a valid, non-discriminatory method for hiring,

SECOND AMENDED COMPLAINT

termination, and other employment decisions;

g. Order Defendants to post notices concerning its duty to refrain from discriminating against employees on the basis of race and national origin;

h. Award Plaintiffs and the class damages for the harm they suffered as a result of Defendants' violations of 42 U.S.C. § 1981 and Title VII;

i. Award Plaintiffs and the class pre- and post-judgment interest at the prevailing rate on the compensatory damages as a result of Defendants' discriminating against them in violation of 42 U.S.C. § 1981 and Title VII;

j. Award reasonable attorneys' fees, expert witness fees, expenses, and costs of this action and of prior administrative actions; and

k. Award Plaintiffs and the class such other relief as this Court deems just and appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs and the class respectfully demand a trial by jury on all issues properly triable by a jury in this action.

DATED:    November 14, 2018                 Respectfully submitted,

/s/Daniel Low
Daniel L. Low, SBN 218387
Michael von Klemperer (*pro hac vice*)
KOTCHEN & LOW LLP

*Attorneys for Plaintiffs*

SECOND AMENDED COMPLAINT