GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR. SBN 132099
tboutrous@gibsondunn.com
KATHERINE V.A. SMITH, SBN 247866
ksmith@gibsondunn.com
LAUREN M. BLAS, SBN 296823
lblas@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

MICHELE L. MARYOTT, SBN 191993
mmaryott@gibsondunn.com
ELIZABETH A. DOOLEY, SBN 292358
edooley@gibsondunn.com
MATTHEW T. SESSIONS, SBN 307098
msessions@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

*Attorneys for Defendants*

KOTCHN & LOW LLP
DANIEL LOW, SBN 218387
dlow@kotchen.com
DANIEL KOTCHEN (*pro hac vice*)
dkotchen@kotchen.com
LINDSEY GRUNERT
(*pro hac vice*)
lgrunert@kotchen.com
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: 202.471.1995
Facsimile: 202.280.1128

YADEGAR, MINOOFAR &
SOLEYMANI LLP
NAVID SOLEYMANI, SBN 219190
soleymani@ymsllp.com
NAVID YADEGAR, SBN 205315
navid@ymsllp.com
1875 Century Park East, Suite 1240
Los Angeles, CA 90067
Telephone: 310.499.0140
Facsimile: 888.667.9576

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CHRISTY PALMER, VARTAN PIROUMIAN, and EDWARD COX, <br><br> *Plaintiffs*, <br><br> v. <br><br> COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION, | CASE NO. 17-CV-6848 DMG (PLAx) <br><br> **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** <br><br> **SECOND JOINT STIPULATION REGARDING DISCOVERY DISPUTES** <br><br> Hon. Paul L. Abrams |

*Defendants.*

<u>Hearing</u>
Date: December 23, 2020
Time: 10:00 a.m.
Place: Telephonically
Complaint Filed: Sept. 17, 2018
Discovery Cut-Off: Mar. 16, 2021
Pre-Trial Conference Date: Dec. 14, 2021
Trial Date: Jan. 11, 2022

Case 2:17-cv-06848-DMG-PLA   Document 105   Filed 11/30/20   Page 2 of 41   Page ID #:2223

# TABLE OF CONTENTS

I.  INTRODUCTORY STATEMENTS.................................................................1

    A.  Plaintiffs' Introductory Statement ........................................1

    B.  Defendants' Introductory Statement .....................................2

II. SPECIFICATION OF ISSUES IN DISPUTE ................................5

III. PARTIES' CONTENTIONS ..............................................................5

    A.  Clarification of Cognizant's Obligation to Produce Documents Related to the EEOC Pattern-or-Practice Investigation.....................5

        1.  The Order at Issue ................................................5

        2.  Plaintiffs' Position .................................................6

        3.  Defendants' Position ...........................................11

    B.  Testimony Regarding the Identities of and Communications with "Experts" Cognizant Retained to Analyze Data Pre-production.......20

        1.  The Requests and Responses at Issue................20

        2.  Plaintiffs' Position .................................................21

        3.  Defendants' Position ...........................................31

Case 2:17-cv-06848-DMG-PLA   Document 105   Filed 11/30/20   Page 3 of 47   Page ID #:1554

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)

1      Pursuant to Federal Rule of Civil Procedure 37(a), Local Rule 37-2, and Magistrate

2 Judge Abrams' Procedures, Plaintiffs Christy Palmer, Vartan Piroumian, and Edward Cox

3 ("Plaintiffs") and Defendants Cognizant Technology Solutions Corporation and

4 Cognizant Technology Solutions U.S. Corporation ("Defendants" or "Cognizant") submit

5 this Joint Stipulation regarding the following issues: (A) Cognizant's refusal to produce

6 certain documents relating to the EEOC's pattern-or-practice investigation, which

7 Plaintiffs believe were required by the Court's June 10, 2020 Order (ECF 102) (Ex. B to

8 Maryott Decl.); and (B) Cognizant's refusal to produce a witness to testify to Topics 1 and

9 2 to Plaintiffs' Amended Rule 30(b)(6) Deposition Notice.

10 <center>**I.    INTRODUCTORY STATEMENTS**</center>

11 **A.   PLAINTIFFS' INTRODUCTORY STATEMENT**

12      This is an employment discrimination class action in which Plaintiffs allege that

13 Cognizant maintains a pattern or practice of employment discrimination in favor of

14 individuals of South Asian race and Indian national origin (collectively "South Asian,"

15 unless otherwise noted) and/or maintains employment practices that have a disparate

16 impact on non-South Asians. *See* 2d Am. Compl. ("SAC") ¶¶ 1-2 (ECF 45). As a result,

17 non-South Asians such as Plaintiffs are disfavored in hiring, promotion, and termination

18 decisions, and Cognizant's U.S. workforce is comprised almost entirely of South Asians.

19 *Id.* ¶¶ 1-2, 16-24. Fact discovery closes on March 16, 2021, and the District Court has

20 advised the parties that it will not look favorably on any further extensions to the case

21 schedule. *See* Feb. 19, 2020 Order at 3 (ECF 79). At this juncture, the parties have two

22 disputes.

23      First, Cognizant has failed to produce certain documents relating to the EEOC's

24 pattern-or-practice investigation, which Plaintiffs believe were required by the Court's

25 June 10, 2020 Order (ECF 102). Specifically, Cognizant's production lacked: ████

26 ████████████████████████████████████████

27 ████████████████████████████████████████

28 ████████████████████████████████████████

█████████████████████ This cannot be squared with the Court's Order, which required Cognizant to produce these materials, subject to reasonable redactions.

Second, Cognizant has refused to produce a witness to testify to Topics 1 and 2 to Plaintiffs' Amended Rule 30(b)(6) Deposition Notice, which sought testimony regarding a pre-production expert analysis that Cognizant has been conducting in secret for months in advance of determining what fields to provide plaintiffs. This secret analysis is a matter of great concert to Plaintiffs because an expert retained by Cognizant obviously will not propose the production of inculpatory data and her analysis can be used to ensure that unhelpful data never sees the light of day. The circumstances further suggest something unsavory was at play—Cognizant never mentioned the expert's involvement over the ten-month period in which Plaintiffs requested updates on the state of Cognizant's data productions and, once Plaintiffs caught on, Cognizant tried to conceal her involvement and walk back on the disclosure. Cognizant's objections to the Amended 30(b)(6) Notice are meritless and should be overruled.

## B. DEFENDANTS' INTRODUCTORY STATEMENT

Cognizant is a global leader in the provision of information technology and consulting services and employs more than 40,000 individuals in the United States. ECF No. 59 (Answer), ¶ 1. Cognizant is an equal opportunity employer that values diversity of backgrounds and does not tolerate discrimination. Plaintiffs bring claims under Section 1981 and Title VII alleging that Cognizant prefers "South Asians" and "Indian nationals" over non-South Asians and individuals not from India. Cognizant denies these allegations, and disputes that it has exercised any preference for individuals of any particular race or national origin. *See, e.g.*, *id.* ¶¶ 73, 78, 83. Plaintiffs also allege that they were each subject to unlawful discrimination in employment on the basis of their race or national origin, but nothing could be further from the truth. For example, Mr. Piroumian alleges that he was taken off a number of client projects and replaced by Indian South Asian employees. *See* ECF No. 45 (Second Am. Compl. ("SAC")) ¶ 34. But he was removed from those projects for reasons unrelated to his race or national origin, including poor

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)

performance as reflected in his ever-declining year end appraisal ratings. *See* Answer ¶¶ 34, 42, 45. Mr. Cox's allegations are similarly off-base, as he claims he was not rehired by Cognizant because of discrimination on the basis of national origin or race; in fact, the position for which he was briefly considered never materialized. *See id*. ¶ 58. Ms. Palmer's allegations have the same threadbare and inaccurate quality. *See, e.g.*, *id*. ¶ 31.

On June 10, 2020, this Court issued an Order regarding several discovery disputes. *See* Maryott Declaration, Exh. B (ECF No. 102, unredacted Order) ("Order"). As part of its Order, the Court resolved a question regarding what documents relating to an EEOC pattern-or-practice investigation Cognizant was required to produce. It ordered Cognizant to produce documents related to the EEOC pattern-or-practice investigation that ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Finally, neither the Order, nor the Parties' briefing, touched on the issue of whether communications with the EEOC relating to individual charges that were related to the EEOC pattern-or-practice investigation needed to be produced.

Although Cognizant has fully complied with the Court's prior Order, it is willing at this juncture to produce substantive communications with the EEOC that concern individual EEOC charges which are related to the pattern-or-practice investigation.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)

███████████████████████████████████ All that is required of this Court to rule on the EEOC-related issues here is to direct Plaintiffs to its prior Order.

