1   THEODORE J. BOUTROUS JR., SBN 132099
      tboutrous@gibsondunn.com
2   KATHERINE V.A. SMITH, SBN 247866
      ksmith@gibsondunn.com
3   LAUREN M. BLAS, SBN 296823
      lblas@gibsondunn.com
4   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
5   Los Angeles, CA  90071-3197
    Telephone:  213.229.7000
6   Facsimile:   213.229.7520

7   MICHELE L. MARYOTT, SBN 191993
      mmaryott@gibsondunn.com
8   ELIZABETH A. DOOLEY, SBN 292358
      edooley@gibsondunn.com
9   MATTHEW T. SESSIONS, SBN 307098
      msessions@gibsondunn.com
10  GIBSON, DUNN & CRUTCHER LLP
    3161 Michelson Drive
11  Irvine, CA  92612-4412
    Telephone:  949.451.3800
12  Facsimile:   949.451.4220

13  Attorneys for Defendants
    COGNIZANT TECHNOLOGY SOLUTIONS
14  CORPORATION and COGNIZANT
    TECHNOLOGY SOLUTIONS U.S.
15  CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CHRISTY PALMER, VARTAN PIROUMIAN, and EDWARD COX, <br><br> Plaintiffs, <br><br> v. <br><br> COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION, <br><br> Defendants. | CASE NO. 2:17-CV-06848 DMG (PLAx) <br><br> **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** <br><br> **Hearing:** <br> Date: January 8, 2021 <br> Time: 9:30 a.m. <br> Place: Courtroom 8C (Telephonically or by Video) <br> Judge: Hon. Dolly M. Gee |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

II. FACTUAL BACKGROUND ........................................................................... 3

    A.    Plaintiffs' Allegations in the Second Amended Complaint....................... 3

    B.    New Allegations in the Proposed Third Amended Complaint ................. 5

    C.    Mr. Franchitti's EEOC Charge ................................................................ 7

    D.    Procedural History ..................................................................................... 8

III. THE LEGAL STANDARDS GOVERNING THIS MOTION............................. 10

    A.    Federal Rule of Civil Procedure 20 ......................................................... 10

    B.    Federal Rule of Civil Procedure 16.......................................................... 10

    C.    Federal Rule of Civil Procedure 15 .......................................................... 11

IV. ARGUMENT........................................................................................... 11

    A.    Mr. Franchitti Cannot Be Properly Joined Under Rule 20 ...................... 11

        1.    Plaintiffs' Claims and Mr. Franchitti's Claims Arise from Different Transactions and Occurrences and Do Not Share Common Questions of Law or Fact ............................................... 12

        2.    Joinder Would Be Fundamentally Unfair and Would Not Serve Judicial Economy................................................................. 16

    B.    Plaintiffs Do Not Demonstrate Good Cause to Modify the Court's Scheduling Order Under Rule 16............................................................. 17

    C.    The Rule 15 Factors Governing the Propriety of Amendment Weigh Against Granting Leave to Amend Plaintiffs' Second Amended Complaint ................................................................................................. 20

V. CONCLUSION............................................................................................. 21

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acevedo v. Allsup's Convenience Stores, Inc.*,
600 F.3d 516 (5th Cir. 2010) ...................................................................... 10

*Ahlmeyer v. Nev. Sys. of Higher Educ.*,
555 F.3d 1051 (9th Cir. 2009) .............................................................. 11, 20

*Bassett v. Haw. Disability Rights Ctr.*,
Civ. No. 18-00475 JMS-KJM, 2019 WL 2236075 (D. Haw. May 23,
2019) ........................................................................................................... 10

*Campos v. Cty. of Riverside*,
No. 14-cv-1370-JGB-KKX, 2016 WL 9173450 (C.D. Cal. Apr. 5,
2016) ................................................................................................. 11, 18, 19

*Castellucci v. JPMorgan Chase Bank, N.A.*,
No. 20-cv-04580-AB-KSX, 2020 WL 4873869 (C.D. Cal. Aug. 10,
2020) ...................................................................................................... 11, 20

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) .............................................................. 10, 16

*Coughlin v. Rogers*,
130 F.3d 1348 (9th Cir. 1997) .................................................................... 13

*DatCard Sys., Inc. v. PacsGear, Inc.*,
No. SACV 10-1288 (C.D. Cal. Nov. 29, 2011)........................................... 19

*De Stefan v. Frito Lay, Inc.*,
No. SACV 10-0112 DOC (MLGx), 2010 WL 11515253 (C.D. Cal.
Sept. 28, 2010)............................................................................................ 19

*Desert Empire Bank v. Ins. Co. of N. Am.*,
623 F.2d 1371 (9th Cir. 1980) .............................................................. 10, 11

*Franchitti v. Cognizant Tech. Sols. Corp.*,
No. 3:17-CV-06317-PGS-LHG (D.N.J. Aug. 22, 2017)........................... 8, 9, 17, 19

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Griggs v. Pace Am. Grp., Inc.*,
  170 F.3d 877 (9th Cir. 1999) ................................................................. 21

*Harter v. Carondelet Health Network*,
  No. CV-15-00343-TUC-RM, 2017 WL 10505262 (D. Ariz. Aug. 4,
  2017) ............................................................................................... 1, 20

*Jackson v. Laureate, Inc.*,
  186 F.R.D. 605 (E.D. Cal. 1999) ..................................................... 11, 18

*Jenkins v. Lares*,
  No. 2:13-CV-2273-DB, 2017 WL 3381809 (E.D. Cal. Aug. 7, 2017) ................... 11

*Jones v. R.R. Donnelley & Sons Co.*,
  541 U.S. 369 (2004) ........................................................................ 2, 16, 20

*League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*,
  558 F.2d 914 (9th Cir. 1977) ................................................................. 16

*Lodge v. U.S. Remodelers, Inc.*,
  No. CV 07-5409 CAS, 2009 WL 10674127 (C.D. Cal. Feb. 1, 2009) ................... 19

*MadKudu Inc. v. U.S. Citizenship and Immig. Servs.*,
  No. 20-CV-02653-SVK, 2020 WL 5628968 (N.D. Cal. Sept. 14, 2020) ............... 13

*McKneely v. Zachary Police Dep't*,
  CIV.A. No. 12-354-SDD-RLB (M.D. La. Aug. 6, 2013) ................................. 19

*Meraz v. Broad. Music, Inc.*,
  No. 2:18-CV-09010-VAP, 2019 WL 6703391 (C.D. Cal. May 22,
  2019) ............................................................................................... 12

*Mireles v. Paragon Sys., Inc.*,
  No. 13-CV-122-L (BGS), 2014 WL 575713 (S.D. Cal. Feb. 11, 2014) ................. 19

