KOTCHEN & LOW LLP
DANIEL LOW, SBN 218387
dlow@kotchen.com
DANIEL KOTCHEN (*pro hac vice*)
dkotchen@kotchen.com
LINDSEY GRUNERT (*pro hac vice*)
lgrunert@kotchen.com
1918 New Hampshire Ave. NW
Washington, DC 20009
Telephone:  202.471.1995
Facsimile:  202.280.1128

YADEGAR, MINOOFAR &
SOLEYMANI LLP
NAVID SOLEYMANI, SBN 219190
soleymani@ymsllp.com
NAVID YADEGAR, SBN 205315
navid@ymsllp.com
1875 Century Park East
Suite 1240
Los Angeles, CA 90067
Telephone:  310.499.0140
Facsimile:  888.667.9576

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CHRISTY PALMER, VARTAN PIROUMIAN, ANN COX, and JEAN-CLAUDE FRANCHITTI,<br><br>Plaintiffs,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION,<br><br>Defendants. | CASE NO. 17-CV-6848 DMG (PLAx)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR REVIEW OF MAGISTRATE JUDGE ABRAMS' DECEMBER 13, 2021 ORDER (ECF 233)**<br><br><br>Hearing Date: January 28, 2022<br>Time: 9:30 a.m.<br>Place: Courtroom 8C, 8th Floor<br>Complaint Filed: September 18, 2017<br>Discovery Cut-Off: April 22, 2022<br>Pre-Trial Conference Date: Nov. 29, 2022<br>Trial Date: Jan. 3, 2023 |

1  Cognizant's arguments that Judge Abrams' Order concerning the Israel Laptop
2  Documents and the Biddle Motion to Quash is not clearly erroneous or contrary to law do
3  not withstand scrutiny.

4  **A.     The Israel Laptop Joint Stipulation**

5  First, Cognizant claims that there is "sound reasoning" to support the decision that
6  the Israel Laptop Joint Stipulation was untimely, Opp. at 3 (ECF 239), but it identifies no
7  reasoning in the decision to support that assertion.  Rather, Cognizant invents its own
8  explanation for Judge Abrams' decision, and that explanation does not withstand scrutiny.

9  Specifically, Cognizant argues that Plaintiffs' failure to timely challenge
10 Cognizant's earlier privilege assertions forecloses Plaintiffs from challenging Cognizant's
11 withholding of the Israel Laptop Documents.  ECF 239 at 3-4.  That is, Cognizant asks
12 this Court to accept that Plaintiffs' previous misreading of the Court's scheduling order
13 coupled with their efforts to diligently comply with Judge Abrams' July 9, 2021 Order
14 requiring stringent meet and confer responsibilities for privilege log disputes dooms
15 Plaintiffs from challenging *all* of Cognizant's prospective privilege claims.  That, of
16 course, is not what the Court ordered in extending the case schedule in light of Cognizant's
17 Migration Glitch.  *See* Order at 2 (Aug. 19, 2021) (ECF 157) (extending discovery to
18 December 16, 2021 for Migration Glitch-related discovery "***or evidence produced***
19 ***belatedly because of it***.") (emphasis added).  Moving to compel documents from a
20 privilege log that was indisputably "produced belatedly because of [the migration glitch]"
21 clearly falls within the discovery scope set forth in the Court's Order, regardless of
22 whether Plaintiffs could have made similar arguments in connection with documents that
23 were ***not*** produced belatedly because of the Migration Glitch.  Indeed, the basis of Judge
24 Abrams' decision was not that Plaintiffs were foreclosed from challenging the privilege
25 log because he had deemed their prior challenge untimely, but that is exactly the argument
26 that Cognizant asks this Court to accept now.

27 Further, the equities favor the Court deciding the merits of Cognizant's privilege
28 claims.  Because Plaintiffs have not yet been successful in securing a decision from the

Court on privilege issues, Cognizant has been emboldened to take extreme privilege positions in depositions, instructing witnesses not to answer questions concerning clearly discoverable information.  For example, Abigail Israel—Cognizant's former Affirmative Action director—was deposed on December 14, 2021.  Ms. Israel's counsel, paid for by Cognizant, instructed Ms. Israel not to answer questions whenever Cognizant's counsel lodged privilege objections, arguing that privilege claims belong to the corporation, not to Ms. Israel, an individual.[1]  Ms. Israel testified that she performed adverse impact analyses of her own volition and not at the direction of counsel, but Cognizant still took the position that her work was somehow protected by the attorney-client privilege.[2]  According to Cognizant, non-attorney work that was not requested by counsel was nonetheless protected by the attorney-client privilege because it was undertaken to monitor compliance with Cognizant's own internal policies—a position that would never be upheld in Court:

> So to the extent that Ms. Israel was performing work, as you described it of her own volition, it is the company's position that all of that work relates to the need to provide monitoring and legal advice regarding policies.  So I think we are just going to say she's not going to testify at all about adverse impact analyses.