Plaintiffs' second issue is beyond the pale. Put bluntly, Plaintiffs have accused counsel for Cognizant, attorneys who have practiced collectively in *this Court* for more than 30 years, of lying, not once, but multiple times. Cognizant does not take kindly to these accusations, the aim of which are to manufacture a basis to breach privilege. Plaintiffs' tactics should not be countenanced. Plaintiffs accuse Cognizant of secretly engaging a consulting expert, providing that expert with class-wide data that was not given to Plaintiffs, and then using the results of the expert's analysis on such data to refuse to produce data to Plaintiffs. Plaintiffs also accuse Cognizant's counsel of lying about it. Based solely on speculation, Plaintiffs then contend that they are entitled to know the identity of Cognizant's *consulting* experts and the substance of Cognizant's and counsel's communications with such *consulting* experts. None of this is true as a matter of fact or law, and Plaintiffs' motion should not be countenanced by the Court.

First, as will be unsurprising to the Court, Cognizant has in fact retained consulting experts, as most litigants do in putative class actions. But the only class-wide data provided to Cognizant's consulting experts is data that has been produced to Plaintiffs— *at the same time or after* it was produced to Plaintiffs. Cognizant's counsel informed Plaintiffs' counsel during a meet-and-confer call on October 22, 2020 of that fact, but Plaintiffs' counsel has refused to acknowledge this. For the avoidance of any doubt, Cognizant's counsel subsequently put this fact into writing on October 29, 2020, explaining: "**[C]ontrary to your assertion, our consulting experts are not conducting analyses on putative class data other than the data we have also already produced to you.**" (Plaintiffs' Exhibit 13, at 2.) Because putative class data was provided to

Cognizant's consulting experts either *concurrently with* its production to Plaintiffs or *after* its production to Plaintiffs, it is literally impossible for Cognizant's consulting experts to have run the analyses on the data that Plaintiffs contend were improperly run. In short, Plaintiffs' theory rests entirely on an alternate reality that does not exist.

Second, the information Plaintiffs seek—the identity of Cognizant's consulting experts and the "substance and types" of communications between them and Cognizant— are protected by the attorney-client privilege, the work product doctrine, and the non-testifying or consulting expert privilege. Indeed, Federal Rule of Civil Procedure 26(b) *explicitly* applies work product protection *and* the non-testifying expert privilege to all of the information Plaintiffs seek. Fed. R. Civ. P. 26(b)(4)(D), (D)(ii) ("[A] party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" absent "exceptional circumstances"). Because this information is protected, and Plaintiffs have failed to show exceptional circumstances, their request should be denied.

## II.     SPECIFICATION OF ISSUES IN DISPUTE

The issues in dispute between the parties are: (A) Cognizant's refusal to produce certain documents relating to the EEOC's pattern-or-practice investigation, which Plaintiffs believe were required by the Court's June 10, 2020 Order (ECF 102); and (B) Cognizant's refusal to produce a witness to testify to Topics 1 and 2 to Plaintiffs' Amended Rule 30(b)(6) Deposition Notice.

## III.     PARTIES' CONTENTIONS

### A.     CLARIFICATION OF COGNIZANT'S OBLIGATION TO PRODUCE DOCUMENTS RELATED TO THE EEOC PATTERN-OR-PRACTICE INVESTIGATION.

### 1.     THE ORDER AT ISSUE

On June 10, 2020, the Court issued the following Order:

Plaintiffs' Motion to compel defendants to produce documents responsive to RFP number 7 is granted in part as follows:

5

(1) To the extent they have not already done so, no later than August 19, 2020, defendants shall produce documents responsive to RFP number 7 in their possession, custody, or control, related to the EEOC's pattern or practice investigation that were provided to or received from the EEOC ██████████████████████ including documents reflecting testimony, and correspondence regarding the investigation or inquiry.' As specifically discussed by the parties herein, this includes, but is not limited to, applicant data from defendants' Taleo system, employee information from their PeopleSoft HCM system, the Commissioner's Charge resulting in the EEOC's pattern or practice investigation, Cognizant's communications with the EEOC from that investigation, and employee interviews from that investigation redacting only the information set forth below in part 3.



June 10, 2020 Order at 6 (ECF 102) (emphasis omitted).

## 2. PLAINTIFFS' POSITION

Previously, Plaintiffs moved to compel documents related to the EEOC's inquiry into whether Cognizant maintains a pattern or practice of race and national origin discrimination and log of any privileged withholdings. *See* 1st J. Stip. at 7-10 (ECF 82-1). The Court granted Plaintiffs' motion in part, ordering Cognizant to produce two categories of documents responsive to Plaintiffs' RFP No. 7[2] related to the EEOC's pattern or practice investigation by August 19, 2020. *See* June 10, 2020 Order at 6. First, the Court ordered Cognizant to produce documents "related to the EEOC's pattern or practice investigation that were provided to or received from the EEOC ███████████████ ███████████████ Further, for responsive documents ██████████

---

[2] RFP 7 seeks "[d]ocuments and ESI relating to any federal or state government investigation or inquiry concerning Cognizant's visas practices, Cognizant's hiring practices for positions located in the United States, Cognizant's employment practices in the United States, and/or discrimination, including, but not limited to documents provided to or received from the government, documents reflecting testimony, correspondence regarding the investigation or inquiry, and fines paid to or settlement with the government." **Ex. 3**, No. 7 (Pls.' RFPs, Set 1).

Case 5:17-cv-06848-DMG-PLA   Document 102   Filed 11/30/2020   Page 6 of 46   Page ID #:2250

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████

On August 17, Cognizant produced 145 documents concerning the EEOC investigation, including: (1) a Commissioner's Charge dated September 30, 2015; (2) a variety of mundane scheduling emails between Cognizant's attorneys and the EEOC investigator; (3) document-production cover letters; (4) a Request for Information, posing questions regarding Cognizant's hiring practices; (5) Cognizant's position statement denying any liability; and (6) Cognizant's workforce. Kotchen Decl. ¶ 2. None of the documents provide ██████████████████████████████████ ██████████████████████████████████ The most recent document in the production is dated November 5, 2018. *Id.*

The production lacked: █████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████ After exchanging written communications regarding these deficiencies (and others since resolved), the parties agreed that the dispute was ripe for resolution by the Court during a September 30 meet and confer call. *Id.*; *see also* **Ex. 4** (Aug. 25, 2020 Letter from Pls. to Cognizant); **Ex. 5** (Sept. 4, 2020 Letter from Cognizant to Pls.).

██ ██ Cognizant refuses to produce █████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████



Case 2:17-cv-06848-DMG-PLA   Document 102   Filed 11/30/20   Page 11 of 47   Page ID
#:1335

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)

Case 2:17-cv-06848-DMG-PLA   Document 102   Filed 11/30/20   Page 12 of 47   Page ID #:1333

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)



Case 2:17-cv-06848-DMG-PLA   Document 102   Filed 11/30/20   Page 13 of 47   Page ID
#:1234

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)

c)   **Documents Concerning Related EEOC Investigations**

Plaintiffs' RFP 7 sought "[d]ocuments and ESI relating to any federal or state government investigation or inquiry concerning Cognizant's visas practices, Cognizant's hiring practices for positions located in the United States, Cognizant's employment practices in the United States, and/or discrimination…." **Ex. 3** at No. 7 (Pls.' RFPs, Set 1). The Court later ordered Cognizant to produce certain responsive documents that are "*related to* the EEOC's pattern or practice investigation …." *See* June 10, 2020 Order at 6 (emphasis added). However Cognizant has apparently read "related to" to mean "part of," and refused to produce documents concerning investigations that the EEOC itself has expressly classified as "related to" the pattern-or-practice proceeding at issue. **Ex. 5** at 2 (Sept. 4, 2020 Letter from Cognizant to Pls.). For example, a former Cognizant executive, Jean-Claude Franchetti, filed an EEOC charge alleging that he was fired after he raised concerns regarding the company's discriminatory employment practices. **Ex. 6** at 1 (Feb. 5, 2020 EEOC Letter of Determination re Franchetti). The EEOC investigated the circumstances surrounding Mr. Franchetti's termination in an investigation denoted as "related." *Id.* at 1-2. Documents from that related investigation and other similar investigations should be produced.

d)   **Conclusion**

Plaintiffs request an order requiring Cognizant to: ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and (d) to produce all documents related to the EEOC's pattern-or-practice investigation, including but not limited to related investigations.