*Nguyen v. CTS Elecs. Mfg. Sols. Inc.*,
  301 F.R.D. 337 (N.D. Cal. 2014) ............................................................ 12

*Padron v. Onewest Bank*,
  No. 2:14-CV-01340-ODW(Ex), 2014 WL 1364901 (C.D. Cal. Apr. 7,
  2014) ............................................................................................... 12

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
Case No. 2:17-CV-06848 DMG (PLAx)

# TABLE OF AUTHORITIES

**Page(s)**

*Pasha v. Viscosi*,
   No. 2:19-cv-05672-ODW-AGR, 2020 WL 586821 (C.D. Cal. Feb. 5,
   2020) ........................................................................................................... 10

*Renati v. Wal-Mart Stores, Inc.*,
   No. 19-CV-02525-CRB, 2019 WL 5536206 (N.D. Cal. Oct. 25, 2019) ................ 15

*Robinson v. Geithner*,
   No. 1:05-CV-01258-LJO-SKO, 2011 WL 66158 (E.D. Cal. Jan. 10,
   2011) ...................................................................................................... 13, 14

*Rubio v. Monsanto Co.*,
   181 F. Supp. 3d 746 (C.D. Cal. 2016) ...................................................... 10, 12, 17

*In re Silver Wheaton Corp. Secs. Litig.*,
   No. 2:15-cv-5146-CAS (JEMx), 2018 WL 1517130 (C.D. Cal. Mar.
   26, 2018) ...................................................................................................... 18

*Smith v. Cnty. of Santa Clara*,
   No. 5:11-CV-05643 EJD, 2013 WL 3242346 (N.D. Cal. June 25,
   2013) ................................................................................................... 12, 13, 15

*United States v. Sanchez*,
   745 F. App'x 690 (9th Cir. 2018) ............................................................... 11

*Whatru Holding LLC v. Bouncing Angels Inc.*,
   No. CV 14-05187 BRO (PLAx), 2014 WL 12629952 (C.D. Cal. Sept.
   18, 2014) ...................................................................................................... 2, 20

*Woods v. Storms*,
   793 F. App'x 542 (9th Cir. 2020) ............................................................... 18

*Wynn v. Nat'l Broad. Co.*,
   234 F. Supp. 2d 1067 (C.D. Cal. 2002) ...................................................... 12

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
Case No. 2:17-CV-06848 DMG (PLAx)

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

42 U.S.C. § 1981...................................................................................................*passim*

42 U.S.C. § 2000e, *et seq.*....................................................................................*passim*

**Rules**

Fed. R. Civ. P. 15................................................................................................*passim*

Fed. R. Civ. P. 16................................................................................................*passim*

Fed. R. Civ. P. 20................................................................................................*passim*

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
Case No. 2:17-CV-06848 DMG (PLAx)

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Christy Palmer, Vartan Piroumian, and Edward Cox move this Court for leave to amend their complaint for a third time—more than three years after they filed their first complaint (on September 19, 2017) and almost a year after the deadline to amend has passed (on January 17, 2020)—this time to add a brand new plaintiff (Jean-Claude Franchitti) and his unique and unrelated *retaliation* claims.  To properly amend at this late stage, Plaintiffs must demonstrate that (1) Mr. Franchitti may be properly joined pursuant to Federal Rule of Civil Procedure ("Rule") 20; (2) there is good cause pursuant to Rule 16 to modify the Court's scheduling order, which set the deadline to amend to nearly a year ago; and (3) they have met Rule 15's requirements for leave to amend, including demonstrating that amendment would not be futile.  Plaintiffs cannot meet any of these requirements, let alone all three, and on that basis, their motion should be denied.

First, Plaintiffs have not carried (and cannot carry) their burden to demonstrate that joinder under Rule 20—a prerequisite to amending to add new parties—is appropriate here.  Plaintiffs have not carried their burden because they failed to argue joinder in their motion, save for a single sentence in a footnote; as such, the argument is waived.  Even if the argument were not waived, Plaintiffs cannot meet their burden because Mr. Franchitti's allegations sound exclusively in retaliation (which is highly individualized, and not appropriate for this class action complaint), not discrimination based on race or national origin.  Nowhere does Mr. Franchitti actually allege *he* faced discrimination based on his race or national origin, nor does he claim he was subjected to the allegedly discriminatory staffing, hiring, promotion, or termination practices that serve as the foundation of Plaintiffs' discrimination claims.  Indeed, several of his allegations contradict any argument that his claims arise from those allegedly discriminatory practices.  These facts render joinder improper.  And because joinder is improper, any amendment would be futile.  *See Harter v. Carondelet Health Network*, No. CV-15-00343-TUC-RM, 2017 WL 10505262, at *4 (D. Ariz. Aug. 4, 2017) ("In

the context of an amendment to add another party, an amendment is futile if it does not comply with Federal Rule of Civil Procedure 20."); *see also Whatru Holding LLC v. Bouncing Angels Inc.*, No. CV 14-05187 BRO (PLAx), 2014 WL 12629952, at *5–6 (C.D. Cal. Sept. 18, 2014) (assessing joinder under Rule 15 futility analysis).

Second, even if Plaintiffs could satisfy the requirements for joinder, Plaintiffs cannot satisfy Rule 16's requirement that good cause be shown to alter the Court's scheduling order deadline for pleading amendments.  This Court's scheduling order set a January 17, 2020 deadline to amend and add parties, and Plaintiffs offer no explanation for why they are nearly a year late in moving to amend to include Mr. Franchitti's Section 1981 claims.[1]  While Plaintiffs argue they delayed in amending because they were waiting for the EEOC to provide Mr. Franchitti his Right to Sue Notice, Section 1981 claims do not require exhaustion and could have been brought at any time, as Plaintiffs' prior pleadings demonstrate.  For example, Plaintiffs were in an identical position when they filed their original and first amended complaints.  For those pleadings, Plaintiffs did precisely what they could have done here:  they asserted Section 1981 claims, even while awaiting their Right to Sue Notices from the EEOC.  They further noted in those pleadings their intention to amend to include their Title VII claims following exhaustion, an intention they made good on.  Such an indication is, of course, not a requirement; but, it does go to the question of whether Plaintiffs' failure to meet the Court's scheduling order was reasonably foreseeable at the time it was entered, as well as to Plaintiffs' diligence in seeking to change the schedule.  Plaintiffs could have followed the same roadmap here, but did not for reasons they have not explained.  In light of the foregoing, Cognizant respectfully submits that Plaintiffs have failed to carry their burden to show good cause.

---

[1]  Mr. Franchitti's Section 1981 claims are also time-barred.  Section 1981 claims are subject to a four-year statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372 (2004).  Mr. Franchitti was terminated from Cognizant on July 19, 2016.  [Doc. # 117-2 ¶ 73.]