Ex. 6. 41:20-42:2.

During the deposition, Ms. Israel grew frustrated with Cognizant's positions, which contradicted her testimony about the role of counsel in the work that she performed.  *See id.* 102:6-13: ("[THE WITNESS]: So in my research with pay equity – MS. MARYOTT: So is that – so the pay equity work I understand was performed with legal counsel so. THE WITNESS:  Not my understanding.  MS. MARYOTT:  Well, that was our understanding.").  Cognizant's privilege claims were so extreme that despite Ms. Israel's testimony that she purchased compensation software on her own to perform pay equity analyses, was the only person at Cognizant with access to the software and to the analyses,

---

[1] Israel Dep. Tr. 41:11-19; 42:8-10 (Ex. 6).

[2] *Id.* 35:6-23; 37:6-8; 37:18-39:2.

and shared the analyses with a non-attorney only, Cognizant still claimed that the work was protected by the attorney-client privilege and work product doctrine and instructed Ms. Israel not to answer questions regarding the analyses, as Cognizant considered preventing testimony on the topic "the safest" route to protecting the company's interest.[3]

Given that absent an order on privilege-related issues, Cognizant continues to engage in dilatory discovery practices where it claims attorney-client privilege to shield highly relevant information from discovery, Plaintiffs' respectfully request that the Court review and vacate Judge Abrams' Order and require that the Joint Stipulation be decided on the merits.

**B.    The Biddle Subpoena Joint Stipulation**

Second, while Plaintiffs acknowledge that the Biddle Subpoena is not related to the Migration Glitch, it should still be decided on the merits because its untimeliness is entirely due to Cognizant's actions, and it is through no fault of Plaintiffs that the Joint Stipulation was not noticed for a hearing until after October 15.

Cognizant claims that Plaintiffs "opted not to file a motion to compel" with respect to the Biddle subpoena and "instead to use a denial of Cognizant's motion to quash on the merits as a hook to convince Biddle to begin productions."  ECF 239 at 8.  This is false.  Biddle was cooperating with Plaintiffs and reviewing ESI responsive to the subpoena until Cognizant intervened, so it would have made no sense for Plaintiffs to move to compel before Cognizant filed its motion to quash on September 15, 2021.  *See* Mot. for Review at 5 (ECF 234); ECF 239 at 7, n.3.  After that point, Plaintiffs did not move to compel because it was fair to assume that resolution of the motion to quash would make such a motion unnecessary. Accordingly, Plaintiffs relied on a resolution of the Motion to Quash, rather than burdening the Eastern District of California with yet another motion designed to have the same effect.

---
[3] *Id.* 103:10-105:3.

1
2
3
4

Once transferred to this Court, by refusing to issue a substantive decision, Judge Abrams allows Cognizant to use a motion to quash that he found to be untimely[4] to prevent Plaintiffs from receiving documents in response to a subpoena that Plaintiffs served on July 23, 2021.  Mot. at 2.

5
6
7
8
9
10
11

Finally, Cognizant contends that Plaintiffs will not suffer prejudice as a result of the Biddle Subpoena decision because it is "merely prevent[ing] Biddle from wrongly disclosing . . . privileged materials."  ECF 239 at 8, 9.  This is not true.  Contrary to Cognizant's claim that its challenges to the Biddle subpoena are "to protect a narrow set of communications," ECF 239 at 6, Biddle (acting at Cognizant's direction) has not produced *any* documents in response to the subpoena.[5]  Plaintiffs' prejudice is not limited to being denied documents over which there is a privilege dispute.

12
13
14
15
16
17
18
19
20
21
22
23

DATED: January 14, 2022

**KOTCHEN & LOW LLP**

By: /s/Daniel Kotchen
Daniel Low, SBN 218387
Daniel Kotchen (*pro hac vice*)
Lindsey Grunert (*pro hac vice*)

Attorneys for Plaintiffs

24
25
26
27
28

[4] ECF 233 at 4 ("Also on October 1, 2021, defendants re-noticed the Motion in the Eastern District, setting a new hearing date for October 28, 2021 -- well beyond the applicable discovery cutoff date. (C.D. Case No. 21-1088, ECF No. 6).").

[5] Cognizant moved to quash only adverse impact and pay equities analyses, not all documents responsive to the subpoena.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Court's CM/ECF system.

DATED: January 14, 2022 <span style="float:right">By: /s/Daniel Kotchen</span>

Daniel Kotchen

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR REVIEW
Case No. 17-CV-6848 DMG (PLAx)