**3.   DEFENDANTS' POSITION**

As an initial matter, Cognizant has fully complied with the Court's June 10, 2020 Order, which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[3] As set forth in more detail below, Cognizant is willing to produce certain communications between itself and the EEOC for individual charges related to the pattern-or-practice investigation.

1

2                                                                                    In short, Plaintiffs

3      ask the Court to re-write its prior Order, rather than require Plaintiffs abide by it.

4

5

6

7

8                                                                                    *See Cole v.*

9      *U.S. Dist. Ct. for Dist. of Idaho*, 366 F.3d 813, 818 n.6 (9th Cir. 2004) ("[F]ailure to seek

10     reconsideration before the district court of a magistrate judge's non-dispositive order is

11     a forfeiture of the claim."). In addition (and as previously briefed),

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26     _____

27          [5] Cognizant has logged those documents withheld on the basis of attorney-client

28     privilege or the work product doctrine, *see, e.g.*, Maryott Decl., Ex. A (Aug. 17, 2020
       Production Letter) at 1–2, consistent with the Court's Order, *see* Order at 15.

In other words, contrary to Plaintiffs' claims, *see*, *supra*, pp. 8-9,

[6]

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)



Case 2:17-cv-06848-DMG-PLA   Document 102   Filed 11/30/20   Page 18 of 47   Page ID #:1339

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)



Case 2:17-cv-06848-DMG-PLA   Document 102   Filed 11/30/20   Page 19 of 47   Page ID #:1240

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)



Cognizant's production of 145 documents on August 17, 2020, contained "documents responsive to RFP number 7 in [Cognizant's] possession, custody, or control, related to the EEOC's pattern or practice investigation that were provided to or received from the EEOC

JOINT STIP. RE: DISCOVERY DISPUTES

Case No. 17-CV-6848 DMG (PLAx)

Case 2:17-cv-06848-DMG-PLA   Document 102   Filed 11/30/20   Page 20 of 47   Page ID #:1514



18

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

### c)     Documents Concerning Related EEOC Investigations

Cognizant has fully complied with this Court's prior Order, which required it to produce certain responsive documents that are "related to the EEOC's pattern or practice investigation." Order at 6. The entirety of the relevant portions of the Order, as well as the Parties' briefing on the topic, focused solely on the pattern-or-practice investigation.

That said, in a good faith effort to resolve this dispute, Cognizant is willing to produce substantive communications between Cognizant and the EEOC for EEOC charges deemed related to the EEOC pattern-or-practice investigation, including, but not limited to, the charges themselves and position statements. For the same reasons recognized in this Court's prior Order, however, to the extent they exist, [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Cognizant will also redact other information, including personally identifying information, as permitted by the Court's Order.

### d)     Conclusion

Plaintiffs both misread the Court's Order and improperly request a do-over of issues already decided by the Court. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Finally, as

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)

Case 5:17-cv-00848-DMG-PLA   Document 102   Filed 11/30/20   Page 22 of 47   Page ID #:3413

noted above, Cognizant is willing to produce certain communications between itself and the EEOC for individual charges related to the pattern-or-practice investigation, subject to the parameters set forth in this Court's prior Order.

**B.** **TESTIMONY REGARDING THE IDENTITIES OF AND COMMUNICATIONS WITH "EXPERTS" COGNIZANT RETAINED TO ANALYZE DATA PRE-PRODUCTION**

**1.** **THE REQUESTS AND RESPONSES AT ISSUE**

On October 2, 2020, Plaintiffs issued an Amended Rule 30(b)(6) Deposition Notice with three topics, two of which are at issue here:

> (1) The identity of all individuals who are not an employee of Cognizant or Gibson, Dunn & Crutcher that have been provided with Cognizant applicant, employee, staffing, benching, promotions, appraisal, and/or visa-related data (hereafter, "Cognizant data") since January 14, 2019, including each individual's name, employer, and when the individual received the Cognizant data.

> (2) The substance and types of communications that exist between Cognizant and the individuals identified in Topic (1) regarding the Cognizant data.

**Ex. 7** at 3 (Pls.' Am. 2d 30(b)(6) Notice).

On October 9, 2020, Cognizant issued the following objections to Topics 1 and 2:

> RESPONSE TO TOPIC NO. (1): Cognizant incorporates its General Objections as though fully set forth in this objection. Cognizant objects to this Topic as vague and ambiguous, including, without limitation, in its use of each and every undefined term referring to "applicant, employee, staffing, benching, promotions, appraisal, and/or visa-related data." Cognizant further objects to this Topic because it fails to "describe with reasonable particularity the matters for examination" as required by Federal Rule of Civil Procedure 30(b)(6). Cognizant further objects to this Topic to the extent that it is not relevant to the subject matter of this litigation; Cognizant fails to see any relevance at all to whether an individual as received particular data. Cognizant further objects to this Topic on the ground and to the extent that it calls for information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, doctrine, or immunity. Cognizant further objects to this Topic as seeking information not properly suited for a deposition under Federal Rule of Civil Procedure 30(b)(6). Cognizant also objects to the extent this Topic is an attempt to prematurely discover the identity of Cognizant's experts; Cognizant will disclose its experts in due course under the applicable rules and the Court's schedule.

> RESPONSE TO TOPIC NO. (2): Cognizant incorporates its General Objections as though fully set forth in this objection. Cognizant objects to this Topic as vague and ambiguous, including, without limitation, in its use of each and every undefined term referring to "the Cognizant data."

Case 2:17-cv-06848-DMG-PLA Document 110 Filed 11/30/20 Page 23 of 47 Page ID #:3911

Cognizant further objects to this Topic because it fails to "describe with reasonable particularity the matters for examination" as required by Federal Rule of Civil Procedure 30(b)(6). Cognizant further objects to this Topic to the extent that it is not relevant to the subject matter of this litigation; Cognizant fails to see any relevance at all to whether an individual has received particular data. Cognizant further objects to this Topic on the ground and to the extent that it calls for information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, doctrine, or immunity. Cognizant further objects to this Topic as seeking information not properly suited for a deposition under Federal Rule of Civil Procedure 30(b)(6). Cognizant also objects to the extent this Topic is an attempt to prematurely discover the identity of Cognizant's experts; Cognizant will disclose its experts in due course under the applicable rules and the Court's schedule.

**Ex. 8** at 3-5 (Defs.' Resp. to Pls.' Am. 2d 30(b)(6) Notice).

### 2. PLAINTIFFS' POSITION

Plaintiffs filed this suit in September 2017, alleging that Cognizant maintains a pattern or practice of discrimination and engages in employment practices that have a disparate impact on non-South Asians. Compl. (ECF 1); SAC ¶¶ 1-2 (ECF 45). Statistical evidence of workforce disparities lies at the heart of both claims. *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-08 & n.14 (1977) ("Where gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination."); *see also Ricci v. DeStefano*, 557 U.S. 557, 587 (2009) (describing a "prima facie case of disparate-impact liability" as "essentially, a threshold showing of a significant statistical disparity").

For nearly two years, Plaintiffs unsuccessfully sought a commitment from Cognizant on the scope and timing of applicant and workforce data it would produce. **Ex. 3,** Nos. 1, 2, 22 (Pls.' RFPs, Set 1); **Ex. 9,** Feb. 24, 2020; Kotchen Decl. ¶ 4. Letter from Plaintiffs to Cognizant; however, Plaintiffs were unable to pin Cognizant down on the scope and timing of its production. Kotchen Decl. ¶ 4. Ultimately, a September 30, 2020, meet-and-confer call shed light on Cognizant's secrecy and delay. *Id.* ¶ 5. In response to an innocuous data-related question, Cognizant's counsel let slip that it would have to check with "our experts" to answer the question. *Id.* Plaintiffs were immediately alarmed and expressed their concern about the potential for discovery abuse inherent in having

experts analyze data in advance of deciding what data would be produced. *Id.* They then asked Cognizant who the experts were and what analyses they were conducting, but Cognizant refused to answer, citing the disclosure deadlines that apply to testifying experts for trial. *Id.*

After the call, Cognizant's counsel quickly followed-up by email in an effort to walk back the admission of the experts' involvement. *See* **Ex. 10** at 1 (Sept. 30, 2020 Email from K. Smith to D. Kotchen). Cognizant claimed that "[f]irst, Cognizant is the sole entity deciding what data to produce (not any external experts), and we are working with individuals at Cognizant, who have subject matter expertise in the data, to understand what each data field means and whether it should be produced …. I think there may have been some confusion about what we were discussing (admittedly some of it I believe was on my end)." *Id.* This statement appeared designed to suggest that Cognizant was not referring to retained experts during the call, without denying that such experts exist. Accordingly, Plaintiffs remained gravely concerned about the prospect that Cognizant was surreptitiously conducting a pre-production expert analysis that was both delaying and shaping its data productions and the careful wording of Cognizant's follow-up email exacerbated rather than alleviated these concerns. *See* **Ex. 11** at 1 (Sept. 30, 2020 Email from D. Kotchen to K. Smith) (noting Plaintiffs' lingering concerns).