Third, Plaintiffs cannot satisfy Rule 15's requirements for amending a pleading. As noted above, amendment would be futile because Mr. Franchitti is not properly joined. Moreover, Plaintiffs' undue delay in bringing these claims, particularly the Section 1981 claims, weighs against allowing amendment. Plaintiffs have been given two previous opportunities to amend, and a third opportunity at this late date is unwarranted. Finally, denial of leave to amend will not prejudice Mr. Franchitti, as he remains free to pursue his highly individualized claims against Cognizant in a separate suit.

To prevail, Plaintiffs would need to satisfy all three of the aforementioned requirements; they satisfy none, and that failure is dispositive. For that reason, Cognizant respectfully requests this Court deny Plaintiffs' motion for leave to amend.

## II.    FACTUAL BACKGROUND

Cognizant is a global leader in the provision of information technology and consulting services. Cognizant employs approximately 40,000 individuals in the United States. In the operative Second Amended Complaint, the three named Plaintiffs—Ms. Palmer, Mr. Piroumian, and Mr. Cox—bring claims of discrimination under 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleging Cognizant prefers to employ South Asians and Indians over non-South Asians and individuals not from India (hereinafter, "non-Indians"), and alleging these supposed preferences have improperly infiltrated a range of Cognizant's employment practices, including staffing, hiring, promotion, and termination. [*See generally* Doc. # 45.] Cognizant denies these allegations; it is an equal opportunity employer that values diversity of backgrounds and opinions and does not tolerate discrimination. [*See generally* Doc. # 59.]

### A.    Plaintiffs' Allegations in the Second Amended Complaint

In their operative Second Amended Complaint, Plaintiffs' discrimination claims are rooted in their allegation that "Cognizant prefers South Asians and Indians in employment decisions and has instituted four corporate practices to fulfill its discriminatory preference." [Doc. # 45 ¶ 16.] These four claims are alleged as follows:

**(1)** Staffing:  Cognizant allegedly secures work visas for South Asians and Indians for jobs that do not exist.  [*Id.* ¶¶ 17–18.]  This purported practice allegedly creates a "robust inventory" of South Asians and Indians from which Plaintiffs claim Cognizant preferentially pulls to staff U.S. positions, eliminating opportunities for non-South Asians and non-Indians and causing those individuals to be reassigned to Cognizant's Corporate Deployment Pool, also known as "the bench."[2]  [*Id.* ¶ 20.]

**(2)** Hiring:  Cognizant purportedly gives preference to South Asians and Indians when hiring.  [*Id.* ¶ 21.]

**(3)** Promotions:  Cognizant allegedly awards lower performance scores (Year End Appraisals, "YEAs") to non-South Asians and non-Indians.  Specifically, Plaintiffs allege "[p]romotions at Cognizant are tied to an employee's YEA score," so Cognizant's practice of awarding lower scores to non-South Asians and non-Indians causes South Asians and Indians to be promoted at higher rates than their colleagues.  [*Id.* ¶ 22.]

**(4)** Terminations:  Cognizant's alleged practice of preferring South Asians and Indians when staffing positions purportedly causes non-South Asians and non-Indians to be reassigned to the bench and unable to secure new positions.  [*Id.* ¶ 23.]  Because Cognizant has an alleged policy of "terminat[ing] employees who are on the bench for more than five weeks," Plaintiffs claim non-South Asians and non-Indians are terminated more frequently than South Asians and Indians.  [*Id.*]

Each Plaintiff's claims for discrimination in hiring, staffing, promotion, and termination are grounded in one or several of these practices.  For example, Plaintiff Palmer alleges she was "repeatedly removed from her position . . . and replaced with

---

[2]  The Corporate Deployment Pool ("CDP") is a sort of virtual staging area where individuals not currently staffed in a role remain while applying for new positions.  [Doc. # 45 ¶ 15.]

Indian South Asian workers." [*Id.* ¶ 26; *see also id.* ¶ 34 (same for Plaintiff Piroumian); *id.* ¶ 55 (similar for Plaintiff Cox).]  She also claims she "received unjustifiably low performance ratings from her managers." [*Id.* ¶ 29; *see also id.* ¶ 45 (same for Plaintiff Piroumian).]  Mr. Piroumian claims he was terminated after six weeks on the bench. [*Id.* ¶ 48; *see also id.* ¶ 56 (same for Plaintiff Cox).]  Based on these experiences, Plaintiffs assert discrimination claims for disparate treatment on the basis of race under Section 1981; disparate treatment on the basis of race and national origin under Title VII; and disparate impact on the basis of race and national origin under Title VII.  [*See, e.g.*, *id.* ¶ 72 (disparate treatment claim based on Cognizant's "employment decisions, including hiring, promotion, and termination decisions"); *id.* ¶ 77 (same).]  These alleged practices also serve as the foundation for Plaintiffs' proposed class, which includes all non-South Asians and non-Indians who "were not hired, who were not promoted after being in a position at least 12 months, and/or who were terminated." [*Id.* ¶ 60.]

This Court focused on these practices in ruling on Defendants' motions to dismiss the First and Second Amended Complaints.  [*See* Doc. # 42 at 2, 6–8 (holding Plaintiffs Palmer and Piroumian exhausted administrative remedies by sufficiently identifying promotion and/or termination policies in their EEOC charges); *id.* at 9 (holding Plaintiffs stated disparate impact claim based on promotion and termination policies); Doc. # 58 at 4–6 (holding Plaintiff Cox stated disparate impact claim based on hiring practice).]

## B.   New Allegations in the Proposed Third Amended Complaint

Plaintiffs' proposed Third Amended Complaint adds allegations relevant only to Mr. Franchitti.  Yet Mr. Franchitti does not allege *he* was subjected to any of the practices Plaintiffs allege are foundational to their discrimination claims.  Instead, he alleges something different in kind—that he was subjected to targeted retaliation by his supervisor, Raj Bala, *for reasons unrelated to his race or national origin*.

Mr. Franchitti claims to be an experienced IT professional and a resident of New York.  [Doc. # 117-2 ¶¶ 6, 61.]  Cognizant hired him in April 2007 to work in its Teaneck, New Jersey, office.  [*Id.* ¶ 62.]  Mr. Franchitti does not allege he applied to any

other Cognizant jobs before Cognizant hired him, *id.*, so he does not assert a claim based on Cognizant's allegedly discriminatory hiring practice.