To allay those concerns, Plaintiffs asked Cognizant to "confirm that no one who is not an employee of Cognizant or Gibson Dunn has been provided with [Cognizant's data] since January 14, 2019" and, if someone had, to identify that person. *Id.* When Cognizant did not immediately respond, Plaintiffs issued an Amended Rule 30(b)(6) Deposition Notice on October 2, with two topics at issue here: (1) the identities of "all individuals who are not an employee of Cognizant or Gibson, Dunn & Crutcher that have been provided with Cognizant applicant, employee, staffing, benching, promotions, appraisal, and/or visa-related data (hereafter, "Cognizant data") since January 14, 2019, including each individual's name, employer, and when the individual received the Cognizant data; and (2) "[t]he substance and types of communications that exist between Cognizant and

Case 2:17-cv-06848-DMG-PLA   Document 167   Filed 11/30/20   Page 25 of 47   Page ID

22

the[se] individuals . . . regarding the Cognizant data." **Ex. 7** at 3 (Pls.' Am. 2d 30(b)(6) Notice).

These straight-forward questions were designed to quickly and efficiently determine (1) whether Cognizant had engaged outside experts or whether they truly had only consulted with Cognizant employees (as they claimed) and (2) the nature of any such expert's input (specifically, whether it was in an effort to manipulate the data productions or to withhold data from Plaintiffs that is harmful to Cognizant). On October 9, Cognizant served boilerplate attorney-client privilege, work product, and other objections and refused to produce a witness for these topics (despite its failure to move for a protective order), **Ex. 8** at 3-5 (Defs.' Resp. to Pls.' Am. 2d 30(b)(6) Notice), and the parties scheduled a meet and confer, Kotchen Decl. ¶ 6. Plaintiffs have also issued a document request seeking the communications between Cognizant and its experts, and Cognizant lodged objections to the same effect. *Id.* ¶ 6.

During the October 22 meet and confer, <u>Cognizant finally admitted that it had, in fact, retained an outside expert who had, in fact, been analyzing its employment data prior to production all along.</u> *Id.* ¶ 7.[8] Cognizant then claimed that it had always planned to produce Plaintiffs' requested data fields once its expert conducted an analysis and identified any additional data fields she needed, so they could be produced at the same time. *Id.* This was more "efficient" for both parties, Cognizant claimed, but offered no reason why it was kept secret from Plaintiffs. *Id.* This was the first time Cognizant had mentioned this plan to Plaintiffs. *Id.*

Cognizant's explanations seemed suspect because (1) Cognizant never mentioned the expert analysis when Plaintiffs repeatedly inquired about the status and content of its data productions over the past year; (2) Cognizant tried to mislead Plaintiffs once they correctly deduced that an expert had been retained; and (3) the analysis has already taken nearly a year and is still incomplete. Thus Cognizant's disclosures did not assuage

---

[8] Cognizant went on to state that it had only provided the expert with the applicant and employee data previously provided to the EEOC. *Id.* ¶ 7.

Case 5:17-cv-00848-DMG-PLA   Document 102   Filed 11/30/20   Page 26 of 47   Page ID #:3956

Plaintiffs' concerns and Cognizant persisted in refusing to identify the expert, to provide the requested information regarding the nature of Cognizant's communications with the expert, and claimed (for the first time) that she is a consulting expert immune from discovery. *Id.* ¶ 7. Accordingly, the parties could not resolve the dispute. *Id.* Since the meet and confer, Cognizant has produced only some of the outstanding data, and all of Plaintiffs' questions about the expert's pre-production analysis remain outstanding. *Id.*

### a)    The Work Product Doctrine Does Not Apply

A non-testifying expert's communications are discoverable "on terms generally applicable to other work product." ABA, Edna Selan Epstein, Attorney-Client Privilege & the Work-Product Doctrine § 2.VII.B.2 (6th ed. 2017). Common-law work product doctrine provides qualified protection against discovery of a party's litigation and trial preparation efforts. *See Hickman v. Taylor*, 329 U.S. 495, 508-10 (1947).[9] Primarily, work product doctrine protects attorneys' legal strategies and mental impressions "to preserve 'the historical and the necessary way in which lawyers act within … our system of jurisprudence.'" *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995) (citation omitted). Secondarily, it also "prevent[s] one party from exploiting the other party's efforts to prepare for litigation" by piggybacking on opposing counsel's fact-collection efforts. *Id.* (citation omitted). Overall, "the privilege is 'not to protect any interest of the attorney, who is no more entitled to privacy or protection than any other person, but to protect the adversary trial process itself.'" *Moody v. IRS*, 654 F.2d 795, 800 (D.C. Cir. 1981) (citation omitted).

In line with its dual purposes, protected work product can be divided into two categories—core opinion work product, "including the mental impressions, conclusions, opinions, or legal theories of an attorney," and ordinary fact work product. *S. Union Co. v. Sw. Gas Corp.*, 205 F.R.D. 542, 549 (D. Ariz. 2002). Attorney opinions are provided near absolute protection. *See Holmgren v. State Farm Mutual Auto. Ins. Co.*, 976 F.2d

---

[9] The work product protection codified in Rule 26(b)(3) only applies to "documents and tangible things." Fed. R. Civ. P. 26(b)(3)(A).

Case 2:17-cv-06848-DMG-PLA   Document 160   Filed 11/30/20   Page 51 of 71   Page ID #:926

573, 577 (9th Cir. 1992) (holding that opinion work product is entitled to nearly absolute protection with limited exceptions). However, ordinary work product enjoys only qualified protection and therefore "may be overridden if the party that seeks the otherwise protected materials 'establish[es] adequate reasons to justify production.'" *United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2016) (quoting *Hickman*, 329 U.S. at 512). For "facts known or opinions held by" non-testifying experts, production is justified "on [a] showing [of] exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii).

In this case, those circumstances exist for several reasons. **First**, "exceptional circumstances [have] been shown where a non-testifying expert's report will be used by a testifying expert as the basis for an expert opinion," *Hartford Fire Ins. Co. v. Pure Air on the Lake, Ltd.*, 154 F.R.D. 202, 208 (N.D. Ind. 1993), including when (as here) the non-testifying expert selected the data to be used in a testifying expert's analysis, *Pinal Creek Grp. v. Newmont Mining Corp.*, No. 91-1764, 2006 U.S. Dist. LEXIS 45015, at *19 (D. Ariz. June 30, 2006); *Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 U.S. Dist. LEXIS 21100, at *18 (D. Md. 1999) ("Defendant cannot properly cross-examine Dr. Medoff without first understanding how [the non-testifying expert] manipulated the data."), *aff'd* 203 F.3d 821 (4th Cir. 2000). This policy is even more compelling when an expert witness conducts a secret analysis on an employer's data in advance of determining what fields will be produced, because the data limitations not only shape the expert's analysis, they determine the evidence that will be available to Plaintiffs at all.

**Second**, Cognizant cannot invoke the work product doctrine to protect a secret pre-production expert analysis that it has improperly concealed. Courts have held that "unprofessional" or "unethical" conduct "vitiate[s] the work product doctrine . . . [b]ecause [the doctrine's] purpose 'is to protect the integrity of the adversary process . . . [and] it would be improper to allow an attorney to exploit the [protection] for ends that are antithetical to that process.'" *United States v. Christensen*, 828 F.3d 763, 805 (9th Cir.

25

Case 2:17-cv-06848-DMG-PLA Document 102 Filed 11/30/20 Page 28 of 47 Page ID #:2626

2016) (quoting *Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983)); *see also Parrott*, 707 F.2d at 1271-72 (holding that secretly taping witness interviews, although legal, was inappropriate and vitiated the work product protection as to those recordings).

Here, Cognizant's conduct violated several rules or professional norms. Cognizant was required to conduct a "reasonable inquiry" before serving its discovery responses, Fed. R. Civ. P. 26(g), and to clearly apprise Plaintiffs of the data it was willing and unwilling to produce in the response, *Grover Prods. Co. v. Midwest Truck & Auto Parts*, No. CV 18-127-AB (PLAx), 2018 U.S. Dist. LEXIS 223789, at *8 (C.D. Cal. Oct. 30, 2018) (Abrams, J.) ("any objection must 'state whether any responsive materials are being withheld on the basis of that objection,' and an objection to only part of a request must specify the part and permit inspection of the rest") (quoting Fed. R. Civ. P. 34(b)(2)(C)). Further, the Rules required Cognizant to produce the requested documents and data either with its responses or "another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B).