In 2011, he was promoted to Assistant Vice President.  [*Id.* ¶ 62.]  In this role, he served as Plaintiff Piroumian's manager in 2014.  [*Id.* ¶ 63.]  In May 2014, Mr. Franchitti claims he complained to Mr. Bala about Cognizant's alleged practice of signing fraudulent visa invitation letters, hundreds of which Mr. Franchitti claims he personally signed.  [*Id.* ¶¶ 67, 69.]  Though he alleges he witnessed non-South Asians and non-Indians in his group lose staffing opportunities in favor of South Asians and Indians, [*id.* ¶¶ 66, 68], he does not allege he personally lost any work as a result of this alleged practice.  He alleges he complained about this practice, as well, to Mr. Bala in May 2014. [*Id.* ¶ 69.]

In late 2014, as a result of Mr. Franchitti's alleged reporting, he claims Mr. Bala began retaliating against him, including by reassigning Mr. Franchitti's responsibilities to a "less experienced employee" (whose race and national origin are not alleged), [*id.* ¶ 70], by failing to approve Mr. Franchitti's legitimate business expenses, and by denying Mr. Franchitti's request to be allocated to a new role, [*id.* ¶¶ 70, 71].

Around that same time, in December 2014, Mr. Franchitti claims he was passed over for a promotion,[3] [*id.* ¶ 65]; critically, however, he does not tie his failure to be promoted to Plaintiffs' core theory of their promotions claims—that non-South Asians and non-Indians were given lower YEA scores and were therefore not promoted. Instead, he claims he did not receive a promotion in 2014 or 2015 "despite performing well" in both years, [*id.*], and specifically despite receiving top annual appraisal scores of "exceeds expectations," the highest possible YEA score, [*id.* ¶¶ 23, 64].  These allegations run directly counter to Plaintiffs' discriminatory promotion claims.  In 2016, just before his termination, Mr. Franchitti claims he received "an unjustifiably low

---

[3] He does not allege the person promoted in his stead was South Asian or Indian.

performance rating" from Mr. Bala, but he alleges the low rating was "an effort to *retaliate*" against him.  [*Id.* ¶ 74 (emphasis added).]

On July 19, 2016, Mr. Franchitti was terminated, [*id.* ¶ 73], again allegedly "in an effort to *retaliate*" against him, [*id.* ¶ 74 (emphasis added)].  Mr. Franchitti also was not "placed on the bench" before he was terminated, [*id.*], so his claims are distinct from Plaintiffs' core theory of their termination claims—that Cognizant discriminatorily terminates employees who have been on the bench for an extended period of time.

As a result of Mr. Bala's alleged actions, Mr. Franchitti seeks to add two new claims in the proposed Third Amended Complaint—retaliation claims under Title VII and Section 1981.  [*Id.* ¶¶ 99–108.]  He does not bring these claims on behalf of any proposed class.  [*Id.*]  He also tries to join Plaintiffs in bringing the three existing discrimination claims, despite the fact his own allegations tie his alleged failure to be promoted and his termination to individual retaliation, and despite his failure to allege he was subjected to the allegedly discriminatory practices that underlie Plaintiffs' hiring, staffing, promotion, and termination claims.  [*Id.* ¶¶ 85–98.]

### C.    Mr. Franchitti's EEOC Charge

On October 7, 2016, Mr. Franchitti filed a Charge of Discrimination with the EEOC.  [*See* Doc. # 117-3.]  In it he alleged Cognizant discriminated against him based on his age and national origin, and he alleged retaliation by Cognizant.  [*Id.* ¶ 1.]  Though he generally alleged he was both "denied a promotion due to age and national origin discrimination and in retaliation," [*id.* ¶ 2], and "unlawfully discharged due to age, national origin and in retaliation," [*id.* ¶ 3], his more specific allegations reveal he did not allege he was discriminated against as a result of any of the four practices at the crux of Plaintiffs' claims.  Instead, he alleged that he "received very strong reviews and feedback," but still was not promoted, [*id.* ¶ 5], and that he was terminated without having been placed in the Corporate Deployment Pool, which he claimed was evidence of retaliation, [*id.* ¶ 20].  He also generally described the termination and visa practices

7

alleged in the Second Amended Complaint, but not with respect to his own circumstances.  [*See, e.g.*, *id.* ¶¶ 21–23.]

### D. Procedural History

On August 22, 2017, Mr. Franchitti, represented by Plaintiffs' counsel, filed a False Claims Act ("FCA") complaint against Cognizant for its allegedly fraudulent visa practices, which remained under seal until September 2020.  *See Franchitti v. Cognizant Tech. Sols. Corp.*, No. 3:17-CV-06317-PGS-LHG, Doc. #1 (D.N.J. Aug. 22, 2017).  On September 19, 2017, Plaintiffs filed this case, alleging a single disparate treatment claim under Section 1981.  [Doc. # 1.]  Cognizant moved to dismiss on October 31, 2017.  [Doc. # 16.]  Plaintiffs amended their complaint on January 11, 2018, alleging Plaintiffs Piroumian and Palmer had exhausted their administrative remedies and adding Title VII disparate treatment and disparate impact claims for them.  [Doc. # 30.]  Cognizant moved to dismiss, [Doc. # 34], which the Court granted in part and denied in part on September 24, 2018, [Doc. # 42].  On November 14, 2018, more than two years ago, Plaintiffs amended their complaint for a second time, adding certain allegations and Title VII claims for Plaintiff Cox.  [Doc. # 45.]  On January 4, 2019, Cognizant again moved to dismiss, [Doc. # 48], which the Court granted in part and denied in part, [Doc. # 58].  Cognizant answered on August 23, 2019.  [Doc. # 59.]

On October 29, 2019, the Court entered a Scheduling and Case Management Order re Jury Trial, [Doc. # 75], setting case deadlines, including a January 17, 2020 deadline to amend pleadings and add parties, [Doc. # 75-1].  On February 19, 2020, after the deadline to amend had passed, and pursuant to the parties' stipulation, [Doc. # 78], the Court extended other case deadlines by six months, but made no changes to the already-passed deadline to amend.  [Doc. # 79].[4]  Since then, the parties have worked

---

[4]  On December 17, 2020, the parties submitted a joint stipulation to extend deadlines to the Court.  [Doc. # 139.]  The stipulation requests the Court extend the fact discovery deadline to September 16, 2021, class certification briefing to October through December 2021, and trial to May 2022.  [*Id.*]

collaboratively to exchange responsive information and resolve discovery disputes. *See* Maryott Decl. ¶¶ 2–3. For example, the Parties have engaged in extensive negotiations regarding custodians and search terms, ultimately agreeing on 22 custodians and upwards of 100 search terms. Plaintiffs have produced thousands of documents related to the named Plaintiffs (but have not produced any documents concerning Mr. Franchitti). *Id.* ¶ 3. Cognizant has collected and searched documents. Approximately 300,000 documents hit on the relevant search terms, and first-level review of those documents is more than 80% complete. *Id.* Cognizant intends to produce the first large set of documents by the end of this month, with others to follow thereafter. *Id.* Defendants have also produced applicant and staffing data pertaining to hundreds of thousands of individuals and intend to produce a large additional set of employee data by the end of the year, which should nearly complete data production. *Id.* ¶ 2. And Defendants have produced certain documents and other information both formally and informally requested by Plaintiffs over the past year. *Id.* The discovery process on Cognizant's end has required substantial resources, especially in light of the COVID-19 pandemic. *Id.* ¶ 4.