But Plaintiffs served their data requests in January 2019 and Cognizant responded on August 30 of that year. **Ex. 3,** (Pls.' RFPs, Set 1); **Ex. 12** (Defs.' Resp. to Pls.' RFPs, Set 1). Although, Cognizant had eight months to conduct its inquiry, for each of Plaintiffs' data requests (RFP Nos. 1, 2, 22) the company only stated that "Defendants will meet and confer with Plaintiffs regarding the nature and scope of information they are willing to produce in response to this Request." **Ex. 12,** Nos. 1, 2, 22. That statement was not only fatally non-specific, it was also false—Cognizant did not work with Plaintiffs in any meaningful way, rather they conferred with their expert, largely ignoring Plaintiffs and steadfastly concealing the process used to select the data.

Further, Cognizant's responses certified that it would "produce responsive documents … on a rolling basis, subject to the entry of a suitable protective order and ESI protocol." **Ex. 12** at 5, ¶ 15. This was insufficiently specific and (once again) false as (with limited exceptions) Cognizant did not begin producing data responsive to RFP Nos. 1, 2, and 22 until September 2020, when Plaintiffs discovered their secret pre-production

Case 5:17-cv-06848-DMG-PLA   Document 102   Filed 01/06/22   Page 29 of 47   Page ID
#:5861

expert, noted the impropriety, and demanded immediate production by invoking the timing provisions of Rule 34. Accordingly, the response failed to truthfully disclose Cognizant's production-timing plan, instead hiding behind a vague promise of rolling productions (which did not comply with Rule 34 in any event). Moreover, a year-long delay (in addition to the 8 months Cognizant already had) to conduct a secret pre-production expert analysis could never constitute a "reasonable time" for producing documents, had it been disclosed. This was an egregious violation of Rules 26(g) and 34, which has severely undermined the discovery process.[10]

Moreover, disclosure is appropriate because Cognizant's conduct presents a unique risk to the adversary system, such that "[n]on-disclosure would … provide an incentive for, rather than against, the ['unfair and sharp'] practices" that the work product doctrine was intended to avoid. *Moody*, 654 F.2d at 800. Obviously, an expert retained by Cognizant will not propose the production of inculpatory data and her analysis can be used to ensure that such unhelpful data never sees the light of day. The circumstances further suggest something unsavory was at play—Cognizant never mentioned the expert's involvement over the ten-month period in which Plaintiffs requested updates on the state of Cognizant's data productions and, once Plaintiffs caught on, Cognizant tried to conceal her involvement and walk back on the disclosure. These are the kinds of "sharp tactics," made possible by exploiting the work product protection, that courts do not allow.

**Third**, "[a] number of cases hold that 'exceptional circumstance' allowing for discovery of a non-testifying expert's opinion exist where the object or condition observed is not observable by an expert of the party seeking discovery." *Hartford Fire Ins. Co.*, 154

---

[10] The ethical rules also prohibit this type of manipulative discovery gamesmanship. *See* ABA Model R. 3.4(a) ("A lawyer shall not … unlawfully obstruct another party's access to evidence"); ABA Model R. 3.4(c) ("A lawyer shall not … knowingly disobey an obligation under the rules of a tribunal except for an open refusal"); ABA Model R. 3.4(d) ("A lawyer shall not … in pretrial procedure … fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party").

F.R.D. at 208 (citing *Delcastor, Inc. v. Vail Assoc.*, 108 F.R.D. 405, 409 (D. Colo. 1985); *Dixon v. Cappellini*, 88 F.R.D. 1 (M.D. Pa. 1980)). Here, Plaintiffs lack direct access to Cognizant's complete employee data, which is exclusively within the company's possession. Although Cognizant has provided a list of over 3,000 employee data fields, there is no way to meaningfully compare these fields to the produced data to evaluate Cognizant's withholdings. Kotchen Decl. ¶ 8. As Cognizant itself has explained, "the sheer volume of those fields and their unintuitive naming conventions [make] assessment of which fields might need to be pulled for this litigation difficult to discern. This [is] further complicated by the fact that no data dictionary exists for these fields." **Ex. 13** at 1, Oct. 29, 2020, Letter from Cognizant to Pls. Thus Plaintiffs have no way to understand what the myriad unproduced fields with unintuitive names (such as "GVT_DESCR40" "EFFDT" "EFFSEQ" and "PER_ORG," Kotchen Decl., ¶ 8) would have shown. Because of that, there is no practical way for Plaintiffs to discern how the data Cognizant chooses to produce has been shaped by its expert's pre-production advice and analysis. This qualifies as an exceptional circumstance. *See Derrickson*, 1999 U.S. Dist. LEXIS 21100, at *19 ("Only [the non-testifying expert] knows what he did to the data [before providing it to the testifying expert], and because that information is exclusively within the [his] cognizance, Defendant is entitled to it under Rule 26(b)(4)(B)").

**Fourth**, the policies that justify protecting fact work product do not apply in any event. Plaintiffs "do[] not seek to build [their] own case with the discovery of [Cognizant's] work" but rather seek to understand the ways in which the expert's analysis shaped Cognizant's data production and to understand whether further fields should be produced. *Pinal*, 2006 U.S. Dist. LEXIS 45015, at *22-23. Challenging the other party's evidence in this manner is "entirely proper in our adversary process of truth finding." *Id.* Thus ordering testimony concerning the disputed materials would not undermine the interests the work product doctrine aims to protect. The information requested does not warrant protection.

Case 5:17-cv-06848-DMG-PLA Document 102 Filed 11/30/20 Page 31 of 47 Page ID #:2597

### b) <u>Attorney-Client Privilege</u>

The attorney-client privilege applies "(1) [w]hen legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). The privilege extends to a client's confidential disclosures to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). The burden of establishing an evidentiary privilege rests with the asserting party. *Weil v. Investment/Indicators, Res. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). In order for the party asserting privilege to carry his or her burden, that party must present "detailed facts which make clear that the specifically identified and described documents are protected under the doctrine." *Sedlacek v. Morgan Whitney Trading Grp., Inc.*, 147 F.R.D. 227, 332 n.3 (S.D. Cal. 1993).

First, and foremost, Cognizant has failed to describe the withheld material in a manner that suffices to establish the elements of the attorney-client privilege, as required. *Id.* Thus Cognizant cannot meet its burden.

Second, the expert's identities cannot be covered by the attorney-client privilege because the expert's identity is a fact of which Cognizant has knowledge, and facts do not fall within the attorney-client privilege. *See* Edna Selan Epstein, Attorney-Client Privilege & the Work-Product Doctrine § 3.I (ABA 6th ed. 2017) ("Underlying facts regardless of their source are discoverable. It is only the content of communications between attorneys and their agents and clients and their agents where those communications have the purpose of seeking or giving legal advice that is not.").

Third, the communications are not covered by the attorney-client privilege. "[A] communication from the attorney to [an expert] 'for the purpose of advising and defending his clients' also may be protected" but only "if it reveals confidential client communications." *Christensen*, 801 F.3d at 1007. "The scope of [this] privilege should

Case 3:11-cv-00848-DMG-PLA Document 162 Filed 11/30/20 Page 32 of 47 Page ID

be 'strictly confined within the narrowest possible limits.'" *Id.* Qualifying statements may include "that [the client] would be willing to offer or accept to resolve the litigation and the fact that [the client] was putting his faith in the mediator." *Id.* at 1008. But attorney-expert communications concerning Cognizant's data in general, or what data fields to produce or withhold (and why), are unprivileged, as such communications do not convey privileged attorney-client information. Rather, they convey facts regarding the data that exists, the information exchanged, the expert's analysis, and the limits placed on the productions. For this reason, communications with *testifying* experts are subject to mandatory discovery under Rule 26(b)(4)(C) Accordingly, the attorney-client privilege assertion is unsustainable with respect to the noticed topics.

### c) Cognizant's Other Miscellaneous Objections

Cognizant also raised a smattering of other boilerplate objections, which Plaintiffs briefly address here. First, while Cognizant objected that the terms "applicant, employee, staffing, benching, promotions, appraisal, and/or visa-related data" are vague and ambiguous, the terms have been used by the parties throughout the lawsuit and Cognizant plainly understands the disputed data sets to which Plaintiffs refer. Similarly, Cognizant plainly knows the experts and data to which Plaintiffs refer—those analyzing Cognizant's data in advance of determining what information to produce to Plaintiffs in discovery.