On September 8, 2020, the court in Mr. Franchitti's FCA case ordered Plaintiffs' counsel to serve Cognizant with the unsealed complaint. *See Franchitti v. Cognizant Tech. Sols. Corp.*, No. 3:17-CV-6317-PGS-LHG, Doc. # 5 (D.N.J. Sept. 8, 2020). On October 26, 2020, the EEOC issued Mr. Franchitti's Notice of Right to Sue. [Doc. # 117-5.] On November 11, 2020, Plaintiffs sought Cognizant's consent to amend the complaint for a third time. [Doc. # 117-6 at 9.] The parties met and conferred on November 18, 2020, and on November 23, 2020, Cognizant declined to stipulate to amendment. [*Id.* at 4, 6.] Plaintiffs filed their motion to amend on December 7, 2020. [*See* Doc. # 117.]

Gibson, Dunn & Crutcher LLP

9

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
Case No. 2:17-CV-06848 DMG (PLAx)

## III.   THE LEGAL STANDARDS GOVERNING THIS MOTION

### A.   Federal Rule of Civil Procedure 20

A motion to amend pleadings "brings into consideration" not just federal pleading rules, but also Federal Rule of Civil Procedure 20, concerning the joinder of parties. *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1374 (9th Cir. 1980); *see Bassett v. Haw. Disability Rights Ctr.*, Civ. No. 18-00475 JMS-KJM, 2019 WL 2236075, at *4 (D. Haw. May 23, 2019) ("[A]ny amended complaint must comply with Federal Rule[] of Civil Procedure . . . 20."). Under Rule 20(a)(1), joinder of plaintiffs is proper if (1) the plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; *and* (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

"Even once these requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting *Desert Empire Bank*, 623 F.2d at 1375). "A court has 'discretion to refuse joinder in the interest of avoiding prejudice and delay.'" *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 756 (C.D. Cal. 2016) (Gee, J.) (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)).

### B.   Federal Rule of Civil Procedure 16

In *addition*, a party seeking to amend after the deadline set by the court's scheduling order must satisfy the requirements of Federal Rule of Civil Procedure 16. *See Pasha v. Viscosi*, No. 2:19-cv-05672-ODW-AGR, 2020 WL 586821, at *1 (C.D. Cal. Feb. 5, 2020). Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Under Rule 16, "[g]ood cause may be found where the moving party shows it assisted the court with creating a workable scheduling order, that it is unable to comply with the scheduling order's deadlines due to matters not reasonably foreseeable at the time the scheduling order

issued, and that it was diligent in seeking a modification once it became apparent it could not comply with the scheduling order." *Campos v. Cty. of Riverside*, No. 14-cv-1370-JGB-KKX, 2016 WL 9173450, at *2 (C.D. Cal. Apr. 5, 2016) (quoting *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999)).

### C.     Federal Rule of Civil Procedure 15

Finally, a party seeking to amend its complaint must *also* satisfy Federal Rule of Civil Procedure 15, which sets forth the generally applicable standard for leave to amend.  "In the Ninth Circuit, courts consider five factors in deciding whether to grant leave to amend:  (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint."  *Castellucci v. JPMorgan Chase Bank, N.A.*, No. 20-cv-04580-AB-KSX, 2020 WL 4873869, at *3 (C.D. Cal. Aug. 10, 2020).  "[F]utility of amendment alone can justify the denial" of leave.  *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009).

## IV.    ARGUMENT

This Court should deny Plaintiffs' motion for leave to amend because Plaintiffs cannot satisfy the requirements of Rule 20, Rule 16, or Rule 15, let alone the requirements of all three.

### A.     Mr. Franchitti Cannot Be Properly Joined Under Rule 20

To properly add Mr. Franchitti, Plaintiffs bear the burden of demonstrating that Mr. Franchitti may permissibly be joined under Rule 20(a).  *Desert Empire Bank*, 623 F.2d at 1374–75; *see Jenkins v. Lares*, No. 2:13-CV-2273-DB, 2017 WL 3381809, at *3 (E.D. Cal. Aug. 7, 2017), *R. & R. adopted*, 2017 WL 3953891 (E.D. Cal. Sept. 8, 2017) ("The plaintiff bears the burden of demonstrating that the requirements of permissive joinder are satisfied.").  Plaintiffs relegate their joinder "argument" to a single sentence in a footnote, and for that reason, it is waived.  [Doc. # 117 at 12 n.3.]; *see United States v. Sanchez*, 745 F. App'x 690, 692 (9th Cir. 2018) (unpublished) (finding argument waived because it was "consign[ed] . . . to a single sentence in a single footnote").

Even if not waived, Plaintiffs' assertions fall short of satisfying Rule 20(a)'s requirement that Mr. Franchitti's claims be sufficiently related to Plaintiffs' claims. Allowing joinder here would undermine the interests of justice, prejudice Cognizant, and would not serve judicial efficiency.

1.   **Plaintiffs' Claims and Mr. Franchitti's Claims Arise from Different Transactions and Occurrences and Do Not Share Common Questions of Law or Fact**

To satisfy Rule 20(a)(1), Plaintiffs must meet two prerequisites:  (1) they must demonstrate Mr. Franchitti's claims arise from the "same transaction, occurrence, or series of transactions or occurrences" as Plaintiffs' claims; and (2) they must demonstrate that a "question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).  Plaintiffs satisfy neither.

The first prerequisite "refers to the similarity in the factual background of the claims." *Rubio*, 181 F. Supp. 3d at 756 (internal quotation marks omitted) (quoting *Padron v. Onewest Bank*, No. 2:14-CV-01340-ODW(Ex), 2014 WL 1364901, at *2 (C.D. Cal. Apr. 7, 2014)).  To be sufficiently factually similar, the claims must share some "logical relationship" and "'involve enough related operative facts'" to render joinder appropriate. *Id.* at 756–57 (quoting *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, 301 F.R.D. 337, 341 (N.D. Cal. 2014)).  While "allegations of a common discriminatory policy or practice, or a company-wide policy of discrimination" can support joinder, *Smith v. Cnty. of Santa Clara*, No. 5:11-CV-05643 EJD, 2013 WL 3242346, at *4 (N.D. Cal. June 25, 2013) (quoting *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1087 (C.D. Cal. 2002)), the alleged policy or practice must apply to *each* joined plaintiff, *see id.* at *6; *Meraz v. Broad. Music, Inc.*, No. 2:18-CV-09010-VAP (MAAx), 2019 WL

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
Case No. 2:17-CV-06848 DMG (PLAx)

6703391, at *2 (C.D. Cal. May 22, 2019) (joinder improper in part because alleged general policy of employment discrimination did not apply to plaintiff).[5]

The second prerequisite, which requires that the claims raise common questions of law or fact, is not stringent, but neither is it toothless. *See Smith*, 2013 WL 3242346, at *5. "Where claims require significant 'individualized attention,' they do not involve 'common questions of law or fact.'" *Robinson v. Geithner*, No. 1:05-CV-01258-LJO-SKO, 2011 WL 66158, at *8 (E.D. Cal. Jan. 10, 2011) (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997)).