Second, both topics meet the "reasonable particularity" standard of Rule 30(b)(6), as they are straightforward, and request testimony concerning two narrow subjects of inquiry (the identity of certain individuals and communications with those individuals). *See* Fed. R. Civ. P. 30(b)(6) (deposition notice "must describe with reasonable particularity the matters for examination"); *Klopman-Baerselman v. Air & Liquid Sys. Corp.*, No. 3:18-cv-05536, 2019 U.S. Dist. LEXIS 179400, at *10 (W.D. Wash. Oct. 16, 2019) ("'An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task . . . [w]here . . . the defendant cannot identify the outer limits of the areas of inquiry") (citation omitted). Thus, the topics satisfy the requirements of Rule 30(b)(6).

Third, Cognizant's relevance objection is meritless. The communications are relevant to determining whether Cognizant is conducting a preemptive expert analysis designed to obfuscate any statistical disparities and avoid producing any data fields that may prove harmful to Cognizant. *See* Fed. R. Civ. P. 26(b)(1). Not only is such information relevant to this case, Cognizant's approach is inappropriate and can only have been undertaken to shield information detrimental to Cognizant's defenses from Plaintiffs.

Finally, Cognizant objected that both topics were an attempt to prematurely obtain discovery regarding Cognizant's experts. But Cognizant has disavowed reliance on the unidentified expert as a testifying witness at trial and the disclosure-timing provisions of Rule 26(b)(4) do not apply to non-testifying experts. Thus, the requested discovery is not premature.

### d)  <u>Conclusion</u>

The Court should issue an order overruling Cognizant's objections and order Cognizant to confer with Plaintiffs about a date for the deposition to proceed. In the alternative, the court should review the disputed communications between Cognizant and its expert(s) *in camera* to determine whether the deposition testimony at issue qualifies for protection.

### 3. DEFENDANTS' POSITION

Plaintiffs are not entitled to the information they seek. They know this, so in an effort to persuade this Court that they should be given access to privileged information, they rely upon a conspiracy theory untethered to reality. Cognizant and its counsel, who have practiced in this Court for more than three decades collectively, take serious affront to the unfounded accusations against them—the sort of baseless accusations that contravene this Court's Civility and Professionalism Guidelines. In order for this Court to grant the extraordinary request the Kotchen & Low firm makes here, this Court will have to ignore the timeline of events, ignore the Parties' written communications, and conclude that Cognizant's attorneys are lying.

Case 2:17-cv-06848-DMG-PLA   Document 102   Filed 11/30/20   Page 34 of 47   Page ID

Plaintiffs' argument suffers from two infirmities: (1) it is premised on rank speculation that lacks any relationship to the truth; and (2) it is legally untenable because communications with consulting experts in this case are protected by privilege.

### a) <u>The Facts</u>

The facts here are actually quite mundane. Rather than become mired in trying to respond to each falsehood or half-truth above, Cognizant will simply set forth the relevant facts by clearly articulating what it has and has not done—something it has already clearly articulated to Plaintiffs. As an initial matter, Cognizant has, as many litigants in civil cases do, engaged consulting experts in this matter. Nothing about that it surprising, secret, or improper. Although not discoverable (and without waiving privilege or any other protection), for the sake of resolving this issue efficiently, Cognizant will briefly set forth the relevant facts with a reference to its engagement with its consulting experts, to the extent relevant, as well as the role of internal subject-matter experts at Cognizant.

*<u>Data Request and Production Timeline</u>*:

Plaintiffs' story that Cognizant has been working with experts for years in secrecy in order to thwart Plaintiffs' access to data is false and also belied by the actual timeline of discovery in this case. Plaintiffs served their First RFPs in January 2019, but the Parties jointly sought clarification from the Court as to whether discovery could commence prior to the Court's ruling on the then-pending Motion to Dismiss the Second Amended Complaint. *See* ECF No. 52. On February 4, 2020, the Court clarified: "if the parties can *mutually* agree to engage in certain aspects of the discovery process, such as initial disclosures, they may do so. If there are disputes as to what discovery would be affected by the pending Motion to Dismiss, then obviously there is no mutual agreement and discovery as to those topics may not proceed prior to the Scheduling Conference." ECF No. 53 at 2. The Court ruled on the pending Motion to Dismiss on August 9, 2019, ECF No. 58, which is when discovery in this matter, including discovery regarding data, began in earnest.

Immediately thereafter, Plaintiffs served a Rule 30(b)(6) Notice, but agreed in an email dated October 21, 2019, to withdraw the Notice following a hearing with the Court, provided that Cognizant agree to produce additional information. *See* Maryott Decl, Ex. D at 1. One of Plaintiffs' requests was "[a] list of the data fields contained in each system or database identified in Cognizant's written response to Topic 1 and in its Answer to Interrogatory No. 5." *Id.* On December 13, 2019, Cognizant produced an Excel spreadsheet that Cognizant represented contained a list of the data fields available in the numerous databases that Cognizant utilizes to maintain information. Maryott Decl. ¶ 6. There were more than 3,000 data fields identified. *See* Kotchen Decl. ¶ 8.

Ultimately, rather than identify the specific fields it wanted pulled, Plaintiffs sent Cognizant a letter more than two months later, on February 24, 2020, setting forth, in plain language, the data they would like to receive. *See* Plaintiffs Ex. 9. To meet Plaintiffs' request, Cognizant has undertaken a lengthy effort, working with multiple subject matter experts at Cognizant who have knowledge of the various databases and processes, to understand what data would satisfy the plain language requests and how to extract it. Counsel for Cognizant has also informed Plaintiffs of these facts. *See* Plaintiffs' Ex. 13 at 1–2 ("The conversion from [the] plain English list [of data requested by Plaintiffs] to determining aligning fields has been an ongoing process through which we have worked with Cognizant's internal subject matter experts."). The details of such conversations and decisions are, of course, privileged and protected under the attorney-client privilege or work product doctrine. Not even Plaintiffs contend otherwise.

This has not been an easy process, and Cognizant is aware of Plaintiffs' frustrations with what they see as delay. But, as Cognizant informed Plaintiffs' counsel, some of the timing challenges have been attributable to Plaintiffs' prioritization of other discovery requests and to the intervening global pandemic: In "the intervening months [between the February data letter and the present], you have repeatedly prioritized and pressed other issues, which has forced us to divert our (and our client's) attention away from data to other projects, including, but not limited to: briefing two joint stipulations (only one of

Case 2:17-cv-06848-DMG-PLAx   Document 160   Filed 11/30/20   Page 36 of 47   Page ID #:3594

JOINT STIP. RE: DISCOVERY DISPUTES
Case No. 17-CV-6848 DMG (PLAx)

which you ultimately elected to file); completing the court-ordered discovery as a result of that joint stipulation, which included Ms. Dooley reviewing more than 800 employee complaints; responding to countless emails from you, some of which raise fair, good faith questions about discovery, but many of which are hyperbolic missives impugning our integrity (none of which have proven to be true, but *all* of which have required us to divert resources in order to respond); additional requests for a variety of Cognizant's regularly run reports, which we have provided; multiple Rule 30(b)(6) notices, which you appear to be using as a substitute for interrogatories, and to which we have been forced to respond; and a variety of other concerns and requests, the vast majority of which we have addressed in due course. In the interim, we have all also dealt with a global pandemic, which has created additional difficulties." Plaintiffs' Ex. 13 at 2.

Nonetheless, as of the drafting of this portion of the joint stipulation on November 24, 2020, Cognizant has produced the following: applicant data from its Taleo database covering the class period; allocation data for employees for the class period, including information on where each individual employee was staffed; and appraisal data for employees, *i.e.*, each employee's year end appraisal score, if he or she received one. *See* Maryott Decl. ¶ 8. It also produced employee-related data that had been produced previously to the EEOC, as required by the Court's June 10, 2020 Order. *Id.* It is currently in the process of producing additional employee-related data that Plaintiffs have requested. *Id.* In sum, Plaintiffs have now been provided mountains of data regarding each Cognizant U.S. applicant, and each Cognizant U.S. employee, over the last seven years, at extreme expense and disruption to Cognizant. Plaintiffs, on the other hand, have shouldered virtually no burden in discovery and have done little other than to continually demand more and more invasive and burdensome discovery from Cognizant.