Plaintiffs' proposed allegations relating to Mr. Franchitti do not arise from the same transaction as Plaintiffs' claims, nor do they raise common questions of law or fact. Plaintiffs claim they were *discriminated* against based on their race and national origin. Mr. Franchitti, by contrast, links each alleged adverse action he suffered to his supervisor's alleged *retaliation* against him; he does not allege discrimination based on his own race or national origin. [*See, e.g.*, Doc. # 117-2 ¶ 74 (Mr. Franchitti was terminated after receiving an unjustifiably low performance rating "in an effort to retaliate" against him); *id.* ¶ 70 (Mr. Bala reduced Mr. Franchitti's responsibilities); *id.* ¶¶ 64, 65, 70 (Mr. Franchitti was passed over for promotion in December 2014, when Mr. Bala allegedly began retaliating against him and after receiving high YEA scores).] His claims thus "arise from . . . discrete event[s] unique to [him]." *Smith*, 2013 WL 3242346, at *5.

Unsurprisingly, then, Mr. Franchitti does not claim he was impacted by *any* of the four allegedly discriminatory practices Plaintiffs allege are central to their hiring, staffing, promotion, and termination claims. *See id.* at *5 (joinder improper because plaintiff did not allege same pattern and practice as other plaintiffs); *Robinson*, 2011 WL

---

[5] Plaintiffs' cited case, *MadKudu Inc. v. U.S. Citizenship and Immigration Services*, No. 20-CV-02653-SVK, 2020 WL 5628968 (N.D. Cal. Sept. 14, 2020), is in accord. *Id.* at *4 (joinder proper where alleged discriminatory pattern and practice "adversely affect[ed] *all* Plaintiffs" (emphasis added)).

66158, at *6–8 (same).  The alleged practice of preferentially hiring South Asians and Indians does not apply to Mr. Franchitti because he did not apply to any positions other than the one for which he was hired.  [Doc. # 117-2 ¶¶ 22, 62.]  The alleged practice of giving non-South Asians and non-Indians lower YEA scores so as to preferentially promote South Asians and Indians does not apply to Mr. Franchitti because he consistently received high, not low, YEA scores.  [*Id.* ¶¶ 23, 64.]  And, the time period in which he was not promoted—2014 and 2015—overlaps almost entirely with the time in which he alleges Mr. Bala was taking retaliatory—but not discriminatory—actions against him, suggesting he believes those actions to have been retaliatory, not discriminatory.[6]  [*Id.* ¶¶ 65, 69, 70.]  Nor does the alleged practice of terminating non-South Asians and non-Indians who have been assigned to the bench for an extended period apply to Mr. Franchitti because he was not allocated to the CDP before his termination.  [*Id.* ¶¶ 24, 74.]  Finally, he was not subject to Cognizant's allegedly discriminatory practice of preferring to staff South Asians and Indians because he does not allege he personally was not staffed in certain roles based on his race or national origin, or that any position for which he should have been considered was given to a South Asian or Indian employee.  [*Id.* ¶ 21; *id.* ¶ 66 (alleging *his reports* were passed over).]  The only allegation regarding his desire to work in a different role is tied directly to his allegations of retaliation, not to any purported discrimination.  [*Id.* ¶ 71 ("[H]e was denied the role by Mr. Bala.").]

These different claims—Plaintiffs' allegations of company-wide discrimination as to hiring, promotion, staffing, and termination and Mr. Franchitti's allegations of specific instances of retaliation by a single supervisor—do not share a logical

---

[6]  Though he alleges "the vast majority of promotions at Cognizant were awarded to South Asian and Indian employees," [Doc. # 117-2 ¶ 65], he does not allege that any promotion for which he was qualified or in which he was interested was given to a South Asian or Indian person, and he does not allege that Mr. Bala discriminated against him based on his race or national origin.

relationship or operative facts.  Mr. Franchitti's retaliation-based claims require him to "produce individualized proof"—indeed, even if Plaintiffs could "establish[] a pattern and practice of discrimination," this evidence would "not [be] sufficient for [Mr. Franchitti] to prevail."  *Renati v. Wal-Mart Stores, Inc.*, No. 19-CV-02525-CRB, 2019 WL 5536206, at *5 (N.D. Cal. Oct. 25, 2019).

Moreover, several of Mr. Franchitti's allegations directly contradict Plaintiffs' discrimination claims, further making joinder improper.  *See Smith*, 2013 WL 3242346, at *6 & n.2 (joinder improper where plaintiff's claims contradicted properly joined plaintiffs' claims).  For example, Mr. Franchitti complains he was *not* assigned to the bench before being terminated, whereas Plaintiffs tie their termination discrimination claims to an alleged practice of terminating non-South Asians and non-Indians who have spent time on the bench without a new project.  [Doc. # 117-2 ¶¶ 24, 74.]  Mr. Franchitti also alleges he was an active participant in the alleged visa-fraud practice that Plaintiffs challenge as discriminatory, [*id.* ¶ 67], and that he was Plaintiff Piroumian's supervisor when Mr. Piroumian allegedly faced discrimination, [*id.* ¶¶ 35, 38, 63].

Finally, Plaintiffs try to connect Mr. Franchitti's claims to theirs by noting that Plaintiffs' "existing invitation letter allegations are based on Mr. Franchitti's experiences," [Doc. # 117 at 2; *accord id.* at 7], but this approach fares no better.  Those allegations are not operative facts for Mr. Franchitti's retaliation-based claims because he does not allege he was subjected to the alleged practice of preferring visa-holders.  *See Smith*, 2013 WL 3242346, at *5.  Mr. Franchitti's alleged reporting of those practices, or his signing of allegedly false invitation letters, does not render his separate and distinct retaliation-based claims "logically related" to Plaintiffs' discrimination claims.  *Id.*  That Mr. Franchitti is a potential *witness* in this case does not make him a proper *plaintiff*.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
Case No. 2:17-CV-06848 DMG (PLAx)

### 2. Joinder Would Be Fundamentally Unfair and Would Not Serve Judicial Economy

Even if Plaintiffs could satisfy the prerequisites to join Mr. Franchitti, joinder would not comport with principles of fundamental fairness. *See Coleman*, 232 F.3d at 1296. Nor would adding Mr. Franchitti promote trial convenience or expedite the final determination of the dispute, the two primary purposes of Rule 20. *See League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977). Instead, it would serve only to delay the case and prejudice Cognizant by forcing it to respond to a new complaint and engage in discovery on entirely distinct claims.