*The role of Cognizant's consulting experts*:

As Plaintiffs presumably have done with their own consulting experts, Cognizant has conferred with its consulting experts regarding the type of data that generally would be relevant to this case. Nothing about such conversations is surprising, much less

Case 2:17-cv-06848-DMG-PLA   Document 105   Filed 11/30/20   Page 37 of 47   Page ID
#:3086

improper. And, such conversations are protected. Mindful of the obligation to produce information that Cognizant intends to use to defend this action, Cognizant planned to not only provide Plaintiffs the information they asked for, but also information that Cognizant may ultimately use as well. This approach creates efficiencies for Cognizant employees tasked with pulling the data and also avoids the confusion that can occur when competing experts are working from different data sets. Cognizant informed Plaintiffs of this intention and also informed Plaintiffs that if they prefer, Cognizant could just produce exactly what Plaintiffs asked for, without more. *See* Plaintiffs Ex. 13 at 2 ("[A]s we advised you, we had separately asked our consulting experts to identify data *in addition to the data you requested*, they would include in a dataset.") Plaintiffs now attempt to twist Cognizant's forthright disclosure into something it is not. To be crystal clear, Cognizant's consulting experts are not conducting some secret analysis of the putative class data in order to make determinations about what data to hide from Plaintiffs.

Cognizant has provided some putative class-wide data to its consulting experts. But critically, the only putative class-wide data provided to Cognizant's consulting experts is data that has also been produced to Plaintiffs. *See id.* at 2. Cognizant's counsel informed Plaintiffs' counsel during a meet-and-confer call on October 22, 2020 of that fact, but Plaintiffs' counsel either did not understand[11] or concluded without basis that Cognizant's counsel is lying. *See* Maryott Decl. ¶ 7. In an attempt to avoid any further confusion, Cognizant subsequently explained this again, in writing. *See* Plaintiffs' Ex. 13 at ("[C]ontrary to your assertion, our consulting experts are not conducting analyses on putative class data other than the data we have also already produced to you."). Because putative class-wide data was provided to Cognizant's consulting experts either

---

[11] Plaintiffs' contention that "During the October 22 meet and confer, Cognizant finally admitted that it had, in fact, retained an outside expert who had, in fact, been analyzing its employment data ***prior to production*** all along" is simply false. *See* Maryott Decl. ¶ 7. To the extent that Cognizant's consulting experts have received putative class-wide data, it has been concurrently with, or after, its production to Plaintiffs. *Id.*

*concurrently with* its production to Plaintiffs or *after* its production to Plaintiffs, it would have been literally impossible for Cognizant's consulting experts to have run the analyses on the data that Plaintiffs contend were improperly run. That Plaintiffs continue to pursue this line of inquiry after Cognizant's counsel has repeatedly explained that Plaintiffs are mistaken about the situation is baffling.

Finally, Cognizant has had conversations with its consulting experts about the already-produced data sets. Again, nothing about that is surprising or improper. Indeed, if Cognizant did not discuss the as-produced data with its consulting experts, *that* would be odd.

**b)** **Cognizant's communications with its consulting experts regarding this matter are protected.**

The information Plaintiffs seek to obtain—namely, the identities of Cognizant's consulting experts and the "substance and types of communications" between those consulting experts and Cognizant and its attorneys—is protected by the attorney-client privilege, the work product doctrine, and the non-testifying or consulting expert privilege. Indeed, the attorney-client privilege, by its plain terms, applies to the substance and types of Cognizant's communications with its consulting experts, and Federal Rule of Civil Procedure 26(b) *explicitly* applies work product protection to those communications, as well as to the experts' identities. Indeed, Rule 26(b)(4)(D) is known as the "non-testifying expert privilege" or the "consulting expert privilege," which applies to both types of information Plaintiffs seek. Cognizant's objections to the Rule 30(b)(6) topics included objection "on the ground and to the extent that it calls for information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, doctrine, or immunity." Plaintiffs' Ex. 8 at 3–5.

**1)** ***The "Substance and Types of Communications" With Consulting Experts Are Protected by the Attorney-Client Privilege***

It is well-established that the attorney-client privilege applies to the "substance and types of communications" between a party's attorneys and that party's consulting experts.

Indeed, courts routinely liken the role of a consulting expert "to that of an interpreter or translator whose work [is] necessary or helpful in providing legal services" in finding that an attorney's "communications with [experts] to assist in providing legal advice fall within the privilege." *Todd v. STAAR Surgical Co.*, 2015 WL 13388227, at *5 (C.D. Cal. Aug. 21, 2015). In other words, "the attorney-client privilege applies to communications [to persons] to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted; *this clearly includes communications to a consulting expert*." *DeLuca v. State Fish Co., Inc.*, 217 Cal. App. 4th 671, 688 (2013) (internal quotations and citation omitted) (emphasis added) ("The attorney-client privilege applies to communications made by the client or the attorney to the expert in order for the expert to properly advise counsel."); *Odyssey Reinsurance Co. v. Nagby*, 2018 WL 1963665, at *3 (S.D. Cal. Apr. 26, 2018) ("Under California privilege law, communications between an attorney and an expert solely retained as a consulting expert may be privileged" (emphasis omitted)); *STAAR Surgical Co.*, 2015 WL 13388227, at *5 ("[I]t is well-established that the attorney-client privilege may extend to communications with a third party where that third party has been retained as an agent for the purposes of assisting a lawyer in providing legal advice to a client."); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2485382, at *4 (N.D. Cal. June 8, 2017) (same); *United States v. Ganesh*, 2017 WL 11439117, at *3 (N.D. Cal. Oct. 20, 2017) (agreeing that "production of the communications between [defendant] and [his expert] that [the expert] used solely in his role as consulting expert 'would certainly result in . . . a breach of attorney-client privilege'" (final alteration in original)). As described, *supra*, pp. 35-36, Cognizant and Gibson Dunn hired and have engaged with consulting experts for this exact purpose—to assist in defending and providing legal advice to Cognizant in the present lawsuit, not for the nefarious purposes Plaintiffs suggest.

Plaintiffs, however, have chosen to entirely ignore these facts and this case law, instead attempting to distract the court with cases about the basic tenets of the attorney-client privilege. *See supra*, pp. 29-30. Notably, the only substantive case Plaintiffs cite

in support of their argument about the purported inapplicability of attorney-client privilege, *United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2016), actually supports Cognizant's position. In *Christensen,* the court explained that communications from an attorney to a third party acting as his agent "*for the purpose of advising and defending his clients* also may be protected [by the attorney-client privilege] if it reveals confidential client communications." *Christensen*, 828 F.3d at 803 (emphasis added) (internal quotation marks and citation omitted) (noting that party seeking discovery "d[id] not dispute that communications between a lawyer and a private investigator retained by that lawyer to assist the lawyer's representation of a client" may be privileged). Moreover, in this same analysis, *Christensen* cites an additional case that directly supports Cognizant's position. *See United States v. Jacobs,* 322 F. Supp. 1299, 1303 (C.D. Cal. 1971) (finding attorney-client privilege covered a "memo from a lawyer to an accountant stating facts in confidence (which had been related to the attorney by the client) for the purpose of the lawyer obtaining the accountant's assistance in rendering a legal opinion).

Plaintiffs' request for Cognizant's communications with its experts improperly seeks attorney-client privileged materials and should be denied on this basis alone.

**2) *The "Substance and Types of Communications" With Consulting Experts and the "Identities" of Consulting Experts Are Protected by the Work Product Doctrine and the Non-Testifying Expert Privilege***

In the alternative, even if not protected by attorney-client privilege, the "substance and types of communications" between Cognizant and its consulting experts are separately protected by the work product doctrine and the non-testifying/consulting expert privilege. Indeed, Federal Rule of Civil Procedure 26 *explicitly* protects this material—something Plaintiffs simply ignore.

Federal Rule of Civil Procedure 26(b)(4)(D)—known as the non-testifying or consulting expert privilege—provides that a party "may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or

38

specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." *See, e.g.*, *Powers v. United States,* 2019 WL 5801876, at *2 (M.D. Ga. Jan. 29, 2019) ("Under the so-called 'non-testifying expert privilege,' consultative experts, retained in anticipation of litigation, who are not designated as testifying witnesses at trial are protected from discovery."). Rule 26(b)(3)(B) further provides protection over "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." And courts recognize that work product protection applies to these materials. *See United States v. Bell,* 1994 WL 665295, at *3–4 (N.D. Cal. Nov. 9, 1994) (noting that the Federal Rules of Civil Procedure and recent case law "have extended the protection of the work product doctrine to encompass materials provided 'by or for a party and that party's [consultant],'" and that Rule 26 "extends work product protection to facts known and opinions held by" non-testifying experts (quoting Fed. R. Civ. P 26(b)(3)).