This case was filed over three years ago in September 2017. [Doc. # 1.] Since then, Plaintiffs have amended their complaint twice, and Cognizant has moved to dismiss twice. [Doc. # 30, 34, 45, 48.] These motions, and the Court's orders on them, focused on the allegedly discriminatory practices central to Plaintiffs' four types of claims. [*See, e.g.*, Doc # 42 at 6–9; Doc. # 58 at 3–6.] Moreover, given that the statute of limitations has run on Mr. Franchitti's Section 1981 claims, Cognizant would likely need to move to dismiss again to eliminate those untimely claims.[7] *See* [Doc. # 117-2 ¶ 73 (Mr. Franchitti was terminated on July 19, 2016)]; *Jones*, 541 U.S. at 372 (statute of limitations for Section 1981 claims is four years).

Cognizant answered the operative complaint over a year ago [Doc. # 59], and discovery as to the existing claims has been ongoing since then. *See* Maryott Decl. ¶¶ 2–4. Cognizant has already dedicated significant resources to a discovery process centered on the complaint as written. *Id.* Cognizant's production of relevant data is nearly complete, and its rolling production of relevant documents will commence by month's end. *See id.* ¶¶ 2–3. Adding Mr. Franchitti, whose claims completely diverge from (and

---

[7] Even *if* Mr. Franchitti could avail himself of tolling as to his Section 1981 discrimination claim (a point Cognizant does not concede), Mr. Franchitti could certainly not claim tolling as to his newly added section 1981 *retaliation* claim. [Doc. # 117-2 ¶¶ 104–08.]

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
Case No. 2:17-CV-06848 DMG (PLAx)

Gibson, Dunn & Crutcher LLP

at times conflict with) Plaintiffs' claims, would require more than "some additional discovery," [Doc. # 117 at 7]; it would expand the case unnecessarily and require Cognizant to start discovery anew as to his unique claims.

Nor would adding Mr. Franchitti promote trial convenience. Quite the opposite; adding him could prejudice Cognizant in the event of a trial in this case. The distinct nature of Mr. Franchitti's claims as compared to Plaintiffs' claims unnecessarily risks confusing the jury.

By contrast, Mr. Franchitti would not be prejudiced if he is not allowed to join this suit so late in the game. He is, of course, "free to proceed with his . . . individual claims" in a separate suit. *Rubio*, 181 F. Supp. 3d at 759. Moreover, he is already litigating another case against Cognizant, based on largely the same set of alleged facts, in which he is represented by Plaintiffs' counsel. *See Franchitti v. Cognizant Tech. Sols. Corp.*, No. 3:17-CV-6317-PGS-LHG, Doc. #1 (D.N.J. Aug. 22, 2017). It is unclear why Mr. Franchitti seeks to bring his retaliation claims in this lawsuit in California, rather than in the lawsuit in New Jersey where he is already a plaintiff, or in New York, where he resides.

Given Mr. Franchitti's distinct claims, a new suit would not be duplicative of this one, and allowing Mr. Franchitti to join this case would only serve to prejudice Cognizant. For the foregoing reasons, joinder is improper.

## B. Plaintiffs Do Not Demonstrate Good Cause to Modify the Court's Scheduling Order Under Rule 16

In addition to satisfying Rule 20's requirements, a party seeking to amend after the deadline set by the court's scheduling order must satisfy the requirements of Federal Rule of Civil Procedure 16(b)(4), which requires "good cause" and the judge's consent to modify a scheduling order. To demonstrate good cause under Rule 16, the moving party must show (1) "it assisted the court with creating a workable scheduling order"; (2) "it is unable to comply with the scheduling order's deadlines due to matters not reasonably foreseeable at the time the scheduling order issued"; and (3) "it was diligent

in seeking a modification once it became apparent it could not comply with the scheduling order." *Campos*, 2016 WL 9173450, at *2 (quoting *Jackson*, 186 F.R.D. at 608). "The Court also considers the existence and degree of prejudice to the non-moving parties in determining whether there is good cause to permit modification." *In re Silver Wheaton Corp. Secs. Litig.*, No. 2:15-cv-5146-CAS (JEMx), 2018 WL 1517130, at *2 (C.D. Cal. Mar. 26, 2018).

Plaintiffs argue they were diligent in seeking to add Mr. Franchitti because he did not receive his Right to Sue Notice from the EEOC until late-October 2020. This argument misses the mark. Mr. Franchitti's Right to Sue Notice is irrelevant to his Section 1981 claims, which do not require exhaustion. *See Woods v. Storms*, 793 F. App'x 542, 543 (9th Cir. 2020) (unpublished), *cert. denied*, No. 20-484 (U.S. Nov. 16, 2020) (unlike Title VII claims, exhaustion not required for Section 1981 claims). Plaintiffs never explain why they did not amend to add Mr. Franchitti and his two Section 1981 claims before the January 17, 2020 deadline. This is the exact procedure used by every other Plaintiff in this case. Plaintiffs' original Complaint included only a Section 1981 claim because they had not yet received their Right to Sue Notices. [Doc. # 1 ¶¶ 6, 67–71 & n.2.] Then, when they received their Right to Sue Notices, they filed the First Amended Complaint, adding their Title VII claims. [Doc. # 30 ¶¶ 6, 72–80.] Mr. Cox followed the same blueprint, first asserting only a Section 1981 claim, [*id.* ¶¶ 6, 67–71 & n.2], and then subsequently amending to include his Title VII claims upon receipt of his Right to Sue Notice, [Doc. # 45 ¶¶ 6, 75–83]. Plaintiffs offer no explanation for why they could not have followed this same process for Mr. Franchitti.

Plaintiffs also cannot show they were unable to comply with the scheduling order's deadline as to the Title VII claims "due to matters not reasonably foreseeable at the time the scheduling order issued." *Campos*, 2016 WL 9173450, at *2. Mr. Franchitti filed his Charge of Discrimination with the EEOC on October 7, 2016. [Doc. # 117-3.] And Plaintiffs' counsel has known about Mr. Franchitti, and his potential claims against Cognizant, since at least August 22, 2017, when counsel began representing Mr.