Thus on its face, Rule 26 applies to the "substance and types of communications" between Cognizant and its consulting experts, and case law confirms the same. *See, e.g.*, *U.S. Inspection Servs., Inc. v. NL Engineered Sols., LLC*, 268 F.R.D. 614, 617 (N.D. Cal. 2010) (Rule 26(b) "creates a safe harbor whereby facts and opinions of non[-] testifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances.") (internal quotations marks and citation omitted) (alteration in original); *Rasnic v. FCA US LLC,* 2018 WL 3861167, at *4 (D. Kan. Aug. 14, 2018) ("Rule 26(b)(4) provides protection for communications between a party's attorney and its expert witnesses, as well as protection for 'facts known or opinions held' by a non-testifying, consulting expert." (footnote omitted)). Requiring Cognizant to divulge "the substance and types of communications" with its consulting experts would reveal "facts known [and] opinions held" by those experts, as well as their "mental impressions, conclusions, opinions, or legal theories"—in direct violation of Rule 26's non-testifying expert privilege and the work product doctrine. *See Animal Legal Def. Fund v. Olympic Game Farm, Inc.*, 335 F.R.D. 404, 407 (N.D. Cal. 2020) (granting motion to quash subpoena for

Case 2:17-cv-06848-DMG-PLA Document 102 Filed 11/30/20 Page 42 of 47 Page ID

communications between party and its consulting expert because subpoena sought "facts known or opinions held by [a non-testifying] expert who has been retained or specially employed by another party" (quoting Fed. R. Civ. P. 26(b)(4)(D)).

For this same reason, courts have extended Rule 26 "to protect *the identities* of the non-testifying experts"—the other category of information Plaintiffs seek. *Bell*, 1994 WL 665295, at *4 (emphasis added). Indeed, courts have explained that "decisions by lawyers about which people to use for confidential pretrial consultation fall into that almost sacrosanct category recognized in . . . Rule 26(b)(3), namely 'the mental impressions, conclusions, opinions, or legal theories of an attorney'" and "are as central to lawyering strategy as one can get." *In re Pizza Time Theatre Sec. Litig.*, 113 F.R.D. 94, 98 (N.D. Cal. 1986). "When these decisions relate to the *identity of experts* who will not testify, they should be disclosed only after a very substantial showing of need." *Id.* (emphasis added) (denying motion that would compel counsel to disclose identity of non-testifying experts). Thus Plaintiffs' request for "the identities of all individuals who are not an employee of Cognizant or Gibson, Dunn & Crutcher that have been provided with" Cognizant data is improper as this information is protected by the work product doctrine and the non-testifying expert privilege.

### 2) *Plaintiffs Do Not Meet Their Heavy Burden to Show Exceptional Circumstances To Compel Production*

The only way Plaintiffs can discover this privileged material would be to demonstrate the existence of "exceptional circumstances under which it is impracticable for [Plaintiffs] to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii).[12] While Plaintiffs devote many pages to their argument that these "exceptional circumstances" exist, their arguments are lacking and fail to meet their

---

[12]     The "exceptional circumstances" exception does not apply to attorney-client privileged material. As such, if the Court concludes that this information protected by the attorney-client privilege, it need not reach the question of whether "exceptional circumstances" are present.

"heavy burden." *See U.S. Inspection Servs., Inc.*, 268 F.R.D. at 617 ("the party seeking discovery from a non-testifying expert carries a heavy burden of proving the existence of exceptional circumstances").

*First,* Plaintiffs' arguments are based entirely on incorrect facts, as discussed *supra,* pp. 32-36. They argue that exceptional circumstances exist where a non-testifying expert "selected the data to be used in a testifying expert's analysis," "where an "expert witness conducts a secret analysis on an employer's data in advance of determining what fields will be produced," and where a party acts unethically, among other things. As discussed above, these claims are factually inaccurate and thus do not even come close to meeting Plaintiffs' "heavy burden."

*Second,* even if one assumed that the facts were as Plaintiffs speculate (they are not), Plaintiffs have *still not* even *alleged* the type of exceptional circumstances explicitly required by Rule 26(b)(4)(D)(ii): "exceptional circumstances *under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.*" (Emphasis added). Plaintiffs do not—and cannot—allege why it is impracticable for them to obtain the facts or opinions they seek by other means. There is no reason why Plaintiffs cannot engage their own consulting expert to help them understand the data. And if their experts conclude, based on a review of the roughly 3,000 fields identified and the information produced, that additional information is necessary to conduct their analyses, Plaintiffs can ask for whatever additional data they deem relevant.

"[C]ourt after court has refused to permit discovery of non-testifying experts" where other means to obtain the information exist. *Oki Am., Inc. v. Advanced Micro Devices, Inc.,* 2006 WL 2987022, at *3 (N.D. Cal. Sept. 27, 2006). And where, as here, the materials "at issue can easily be inspected" by the other party and where nothing "has been destroyed which cannot be retested," exceptional circumstances do not exist and discovery is inappropriate. *ExxonMobil Oil Corp. v. S. California Edison Co.,* 2013 WL 12166215, at *5 (C.D. Cal. Nov. 19, 2013) (finding no exceptional circumstances and denying motion for production of work product material); *U.S. Inspection Servs., Inc.,* 268 F.R.D. at 624

Case 3:11-cv-00848-DMG-PLA Document 102 Filed 11/30/20 Page 44 of 47 Page ID

41

(no exceptional circumstances where the party failed to explain "why other discovery methods, including interrogatories or depositions, could not have been utilized" to obtain the information it sought); *Todd v. Tempur-Sealy Int'l, Inc*., 2015 WL 1022886, at *3 (N.D. Cal. Mar. 6, 2015) (no exceptional circumstances where defendants did not show why they were unable to determine the identities of the persons they sought); *Vanguard Sav. & Loan Ass'n v. Banks*, 1995 WL 71293, at *3 (E.D. Pa. Feb. 17, 1995) (no exceptional circumstances where defendants were capable of discovering equivalent information through interrogatories to expert witnesses who would address substantially the same issues as those discussed in non-testifying expert report); *Animal Legal Def. Fund*, 335 F.R.D. at 407 ("As Defendants identify no 'exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means,' the Court finds Defendants are improperly seeking privileged communications.").

By relying on inaccurate facts and out-of-circuit case law, Plaintiffs fail to meet their heavy burden to demonstrate "exceptional circumstances" justifying the production of the information they seek. Indeed, Rule 26 is meant "to discourage lazy or unscrupulous lawyers from trying to cut case-preparation corners by leaching basic information or valuable opinions from experts retained by their opponents." *In re Pizza Time Theatre Sec. Litig.*, 113 F.R.D. at 96. Cognizant respectfully requests that the Court deny Plaintiffs' request to discover the identities of Cognizant's consulting experts and the substance of their communications with Cognizant.

### 4) *This is a Misuse of the Rule 30(b)(6) Process*

Finally, while Plaintiffs' requests would be improper in any format given that they seek privileged information, the use of a Rule 30(b)(6) notice to obtain this information is particularly problematic, and is arguably becoming a pattern in this case. In the past several months, Plaintiffs have sent two such Rule 30(b)(6) notices to Cognizant, both of which were tantamount to requests for answers to specific questions rather than corporate testimony. The proper vehicle for Plaintiffs to seek this specific information regarding

Cognizant's consulting experts (though still privileged) would have been interrogatories, which ask specific questions, rather than a 30(b)(6) deposition. *DarbeeVision, Inc. v. C&A Mktg., Inc*., 2019 WL 2902697, at *6 (C.D. Cal. Jan. 28, 2019) ("The purpose of a Rule 30(b)(6) deposition is to obtain information known to the corporation." (footnote omitted)); *Frasca v. NCL (Bahamas) Ltd*., 2014 WL 979062, at *4 (S.D. Fla. Mar. 13, 2014) (finding plaintiff's 30(b)(6) notice requesting specific "information," rather than to depose a company representative, was an improper "end‑run around [] interrogatories").

Of course, for the litany of reasons outlined above, disclosure of the information sought, by Rule 30(b)(6) or otherwise, remains improper. For that reason, this Court should deny Plaintiffs' motion.

DATED: November 30, 2020      **KOTCHEN & LOW LLP**

By: /s/ Daniel Kotchen
Daniel Kotchen

*Attorney for Plaintiffs*

DATED: November 30, 2020      **GIBSON, DUNN & CRUTCHER LLP**

By: /s/ Michele L. Maryott
Michele L. Maryott

*Attorney for Defendants*

# SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2), I attest that concurrence in the filing of this document has been obtained from the other signatories.

DATED:  November 30, 2020   By: /s/Daniel Kotchen
              Daniel Kotchen

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Court's CM/ECF system.

DATED:  November 30, 2020   By: /s/Daniel Kotchen
              Daniel Kotchen