18

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
Case No. 2:17-CV-06848 DMG (PLAx)

1    Franchitti in his FCA action against Cognizant.  *See Franchitti v. Cognizant Tech. Sols.*

2    *Corp.*, No. 3:17-CV-6317-PGS-LHG, Doc. #1 (D.N.J. Aug. 22, 2017).   Moreover,

3    Plaintiffs themselves explain that they relied on some of the evidence underlying Mr.

4    Franchitti's FCA suit to form the basis of their original Complaint.   [Doc. # 1 ¶ 18;

5    Doc. # 117 at 1.]  As such, they are hard-pressed to now assert that his Section 1981 and

6    Title VII claims were not "reasonably foreseeable."  *Campos*, 2016 WL 9173450, at *2.

7    Given the foreseeability of their proposed amendment, Plaintiffs could have (and should

8    have) informed the Court far earlier about Mr. Franchitti and his potential claims.

9             Finally, the cases Plaintiffs cite in support of their good cause argument are either

10   inapposite or stand for the uncontroversial proposition that leave to amend may be

11   granted where the need to amend was not reasonably foreseeable because of information

12   discovered *after* the relevant deadline had passed.  *See* [Doc. # 117 at 5–6]; *Lodge v.*

13   *U.S. Remodelers, Inc.*, No. CV 07-5409 CAS (AJWx), 2009 WL 10674127, at *5 (C.D.

14   Cal. Feb. 1, 2009) (plaintiffs' need to amend was not reasonably foreseeable because

15   necessary information was uncovered in discovery after deadline); *De Stefan v. Frito*

16   *Lay, Inc.*, No. SACV 10-0112 DOC (MLGx), 2010 WL 11515253, at *2 (C.D. Cal. Sept.

17   28, 2010) (same); *DatCard Sys., Inc. v. PacsGear, Inc.*, No. SACV 10-1288 DOC

18   (VBx), Doc. # 51, at 1, 3 (C.D. Cal. Nov. 29, 2011) (same); *Mireles v. Paragon Sys.,*

19   *Inc.*, No. 13-CV-122-L (BGS), 2014 WL 575713, at *1–2 (S.D. Cal. Feb. 11, 2014)

20   (finding good cause to allow Plaintiff to *seek* leave to amend because of evidence found

21   in discovery, but not granting leave to amend the complaint); *McKneely v. Zachary*

22   *Police Dep't*, CIV.A. No. 12-354-SDD-RLB, Doc. # 28, at 3 (M.D. La. Aug. 6, 2013)

23   (granting *unopposed* motion for leave to amend without asking whether the need to

24   amend was "reasonably foreseeable").  These cases do not save their motion.

25            Plaintiffs have not carried their burden to show good cause.  They have offered

26   no explanation for their failure to timely add Mr. Franchitti's Section 1981 claims, nor

27   do they offer sufficient reasons to overlook their failure to timely apprise the Court of

28   Mr. Franchitti's Title VII claims.

### C.   The Rule 15 Factors Governing the Propriety of Amendment Weigh Against Granting Leave to Amend Plaintiffs' Second Amended Complaint

Even if Plaintiffs satisfy Rule 20's joinder requirements and Rule 16's good cause requirements, they would still need to comply with Federal Rule of Civil Procedure 15(a)(2)—the general rule governing amendment of pleadings.  They cannot do so. Under Rule 15, "courts consider five factors in deciding whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint." *Castellucci*, 2020 WL 4873869, at *3.  Assuming the proposed complaint is not brought in bad faith, the remaining four of these factors weigh against allowing amendment.

First, any amendment would be futile.  It would be futile in full because Mr. Franchitti cannot be properly joined.  *See* Section IV.A, *supra*; *Harter*, 2017 WL 10505262, at *4 ("In the context of an amendment to add another party, an amendment is futile if it does not comply with Federal Rule of Civil Procedure 20."); *Whatru Holding LLC*, 2014 WL 12629952, at *5–6 (assessing joinder under Rule 15 futility analysis).  Alternatively, even if properly joined, amendment to include Mr. Franchitti's Section 1981 claims, or at a minimum his Section 1981 retaliation claim, would also be futile because those claims are barred by the applicable statute of limitations.  *See* [Doc. # 117-2 ¶ 73 (Mr. Franchitti was terminated on July 19, 2016)]; *Jones*, 541 U.S. at 372 (statute of limitations for Section 1981 claims is four years).  Futility of amendment alone warrants denying the motion.  *Ahlmeyer*, 555 F.3d at 1055 ("futility of amendment alone can justify the denial" of leave).

Second, as discussed above, allowing Plaintiffs to add Mr. Franchitti would prejudice Cognizant by expanding the scope of discovery.  *See* Section IV.A.2, *supra*. Cognizant has made more than a year's worth of progress with Plaintiffs to shape the scope of discovery and has produced responsive data and documents as a result.  *See* Maryott Decl. ¶¶ 2–3.  If Mr. Franchitti were added, Cognizant would be required to

conduct additional unique discovery on Mr. Franchitti's claims, which center on several allegedly retaliatory acts taken by a supervisor nowhere else mentioned in the complaint.

Third, Plaintiffs have unreasonably delayed in seeking to bring Mr. Franchitti's Section 1981 claims, and have similarly unreasonably delayed with respect to Mr. Franchitti's Title VII claims by failing to raise the potential for such claims with the Court earlier in this suit. *See* Section IV.B, *supra*.

Fourth, and finally, Plaintiffs have previously amended twice, and the parties engaged in extensive related briefing over the course of two years. *See Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999) ("The trial court's discretion to deny the motion is particularly broad where, as here, a plaintiff previously has been granted leave to amend."). This three-year-old case should continue its forward trajectory without a new plaintiff and new claims. Mr. Franchitti can and should assert his claims elsewhere.

## V. CONCLUSION

Because Plaintiffs cannot satisfy any of the three rules they must satisfy—Rule 20, Rule 16, or Rule 15—Cognizant respectfully requests the Court deny Plaintiffs' Motion for Leave to Amend.

1 | Dated:  December 18, 2020

2

3 | THEODORE J. BOUTROUS JR.
MICHELE L. MARYOTT
KATHERINE V.A. SMITH
4 | LAUREN M. BLAS
ELIZABETH A. DOOLEY
5 | MATTHEW T. SESSIONS
GIBSON, DUNN & CRUTCHER LLP

6

7

8 | By: /s/ Michele L. Maryott
Michele L. Maryott

9

10 | Attorneys for Defendants
COGNIZANT TECHNOLOGY SOLUTIONS
11 | CORPORATION and COGNIZANT
TECHNOLOGY SOLUTIONS U.S.
12 | CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served today on all counsel of record by electronic service through the Court's CM/ECF filing system.

Dated: December 18, 2020

/s/*Michele L. Maryott*

Michele L. Maryott

Gibson, Dunn & Crutcher LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
Case No. 2:17-CV-06848 DMG (PLAx)