1  KOTCHEN & LOW LLP
2  DANIEL LOW, SBN 218387
   dlow@kotchen.com
3  DANIEL KOTCHEN (*pro hac vice*)
   dkotchen@kotchen.com
4  LINDSEY GRUNERT (*pro hac vice*)
   lgrunert@kotchen.com
5
6  1918 New Hampshire Ave. NW
   Washington, DC 20009
7  Telephone:  202.471.1995
   Facsimile:  202.280.1128
8
9  Attorneys for Plaintiffs

   YADEGAR, MINOOFAR &
   SOLEYMANI LLP
   NAVID SOLEYMANI, SBN 219190
   soleymani@ymsllp.com
   NAVID YADEGAR, SBN 205315
   navid@ymsllp.com
   1875 Century Park East
   Suite 1240
   Los Angeles, CA 90067
   Telephone:  310.499.0140
   Facsimile:  888.667.9576

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| CHRISTY PALMER, VARTAN PIROUMIAN, ANN COX, and JEAN-CLAUDE FRANCHITTI,<br><br>            Plaintiffs,<br><br>      v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION,<br><br>            Defendants. | CASE NO. 17-CV-6848 DMG (PLAx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Hon. Dolly M. Gee<br><br><u>Hearing</u><br>Date: July 22, 2022<br>Time: 10:00 a.m.<br>Place: Courtroom 8C, 8th Floor<br>Complaint Filed: September 18, 2017<br>Discovery Cut-Off: April 22, 2022<br>Pre-Trial Conference Date: Nov. 29, 2022<br>Trial Date: January 3, 2023<br><br>**REDACTED VERSION SOUGHT TO BE SEALED** |

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

Please take notice that on July 22, 2022 at 10:00 a.m., in Courtroom 8C of the United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Plaintiffs will and hereby do move the Court for certification of two classes and one subclass pursuant to Federal Rule of Civil Procedure 23.

As discussed in the accompanying memorandum, Defendants Cognizant Technology Solutions Corporation and Cognizant Technology Solutions U.S. Corporation ("Cognizant" or "Defendants") have instituted two discriminatory policies and related practices that violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Specifically, Cognizant has instituted a █████████████████████████████████ and related practices by which ██████ ████████████████████████████████████████████████████████████████ █████████████████████████ Plaintiffs are challenging these policies and related practices under a pattern-or-practice theory and, in the alternative, under a disparate impact theory.

Cognizant's discriminatory policies have been directed towards ███████████ within its U.S. workforce, which include ███████████████████████████[1] (hereafter the "Class Bands"). Within Cognizant's U.S. workforce, ████████████ ██████████████████████████████████████████.

Plaintiffs seek certification of two classes (and one subclass) for adjudication of Plaintiffs' pattern or practice and disparate impact claims, in accordance with the two-phase process for such claims. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360-61 (1977); *Ellis v. Costco Wholesale Corp.,* 285 F.R.D. 492, 505, 546-47 (N.D. Cal. 2012).

First, Plaintiffs seek certification of the following Termination Class:

---

[1] Cognizant refers to ████████████████████████████████████ ████████████████████████████████████████████████

**Termination Class**

Between September 18, 2013 to the date of class certification, all individuals who are not of South Asian race or Indian national origin and who were terminated while employed ███████████████████ in the U.S., excluding any individuals bound by an agreement to arbitrate termination claims with Cognizant.

A core business practice at issue in this case is Cognizant's ██████████ ███████████████████████████████████████████████████████ ██████████     Many putative class members terminated from Cognizant, including Plaintiffs, were terminated from the bench due to Cognizant's discriminatory policies and related practices. Accordingly, Plaintiffs seek to certify the following terminations subclass involving benched employees:

**Bench Termination Subclass**

Between September 18, 2013 to the date of class certification, all individuals who are not of South Asian race or Indian national origin and who were terminated from the bench while employed ██████████████ ███████████ in the U.S., excluding any individuals bound by an agreement to arbitrate termination claims with Cognizant.

Second, Plaintiffs seek certification of the following Hiring Class:

**Hiring Class**

Between September 18, 2013 to the date of class certification, all individuals who are not of South Asian race or Indian national origin and who applied to a Cognizant ██████████ position in the U.S. and were not offered a position.

Plaintiffs do not seek certification of a promotions class, even though Cognizant's ██████████████████████████████████████████ related practices have resulted in ████████████████████████.

Class certification is appropriate under Rule 23(b)(3) because the following common questions to be resolved in Phase One predominate over the remaining questions of individual defenses/damages to be resolved in Phase Two:

1. With respect to each class/subclass, did Cognizant engage in a pattern or practice of discriminating on the basis of race and/or national origin?  If so, does Cognizant's conduct meet the standard for an award of punitive damages? (Jury)

2. With respect to each class/subclass, did Cognizant's ███████ ████████████ (and related practices) disparately impact class members?  If so, was each such policy justified by a business necessity that could not have been accomplished by a less discriminatory alternative?  (Judge)

Alternatively, the proposed classes and subclass should be certified as to the foregoing common classwide liability issues pursuant to Rule 23(c)(4), so that they can be adjudicated in a single Phase One process.

Plaintiffs respectfully submit that they satisfy the class certification requirements set forth in Rule 23(b)(3), or at least Rule 23(c)(4), such that their Motion for Class Certification should be granted, the proposed classes and subclass should be certified, Plaintiffs Cox and Piroumian should be appointed as class representatives, and Plaintiffs' Counsel, Kotchen & Low LLP and Yadegar, Minoofar & Soleymani LLP, should be appointed Class Counsel on behalf of the certified classes.

This motion is based upon the notice of motion, the Memorandum of Points and Authorities, the Declaration of Daniel Kotchen, all accompanying exhibits, and such argument as the Court may allow.[2]

DATED: May 13, 2022

By: /s/Daniel Kotchen
Dan Kotchen
*Attorney for Plaintiffs*

---

[2] This motion is made following the conference of counsel in October 2019 when the parties first discussed a class certification briefing schedule.

## **TABLE OF CONTENTS**

I.   FACTUAL BACKGROUND..................................................................2

    A.   Cognizant Overview..............................................................2

        1.   *Cognizant's ▮▮▮▮▮ss" Policy.*....................................5

        2.   *Cognizant's ▮▮▮▮▮▮▮ and Practices.* ..............9

    B.   Cognizant's Discriminatory Scheme's Effects on Non-South Asians.13

    C.   Cognizant's Discriminatory Scheme's Effects on Visa Employees from India. ...............................................................17

II.   LEGAL STANDARD ....................................................................17

III.   ARGUMENT ..................................................................................18

    D.   Plaintiffs Satisfy Rule 23(a)'s Prerequisites.............................19

        1.   *Plaintiffs Satisfy Rule 23(a)'s Numerosity Requirement.* ......19

        2.   *Plaintiffs Satisfy Rule 23(a)'s Commonality Requirement.*...19

        3.   *Plaintiffs' Claims are Typical of the Classes.* .....................26

        4.   *Plaintiffs are Adequate Class Representatives and Class Counsel Will Fairly and Adequately Represent the Classes.* ...............................................................27

    E.   Each of Plaintiffs' Proposed Classes Satisfy Rule 23(b)(3). ...............28

        1.   *Predominance*...............................................................29

        2.   *Superiority* ...............................................................29

        3.   *Manageability*..............................................................32

    F.   Certification of Phase One Issues is Appropriate Under Rule 23(c)(4). ...............................................................34

    G.   Nature of the Notice to the Proposed Classes Required. ...............35

IV.   CONCLUSION ...............................................................................35

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).................................20

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013).........................18

*Bates v. UPS*, 204 F.R.D. 440 (N.D. Cal. 2001) ...........................................19

*Bell v. PNC Bank, Nat'l Assoc.*, 800 F.3d 360 (7th Cir. 2015) ....................................30

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ................................28

*Brown v. DirecTV, LLC*, 330 F.R.D. 260 (C.D. Cal. 2019) ...........................18, 26, 27

*Buchanan v. Tata Consultancy Servs., Ltd.*, No. 15-cv-01696, 2018 WL 3537083 (N.D. Cal. July 23, 2018) ............................................................30

*Buchanan v. Tata Consultancy Servs., Ltd.*, No.15-cv-01696, 2017 WL 6611653 (N.D. Cal. Dec. 27, 2017)......................................................................passim

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ...................................29

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cr. 2004) ...........................33, 34

*Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004) ............................31

*Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2022 WL 814074 (S.D.N.Y. Mar. 17, 2022) ......................................................................20

*Chi. Teachers Union v. Bd. of Educ. of City of Chi.*, 797 F.3d 426 (7th Cir. 2015)...................................................................................29

*Cohen v. Trump*, 303 F.R.D. 376 (S.D. Cal. 2014) ...........................................26

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) ....................passim

*Finley v. UPS*, No. CV-16-00055, 2018 WL 6421693 (D. Ariz. June 5, 2018)...........22

*Fla. Educ. Ass'n v. Dep't of Educ.*, No. 4:17cv414, 2019 U.S. WL 8219403 (N.D. Fla. Jan. 3, 2019) ......................................................................30

*Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1977).......19, 32

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 17-CV-6848 DMG (PLAx)

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...........................................26

*Heath v. Google Inc.*, 215 F. Supp. 3d 844 (N.D. Cal. 2016) .....................................27

*In re Catfish Antitrust Litig.*, 826 F. Supp. 1019 (N.D. Miss. 1993)...........................33

*In re Delta/AirTran Baggage Fee Antitrust Litig.,* 317 F.R.D. 675 (N.D. Ga. 2016)....................................................................................................................28

*In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167 (N.D. Cal. 2013) ....26, 28

*In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09-MD-2090, 2016 WL 4697338 (D. Minn. Sept. 7, 2016)...........................................................................28

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) ........................1, 20, 21

*Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164 (N.D. Cal. 2015) .............35

*Moore v. Napolitano*, 926 F. Supp. 2d 8 (D.D.C. 2013) ............................................29

*Morgan v. U.S. Soccer Fed., Inc.*, No. 2:19-cv-01717, 2019 WL 7166978 (C.D. Cal. Nov. 8, 2019) ................................................................................20, 25, 27, 29

*Patel v. Trans Union*, 308 F.R.D. 292 (N.D. Cal. 2015) ............................................28

*Plummer v. Western Int'l Hotels Co.*, 656 F.2d 502 (9th Cir. 1981) .....................22, 34

*Powell v. Tosh*, 280 F.R.D. 296 (W.D. Ky. 2012).................................................33, 34

*Rai v. Santa Clara Valley Transp. Authority*, 308 F.R.D. 245 (N.D. Cal. 2015) .........26

*Ruiz v. XPO Last Mile, Inc.*, No. 5-cv-2125, 2016 WL 4515859 (S.D. Cal. Feb. 1, 2016)..................................................................................................................27

*Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623 (9th Cir. 2018)....................................18

*Schwartz v. Harp*, 108 F.R.D. 279 (C.D. Cal. 1985)..................................................26

*Simpson v. Dart*, 23 F.4th 706 (7th Cir. 2022) ..........................................................25

*Stockwell v. City & Cnty. of S.F.*, 749 F.3d 1107 (9th Cir. 2014) ..........................24, 25

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ...................................33

*T.K. v. Bytedance Tech. Co., Ltd.,* No. 19-CV-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .......................................................................................................33

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ...........................................18

*United States v. City of N.Y.*, 276 F.R.D. 22 (E.D.N.Y. 2011)................................32, 33

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)............................34, 35

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...........................................20, 21

*Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404 (N.D. Miss. 2000) ........26

*Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223 (C.D. Cal. 2003) ..........28

*Williams v. Boeing Co.*, 225 F.R.D. 626 (W.D. Wash. 2005) ................................24, 34

*Wright v. Stern,* No. 01 Civ. 4437, 2003 WL 21543539 (S.D.N.Y. July 9, 2003).......22

**Rules**

Fed. R. Civ. P. 23................................................................................................passim

L.R. 23-2.2.................................................................................................................35

**Treatises**

2012 Scholarship Series: Tsunami: AT&T Mobility LLC v. Concepcion
    Impedes Access to Justice, 90 Or. L. Rev. 703 .......................................................31

3 William B. Rubenstein, et al., Newberg on Class Actions 4th ed. 2007).................35

7A Wright & Miller, Federal Practice And Procedure (2d ed.1986) ..........................35

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 17-CV-6848 DMG (PLAx)

This is a class action involving Cognizant's systemic discrimination against non-South Asians and non-Indians involving two corporate policies (and related practices) – Cognizant's ███████████████████████████ policies – that, at root, ████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████[3]  Within the ██████

██████ Cognizant's policies and related practices have resulted in ████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

While the Court need not adjudicate the merits of Plaintiffs' classwide allegations to find that class certification is appropriate, in connection with a pattern-or-practice discrimination investigation ███████████████████ the Equal Employment Opportunity Commission ("EEOC") determined in February 2020 that Cognizant "discriminated against a nation-wide class of non-Indian applicants by refusing to hire them on the basis of their race and national origin and against a nation-wide class of non-Indian employees on the basis of race and national origin by removing them from assignments that they were qualified for, refusing to assign them to new projects, and terminating them when they remained unassigned." Ex. 1 at 66.

Pursuant to Rule 23, Plaintiffs move to certify a termination class, a bench termination subclass, and a hiring class through the established two-phase *Teamsters'* framework, involving adjudication of classwide liability in Phase One and individual defenses/damages in Phase Two. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360-61 (1977). Alternatively, Plaintiffs request this Court certify the common classwide liability issues per Rule 23(c)(4), so they can be adjudicated for all class members in a single *Teamsters'* Phase One process.

---

[3] Cognizant refers to ███████████████████████████████████████████ Ex. 2 (Johnson Rpt.) ¶ 8 n.4.

# I.    FACTUAL BACKGROUND

## A.    Cognizant Overview

Cognizant is a United States corporation headquartered in Teaneck, New Jersey that provides information technology ("IT") staffing services to corporations. Dkt. #147 ¶¶ 8, 16. Corporations retain Cognizant to provide IT support in lieu of employing IT professionals, often entering multi-year service contracts that specify various IT "projects" that Cognizant will perform. *Id.* ¶ 16. The United States is Cognizant's primary market.[4]

Cognizant employs over 40,000 individuals in the United States and roughly 240,000 individuals in India. *Id.* at 6. Cognizant's U.S. workforce has consisted ████ ██████████████████████████████████████████████[5] Cognizant has ████████ ██████████████████████████████████ and has been the top recipient of H-1B visas since at least 2013, ███████████████████████████████████.[6]

H-1B visas are intended for foreign specialty labor (like IT labor) only when insufficient Americans exist for the work for which the visas are sought.[7] H-1B visas are valid for an initial three years, can be extended once for another three years, and can then be extended year-to-year thereafter if a visa employee seeks permanent U.S. residence. Ex. 4 at 879.  H-1B visas cannot be used for labor arbitrage.  By law, Cognizant must pay H-1B visa employees the *higher* of (a) what it pays similar U.S. employees in that role or (b) a prevailing wage established by the Department of Labor. 20 C.F.R. § 655.731(a).

---

[4] Cognizant Form 10-K at 27 (Dec. 2021), *available at* https://cogniz.at/3w8ushR.

[5] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

[6] ████████████████████████ Ex. 6 (approved H-1Bs for FY 13-19).

[7] *See* 8 C.F.R. § 214.2(h)(1)(ii)(B); 8 C.F.R. § 214.2(i)(1).

2

Cognizant relies secondarily on ███████████. ████████████

████████████████████████████████████████████████

███████████████████████ *Id.* at 881.

In addition to visa employees, Cognizant employs non-visa holders in the U.S., referred to as "local" employees.  Local employees are former ████████████ ██████████████████ and non-visa holders hired in the U.S.[8]

Cognizant's U.S. workforce has ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

Cognizant employees work in either billable or non-billable roles. Ex. 9 118:5-17. Billable employees serve clients that have retained Cognizant for IT services, such that they bill/allocate time to client projects. *Id.* 119:14-19.  Non-billable employees serve in corporate functions that do not involve billing or allocating time to client projects, such as finance, marketing, human resources, sales, procurement, operations, and shared services. *Id.* 118:9 – 119:7; Ex. 10 143:9-11.

Cognizant is generally organized into ██████████████████ with some variation over time. *See* Ex. 11 at 85-86; Ex. 12 at 37. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████

████████████████████ Ex. 14 at 97. Cognizant's billable employees routinely move from project-to-project. Dkt. #147 ¶ 16. ████████████████████

---

[8] Ex. 7 at 73; Ex. 8 at 72 ████████████████████).

[9] *Id.* ¶ 19, Fig. 22; Ex. 4 at 889 ████████████████████ ████████████████████).

1   ██████████████████████████████████████████████ Ex. 15 at

2   43. ████████████████████████████████████████████████

3   ████████       ███████████████████████████████████████

4   ███████████████████████████). [10] █████████████████████

5   ██████████████████ Ex. 17 at 10, 11.

Sometimes billable employees are not immediately allocated to new jobs after being taken off a project or the end of their project work.  These unassigned employees are placed in an unallocated status known as being "benched." Ex. 9 21:9-14. Nonbillable employees generally are not subject to being benched. *Id.* 132:22-133:10.

Cognizant's "bench" consists of "deployable pools" of billable employees available for new jobs:  the Practice Deployable Pool ("PDP"), a pool of employees available to be staffed within their assigned BU, and the Corporate Deployable Pool ("CDP"), a pool of employees available to be staffed across all BUs. *Id.* 25:4-14. Generally, a benched employee is first placed on a PDP and then, if not placed in a role, moved to the CDP for potential placement. *Id.* ████████████████████████████████████████ ████████████████████ Ex. 15 at 42. Cognizant typically terminates benched U.S. employees who remain unallocated to a new role after five weeks on the bench.  *Id.* at 56; Ex. 9 26:13-15. Cognizant sometimes "proactively" hires external candidates to meet future, forecasted needs and allocates those individuals to the PDP until they are mapped to a role. Ex. 9 167:23-168:25.  Employees hired to the bench are not subject to the same bench policy as other benched employees. *Id.* 168:17-21.

If an external hire is required for a role, ███████████████████████████ █████████████████████████████████████████████████████████████████ Ex. 18 at 95. Cognizant also relies on █████████████████████████. [11] ████████

_____

[10] *See* Ex. 9 228:13-229:11; Ex. 16 at 26 ██████████████████████ ██████████████ ).

[11] Ex. 19 159:23-160:5 ██████████████████████████████.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 17-CV-6848 DMG (PLAx)

1 ████████████████████████████████████████████████████████████

2 ██████████. Ex. 20 29:4-30:10. ████████████████████████████████

3 ██████████████████████████████████████████ *Id.* 44:5-45:1.[12]

## B.   Cognizant's Discriminatory Staffing Program.

Cognizant has maintained a discriminatory staffing program with two distinct policies and related practices : ████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████

### 1.   Cognizant's ████████████ Policy.

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████   ████████████████████████

16 ████████████████████████████████████████████████████████████.

Only 65,000 H-1B visas are issued each year (with 20,000 additional H-1Bs issued to workers with advanced degrees) through a highly competitive lottery process.[15] Visas can be sought only for positions that actually exist when applications are filed.[16]   Like its

─────────────────────

[12] Ex. 19 163:8-15 (████████████████████████████████ 166:11-24.

[13] Per Cognizant, the term ████████████████████████████████████████████
████████████████████████████████████████████████████████

[14] Ex. 22 at 55, 57; Ex. 5 at 09 ██████████████████████████
████████████████████████████

[15] *See* USCIS Reaches Fiscal Year 2022 H-1B Cap, USCIS (Feb. 28, 2022), https://bit.ly/3vQzMpM.

[16] *See* PM-602-01114 at 2, USCIS (June 17, 2020), https://bit.ly/3w4tK3F ("A bona fide job offer must exist at the time of filing."); PM-602-0157 at 4, USCIS (Feb. 22, 2018), https://bit.ly/2JoOxLn (requiring "non-speculative qualifying assignments" at filing).

competitors, Cognizant files H-1B visa applications at the beginning of April each calendar year and then has to wait until October—six months later—for H-1B visas to be awarded. ██████████████████████████████████████████████████████
████████████████████████████████

The H-1B visa program's limitations have created two challenges for Cognizant:
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████ To address these challenges, ████████████████████████
████████████████████████ with the goal of "get[ting] associates visa-ready, so if a suitable opportunity arises in the US [Cognizant could] move quickly."[18] ██████████████
██████████████████████████████████[19] █████████████████████
██████████████████████████████████ ████████████████████████████

_____

[17] *See* Ex. 24 at 36 (██████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████.

[18] Ex. 25 ("As discussed, it would be beneficial for you (JC, Phil) to address the team to explain the strategy regarding visa-readiness for potential US opportunities. The message to the team has been that the idea is to get associates visa-ready, so if a suitable opportunity arises in the US we can move quickly."); Ex. 26 ████████████████
████████ ).

[19] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

[20] *See e.g.* ███████████████████████████████████████████████████████
████████████████████████████

6

*See* n.16, *supra*. Cognizant thus established a process to falsify paperwork in which U.S. executives were falsely identified as "onsite managers" of Cognizant associates for whom visas were sought, in case federal authorities needed to speak with someone about the visa applications.[21] Cognizant's Global Immigration Team ("GIT") described this as a "normal practice,"[22] and, as part of this practice, Mr. Franchitti—along with other executives—was instructed to sign false invitation letters submitted in support of H-1B (and L-1) visa applications in which Mr. Franchitti attested to the existence of fake jobs. Franchitti Decl. ¶ 3. (Mr. Franchitti's letter signing responsibilities were transferred to another executive after Mr. Franchitti questioned the legality of the practice. *Id.*).

Using falsified paperwork, Cognizant has routinely sought H-1B (and L-1) visas against non-existent jobs ███████████████████████████████████ ██████████████████████ – in future opportunities that arise.[24] ████████ ████████████████████████████████████████████████

---

[21] *See* Ex. 30 ("Since many a times, the visa petition is filed proactively (without know-how of the project that the associate might travel for in the future), we needed a point of contact from GTO US who is permanently or semi-permanently located in the US. It seems that in 1 in 100 or 200 cases, the officer evaluating the petition is within his rights to call up the onsite manager and confirm whether he is aware that the specific associate has filed a petition").

[22] *Id.* ("After speaking extensively with [Global Immigration Team] higher ups, they recommend that it is a normal practice that somebody from the vertical/horizontal offers to support this.").

[23] *See* n.5, *supra.*

[24] Ex. 31 at 3 ("Per our conversation with Immigration last week, they told us we did not have to identify a project for each person to get a visa that would be good for 3 years. We are not assigning anyone to any project at this time. We are just processing the paperwork, and obtaining the visas so that team members are travel ready ASAP."); Ex. 32 at 1 (instructing transfer to team to "[p]lease start working on getting yourself travel ready to come to the US. While I don't have any specific openings for you at this time, we are constantly being asked for Manager Level architects . . . [and] we can find an opportunity for you when you are ready to travel").

---

7

[25]

█████████████████████████████████ Cognizant has consistently been a top filer and recipient of H-1B visa applications,[27] filing annually between 9,276 and 29,414 H-1B visa applications (including extensions/amendments) during the class period. Ex. 39 (chart of approvals).[28]

In████████████████████████████████████████

---

[25] *See* Ex. 33 at 397; Ex. 34 at 58; Ex. 35 at 62 ("█████████████████████████████ h.").

[26] ████████████████████████████████████████████████████████ ").

[27] ████████████████████████████████████████████████████████

[28] Data source for chart of H-1B visa approvals: https://bit.ly/3FEhFXo.

[29] █████████████████████████████████████████████

██████████████████████████████████ ██████████████████

████████████████████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████ [2]

**2.     Cognizant's** ████████████ **Policy and Practices.**

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[30] *See* ████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████

[31] ████████████████████████████████████████████████████
████████████████████████████████████████████

[32] ████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████

33

34

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 17-CV-6848 DMG (PLAx)

11

For example, open positions were first posted in ESA and visible only to GWFM/TSC and TAG—groups that were ████. Ex. 9 71:17-72:16. Benched resources in the U.S. cannot view open positions in ESA. *Id.* 72:17-73:4. Only those positions unfilled in ESA are then moved to Cognizant's Talent Market Place ("TMP"), an electronic database viewable to benched U.S. resources. *Id.* In stark contrast ████ resources were largely expected to find and apply to open U.S. positions themselves.[39]

─────────

[39] *Id.* 47:7-22 (TSC "not responsible for placing" benched employees in roles, rather it acts as a "facilitator"); Ex. 15 at 43 ("████

**B. Cognizant's Discriminatory Scheme's Effects on Non-South Asians.**

Cognizant's staffing policies and practices were .[42]

[40] Ex.

[41]

[42] Ex. 2 ¶¶ 9, 10, 16-17, 32-54, Figs. 1-4, 8-23.

[43] *See id.* ¶¶ 32-40, Figs. 1, 8-12, 22-23 for complete hiring and workforce analysis.



Cognizant is a federal contractor required to have an affirmative action program.[46]

[8] Even after the EEOC formally opened a pattern-or-practice investigation of Cognizant ███████████████ Cognizant elected not to alter its discriminatory policies to account for the fact that it was under a federal corporate-wide investigation for discrimination. It is therefore unsurprising that the EEOC ultimately concluded that Cognizant discriminated on the basis of race and national origin in both hiring and terminations from the bench. Ex. 1 at 66.

[44] *See id.* ¶¶ 42-48, Figs. 1, 13-17 for complete terminations analysis.

[45] *See id.* ¶¶ 49-54, Figs. 18-21 for complete promotions and appraisal analysis.

[46] *See* 41 C.F.R. § 60-2.1; Ex. 80 at 92-93 (

[47] *See, e.g.,* 81 at 603, 607, 611, 614 (

[48]

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 17-CV-6848 DMG (PLAx)

Non-South Asian employees have attested to Cognizant's culture of discrimination, including: ███████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████ particular relevance to the proposed terminations class, non-South Asian employees complained about ████████████████████████ █████████████████████████████████████

Internal complaints and concerns also focused on Cognizant's hiring practices. It was widely known that Cognizant ████████████████████████ Cognizant relied on ████████████████████████████████████ ███████████████████████████ *See* § I(A), *supra*.

The experiences of the Plaintiffs are representative of the impact of Cognizant's policies and practices on non-South Asians. Ann Cox's deceased husband, Edward Cox, was never promoted despite performing well from January 2014 to April 2017. Ex. 89 at 03-04. Mr. Cox's South Asian manager would refuse to allow Mr. Cox to speak to clients, would exclude Mr. Cox from meetings, and routinely spoke in Hindi. *Id.* at 04. In January 2017, Mr. Cox was removed from his project and benched. *Id.* While on the bench, Mr. Cox interviewed for multiple open roles within Cognizant that he was well-qualified for,

_____

[49] *See*, *e.g.*, Ex. 84 at Exs. D, E, K, L, N, (Compilation Exhibit of ██████ rges regarding same); Ex. 85 at Exs. C, F, G; (Compilation Exhibit of ███████ regarding same), Ex. 86 at Exs. D, F (Compilation Exhibit of ████████ regarding same).

[50] *See*, *e.g.*, Ex. 84 at Exs. A, B, E, J, K, L, N, P; Ex. 85 at Exs. B, D, F, H, N; Ex. 86 at Exs. D, E, F, H.

[51] *See*, *e.g.*, Ex. 84 at Exs. E, K, N; Ex. 85 at Exs. B, L; Ex. 86 at Ex. E.

[52] *See*, *e.g.*, Ex. 84 at Exs. I, J; Ex. 85 at Ex. B.

[53] *See*, *e.g.*, Ex. 84 at A, B, C, D, E, G, M; Ex. 85 at Exs. F, I; Ex. 86 at Ex. E.

[54] Ex. 88 at 95 ("████████████████████████

15

but the positions were given to less-qualified South Asian employees, and Mr. Cox was terminated from the bench. *Id.* Following his termination, Mr. Cox interviewed to be re-hired by Cognizant, and despite his qualifications, was not hired. Ex. 90 at 15-16. Vartan Piroumian was never promoted, was replaced on thirteen different projects by employees who traveled from India, and was ultimately terminated from the bench after unsuccessfully searching for a job while benched. Piroumian Decl. ¶¶ 2-4.  Christy Palmer was never promoted, was repeatedly removed prematurely from positions to be replaced with South Asian workers, was intentionally left off meeting invites and not invited to group lunches or after-work events, was ignored or treated rudely when she did attend meetings, and was constructively discharged due to Cognizant's discrimination. Ex. 91 at 54; Ex. 92 at 70. Jean-Claude Franchitti worked at Cognizant for over nine years, beginning in 2007, and received only one promotion (in 2011). Ex. 93 at 61-62. Mr. Franchitti was passed over for subsequent promotions and was terminated after he lodged discrimination complaints concerning Cognizant's removing non-South Asians from projects, benching them, and then terminating them from the bench. *Id.* at 63-65; Franchitti Decl. ¶¶ 4-5. The EEOC found that Cognizant's reasons for terminating Mr. Franchitti were pretextual and probable cause supported his claim that he was terminated due to Cognizant's pattern of discrimination and in retaliation for Mr. Franchitti raising concerns about such discrimination. Ex. 1 at 72-73.

None of the Plaintiffs were terminated from their positions because they were deemed poor performers.[55] And Cognizant's treatment of the Plaintiffs is representative of its broader treatment of non-South Asians (and non-Indians), and ███████████

███████████████████████████████████████

---

[55] Kotchen Decl. ¶ 2; *see also* Ex. 94 at 20 ████████████

███████████████████████████████████████

███████████████████████████████.").

███████████████████████████████████████████████████

████████

**C.** **Cognizant's Discriminatory Scheme's Effects on Visa Employees from India.**

By design, Cognizant's business model results in █████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ ████████████████

████████████████ ████████████████████████████ ████████

████████████████████ █████████████████████████████████

█████████████████████

## II.    LEGAL STANDARD

[56] █████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

[57] Ex. ██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████

██ █████████████████████████████████████████████████

██ ███████████████████████████

██ ██████████████████████████████████████████████████

"A district court has broad discretion in making a class certification determination under Rule 23." *Lucas R. v. Azar*, No. CV 18-5741-DMG (PLAx), 2018 WL 7200716, at *3 (C.D. Cal. Dec. 27, 2018) (Gee, D.). Class certification is appropriate when the relevant requirements of Fed. R. Civ. P. 23 are satisfied. "Because a class certification decision 'is far from a conclusive judgment on the merits of the case, it is of necessity … not accompanied by the traditional rules and procedure applicable to civil trials.'" *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 631 (9th Cir. 2018) (citation omitted). "[I]n evaluating [the] motion …, a district court need only consider 'material sufficient to form a reasonable judgment on each [Rule 23] requirement.'" *Id.* at 632 (citation omitted). "Rule 23 grants courts no license to engage in free-ranging merits inquiries[.] . . . Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013); *Brown v. DirecTV, LLC*, 330 F.R.D. 260, 266 (C.D. Cal. 2019) (Gee, D.). Persuasiveness of the evidence is, in general, a matter for a jury. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049 (2016). "The district court's class certification order, while important, is also preliminary: 'An order that grants or denies class certification may be altered or amended before final judgment.'" *Sali*, 889 F.3d at 631 (quoting Fed. R. Civ. P. 23(c)(1)(C)). Further, "[e]mployment discrimination . . . is by definition class discrimination. Since the purpose of Title VII is to eliminate such class-based discrimination, class actions are favored in Title VII actions for salutary policy reasons." *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1333 (9th Cir. 1977).

### III.   ARGUMENT

To obtain class certification, Plaintiffs must first satisfy the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *See Lucas R.*, 2018 WL 7200716, at *3. Then, Plaintiffs must satisfy one of the criteria of 23(b). *Lucas R.*, 2018 WL 7200716, at *3.

Here, Plaintiffs seek class certification of a Termination Class, a Bench Termination Subclass, and a Hiring Class – all involving Cognizant ███████ positions ███████ ████████. *See* Notice of Mot. at ii-iii, *supra* (defining the classes and subclass). Plaintiffs Cox and Piroumian seek to serve as representatives of the Termination Class and Bench Termination Subclass, and Plaintiff Cox seeks to serve as the representative of the Hiring Class. Plaintiffs Palmer and Franchitti do not seek to represent a class, as Plaintiffs are not seeking to certify a promotions class and Mr. Franchitti was terminated from ████████ ████████████████████████████. *See* Ex. 2, Fig. 4 (██████████████████).

Plaintiffs' proposed classes and subclass satisfy all of the relevant requirements of Rule 23(a) and 23(b)(3). Alternatively, Plaintiffs seek an order pursuant to Rule 23(c)(4) certifying the proposed classes and subclass with respect to the following Phase One issues only: (1) whether Cognizant engaged in a pattern or practice of discrimination against each class/subclass, (2) whether Cognizant's "████████████████████████ policies and practices had an unjustified disparate impact on each class/subclass; (3) the availability of punitive damages.

**D.    Plaintiffs Satisfy Rule 23(a)'s Prerequisites.**

Plaintiffs satisfy each of the Rule 23(a) perquisites.

**1.    Plaintiffs Satisfy Rule 23(a)'s Numerosity Requirement.**

Plaintiffs' proposed classes each include thousands of members ████████ ████████████████████████████████████████████████ ████████████████████████████. Ex. 2 ¶¶ 41, 48. These classes satisfy Rule 23's numerosity requirement. *See Buchanan v. Tata Consultancy Servs., Ltd.*, No.15-cv-01696, 2017 WL 6611653, at *21 (N.D. Cal. Dec. 27, 2017) (finding numerosity met and certifying terminations class of "between 896 and 1,116 benched [and terminated] non-South Asian employees"); *Lucas R.*, 2018 WL 7200716, at *12 (25-30 class members raises "presumption[]" that numerosity is satisfied).

**2.    Plaintiffs Satisfy Rule 23(a)'s Commonality Requirement.**

Rule 23(a)(2) requires that at least one issue of law or fact be common to the claims of the putative class. *See Morgan v. U.S. Soccer Fed., Inc.*, No. 2:19-cv-01717, 2019 WL 7166978, at \*7 (C.D. Cal. Nov. 8, 2019) ("the requirements for finding commonality are minimal.").[61] "[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods*, 577 U.S. at 453 (citation omitted). This does not require "absolute uniformity, but only a 'regular' practice … [or] '*pattern of* discriminatory decision making.'" *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 518 (N.D. Cal. 2012) (citation omitted). In *Dukes*, the Supreme Court explained that to satisfy the commonality element plaintiffs' "claims must depend upon a common contention . . . [of] such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

This case involves two related forms of systemic, classwide discrimination by Cognizant against non-South Asians and non-Indians: (1) a pattern and practice of intentional discrimination in favor of South Asians and Indians in hiring and terminations, and (2) employment policies that adversely impact non-South Asians and non-Indians.

For both claims, there is a well-established, two-phase evidentiary framework where the primary issue of classwide liability is adjudicated during Phase One, and then – if classwide liability is established – the availability and amount of relief to individual class members is addressed during Phase Two. *See Teamsters* 431 U.S. at 360-61; *Ellis,* 285 F.R.D. at 505, 546-47. During Phase One, "the questions being asked are at the classwide level—did these processes cause disparate impact and does the use of the processes evidence disparate treatment?" *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2022 WL 814074, at \*21 (S.D.N.Y. Mar. 17, 2022).

### a. Plaintiffs' Pattern or Practice Claims.

---

[61] Commonality is distinct from the predominance inquiry of Rule 23(b)(3), which is "far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

A pattern and practice claim requires proof of a "systemwide pattern or practice" of discrimination such that the discrimination is "the regular rather than the unusual practice." *Teamsters*, 431 U.S. at 336. During the initial classwide liability phase – Phase One – "the focus often will not be on individual [employment] decisions, but on a pattern of discriminatory decisionmaking." *Id.* at 360 n. 46. Resolution of Phase One will provide a common answer to the question of whether Cognizant "engaged in a regular practice of discrimination" against non-South Asians and non-Indians with respect to hiring and terminations. *Id.* at 360.

Although the evidentiary framework and two-phase process for adjudicating pattern or practice discrimination claims almost inherently presents common questions of fact and law, the Supreme Court has required plaintiffs seeking certification of such claims to show the existence of a centralized policy, practice, or directive. *Dukes*, 564 U.S. at 359. In *Dukes,* the plaintiffs failed to meet this requirement because they challenged a corporate policy of fully delegating employment decisions to low-level decision makers, which the court described as a "policy *against having* uniform employment practices." *Id.* at 355.[62] The court explained that "[w]ithout some glue holding the alleged *reasons* for all those decisions, it will be impossible to say that examination of all the class members' claims will produce a common answer to the crucial question *why was I disfavored*." *Id.* at 352. The "glue" missing from *Dukes* is supplied where, as here, plaintiffs demonstrate a centralized "common direction," or identify specific discriminatory employment practices implemented under the influence and control of defendant's management. *See Ellis*, 285 F.R.D. at 509; *Buchanan,* 2017 WL 6611653, at *19-20.

Plaintiffs have presented significant proof that Cognizant operated under a "general policy of discrimination" against non-South Asians and non-Indians with respect to terminations and hiring during the class period. First, the EEOC determined in February

---

[62] The court noted that the plaintiffs' "only evidence of a 'general discrimination policy of discrimination'" was a sociologist's analysis asserting that Wal-Mart's corporate culture made it "vulnerable*"* to gender bias." *Id.* at 353-54.

2020 that "there is reasonable cause to believe that, since December 4, 2014,[63] [Cognizant] discriminated against a nation-wide class of non-Indian applicants by refusing to hire them on the basis of their race and national origin and against a nation-wide class of non-Indian employees on the basis of race and national origin by removing them from assignments that they were qualified for, refusing to assign them to new projects, and terminating them when they remained unassigned."[64] Ex. 1 at 66. The EEOC's determination is *per se* admissible and "highly probative." *Plummer v. Western Int'l Hotels Co.*, 656 F.2d 502, 505 (9th Cir. 1981); *see Finley v. UPS*, No. CV-16-00055, 2018 WL 6421693, at *1 (D. Ariz. June 5, 2018) ("pursuant to *Plummer*, EEOC probable cause determinations are per se admissible"). It also "supports the conclusion that common issues of fact and law exist." *Wright v. Stern,* No. 01 Civ. 4437, 2003 WL 21543539, at *6 (S.D.N.Y. July 9, 2003) (EEOC's determination that defendant engaged in a pattern or practice of discrimination, and its referral of same to the DOJ supported plaintiffs' showing on commonality issue).

Second, Plaintiffs have presented a significant volume of contemporaneous documents and evidence demonstrating that Cognizant established a ███████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

---

[63] While the EEOC found that Cognizant has engaged in a pattern or practice of discrimination since December 4, 2014, substantial evidence supports Plaintiffs' claims that Cognizant maintained the same discriminatory practices throughout the class period (beginning September 18, 2013). *See* § I(A)-(B), *supra*; *See generally* Ex. 2 (Johnson Rpt.); Ex. 103 at 58 ████████████████████████████████ ███████████████████████████████████").

[64] While the EEOC's finding was primarily directed to terminations of "benched" employees, the EEOC found that Plaintiff Franchitti's termination – which was not from the bench – was part of this pattern or practice. *See* Ex. 1 at 72-73. Regardless, Plaintiffs terminations class is not limited to bench terminations because Cognizant documents and Plaintiffs' statistical proof demonstrate that Cognizant's pattern or practice of discrimination was not limited to terminations from the bench. *See* § I(A)-(B), *supra*. (Plaintiffs also seek certification of a subclass of employees who were terminated from the bench).

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ██████████████████ *See* § I(A)-(B), *supra.*

4       Third, Plaintiffs have presented compelling, and statistically significant, evidence

5 that Cognizant ████████████████████████████████████████

6 ████████████████████████████████████████████████████████

7 ████████████████████████████████████████████ *See* § I(B), *supra.*

8       In *Buchanan*, the court certified a terminations class against one of Cognizant's

9 competitors based on similar evidence that Tata Consultancy Services ("TCS") engaged

10 in a pattern or practice of discrimination with respect to terminations. 2017 WL 6611653,

11 at *19-20, 23. The court found that "plaintiffs offer[ed] sufficient proof that TCS 'operated

12 under a general policy of discrimination'" by presenting evidence of "statistically

13 significant disparities in involuntary [termination] rates between benched South Asian and

14 non-South Asian employees" and "TCS documents which describe a general corporate

15 policy of favoring expats and visa-ready individuals who are predominantly South Asian

16 in allocating benched employees to open client projects." *Id.* at *20. Here, Plaintiffs have

17 also presented evidence of similar ██████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████ *See* § I(A), *supra.*

22       While the court in *Buchanan* declined to certify a hiring class of non-South Asian

23 and non-Indian applicants, its reasons for doing so are inapplicable here. First, the parties

24 in *Buchanan* disputed whether it was reasonable for plaintiffs' statistical expert to treat

25 visa holders' first project in the U.S. as their date of hire for purpose of the statistical

26 analysis. *Buchanan*, 2017 WL 6611653, at *9-10. The court ultimately found that it was

27 a "close call," but held that it was "reasonable for Dr. Neumark to deem an expat's first

28 project in the United States as the expats date of hire" because visa workers competed

with local hires for U.S. positions and applied and interviewed for jobs in the U.S. like locals. *Id.* at *10, 16. However, the court discounted the probative value of Dr. Neumark's analysis when considering the commonality issue as to the hiring class. *Id.* at *20. Here, the issue is far less of a "close call" because there is ███████████████████ ████████████████████████████████████████████████████ ██████████████████████████████ *See* § I(A), *supra*.

Second, the *Buchanan* plaintiffs' only other evidence of TCS's discrimination in hiring was "anecdotal" and lacked any general policy with respect to hiring. *Buchanan*, 2017 WL 6611653, at *20. Here, by contrast, Plaintiffs have presented overwhelming evidence that Cognizant's ████████████████████████ policy and practices were designed ███████████████████████████ ██████████████████ *See* § I(A), *supra*.

The hiring class in this case is also distinguishable from *Buchanan*, and other cases where courts declined to certify hiring classes, due to the EEOC's determination that Cognizant in fact engaged in a nationwide pattern or practice of discrimination against non-South Asian and non-Indian applicants. *See* Ex. 1 at 66.

### b.    Plaintiffs' Disparate Impact Claims.

For disparate impact claims, plaintiffs must show that their employer "uses an employment policy or practice that causes a disparate impact on a protected group." *Williams v. Boeing Co.*, 225 F.R.D. 626, 639 (W.D. Wash. 2005). Generally, statistical proof is used to show that the disparity is (1) significant, and (2) caused by the challenged employment practice. *Id.*

For a disparate impact claim, the "commonality" requirement is satisfied once the plaintiffs identify "'specific employment practices that are allegedly responsible for any observed statistical disparities.'" *Stockwell v. City & Cnty. of S.F.*, 749 F.3d 1107, 1114-15 (9th Cir. 2014) (citation omitted). By doing so, the "question whether the policy has an impermissible disparate impact on the basis of [the protected characteristic] necessarily has a single answer." *Id.* at 1116; *see also Simpson v. Dart*, 23 F.4th 706, 712 (7th Cir.

2022) ("Where, as here, a plaintiff identifies a discrete employment policy that allegedly results in discrimination, Title VII disparate impact claims are well suited for classwide adjudication: the policy either disparately impacted the plaintiff class or it did not."); *Morgan*, 2019 WL 7166978, at *7 ("the Ninth Circuit has 'previously held, in a civil-rights suit, that commonality is satisfied where[, as here,] the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'") (citation omitted).

Once the specific employment policies/practices allegedly causing the disparate impact have been identified, "the ensuing Rule 23 analysis requires no inquiry into the merits to determine that the remaining two elements of [plaintiffs'] disparate impact claims almost necessarily present questions common to the class—whether those [policies/practices] in fact caused a disparate impact and, if so, whether the use of the [policies/practices] was justified by business necessity." *Simpson,* 23 F.4th at 712. Further, a defendant cannot defeat commonality by challenging the sufficiency of the statistical proof the plaintiffs intend to use to prove their case at trial. *Stockwell*, 749 F.3d at 1114. Accordingly, the trial court need not "approve of the statistical showing the [plaintiffs] have made as adequate to make out their merits case." *Id.* at 1116, 1117 (reversing the trial court's denial of class certification as an abuse of discretion because it "disregarded the existence of common questions of law and fact and impermissibly addressed the merits of the class's claims."); *see also Simpson,* 23 F.4th at 712 (vacating denial of class certification because "to assess whether plaintiffs' [disparate impact] claims presented common questions, the district court did not need to consider whether [plaintiffs'] statistical experts controlled for racially neutral factors or whether the tests had been validated for use at other departments.").

Here, the proposed classes and subclass satisfy the commonality requirement because Plaintiffs have identified specific policies and practices that have resulted in a disparate impact on non-South Asian and non-Indian employees and applicants. *See* § I(A)-(B), *supra.*

**c.     The Availability of Punitive Damages.**

The availability of punitive damages is also a question common to the classes that will rely on class-wide evidence because "'such a claim focuses on the conduct of the defendant and not the individual characteristics of the plaintiffs.'" *Ellis*, 285 F.R.D. at 502, 542 (citation omitted) (certifying class and holding that "the availability of punitive damages should be adjudicated in Stage One of the trial").

### 3. *Plaintiffs' Claims are Typical of the Classes.*

"Typicality requires a showing that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *DirecTV*, 330 F.R.D. at 267 (quoting Fed. R. Civ. P. 23(a)(3)). "Under the 'permissive standards' of Rule 23(a)(3), 'representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Rather, plaintiffs' claims are typical if they "arise[] from the same event or course of conduct that gives rise to the claims of other class members and the claims are based on the same legal theory." *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985). In pattern-or-practice cases, "where it is alleged that the defendant engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative plaintiffs will satisfy the typicality requirement." *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 409 (N.D. Miss. 2000); *Cohen v. Trump*, 303 F.R.D. 376, 383 (S.D. Cal. 2014) (claims are typical where plaintiff and class were subject to a "common fraudulent 'scheme'"); *Rai v. Santa Clara Valley Transp. Authority*, 308 F.R.D. 245, 260 (N.D. Cal. 2015) (claims "grounded on the same [] policies, practices and procedures" established typicality).

Here, Plaintiffs Cox and Piroumian claims are typical of the terminations class (and the bench termination subclass) and Plaintiff Cox's claims are typical of the hiring class. *See* § I(B), *supra* (detailing Plaintiffs' experiences). Specifically, Plaintiffs Cox and Piroumian's claims are typical of the proposed termination class and bench termination subclass because they were removed from projects, benched, and then terminated. Ex. 89

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 17-CV-6848 DMG (PLAx)

at 03-04; Piroumian Decl. ¶¶ 2-4. Plaintiff Cox's claims are typical of the hiring class
because he applied to Cognizant after his termination and was not hired. Ex. 90 at 15-16.
Typicality is satisfied because Plaintiffs and putative class members are challenging the
same course of conduct under the same disparate treatment and disparate impact theories
which they allege resulted in gross statistical disparities in hiring and terminations.[65]

### 4.   *Plaintiffs are Adequate Class Representatives and Class Counsel Will Fairly and Adequately Represent the Classes.*

"The adequacy requirement is satisfied if plaintiffs and their counsel will prosecute
the action vigorously on behalf of the class, and do not have interests adverse to unnamed
class members." *Morgan*, 2019 WL 7166978, at *8. These requirements are met here
because no known conflicts of interest exist, as Plaintiffs  Cox and Piroumian were
terminated and/or denied hire by Cognizant, and they have been actively engaged in the
case, have fully participated in discovery, and, as to Plaintiff Piroumian, has sat for
depositions.[66] Further, Kotchen & Low LLP ("K&L") and Yadegar, Minoofar &
Soleymani LLP have considerable experience with class actions and employment

---

[65] *See Ruiz v. XPO Last Mile, Inc.*, No. 5-cv-2125, 2016 WL 4515859, at *8 (S.D.
Cal. Feb. 1, 2016) (certifying class and noting "claims are typical of the putative class
because Plaintiff and the putative class . . .  were subject to the same . . .
company policies and procedures"); *Morgan*, 2019 WL 7166978, at *7 (typicality met
where parties suffered identical injuries and "Plaintiffs [we]re all subject to the same
purportedly discriminatory compensation scheme"); *Buchanan*, 2017 WL 6611653, at *21
(N.D. Cal. Dec. 27, 2017) (claims were typical where there was "substantial evidence of
TCS' pattern and practice of favoring benched expats who are predominantly South Asian
in mapping such employees to open client projects" and where "employees which remain
on the bench for a prolonged period of time are proposed for termination"); *Lucas R.*, 2018
WL 7200716, at *15 (finding typicality and certifying class where the "proposed class
representatives have suffered injuries similar to those sustained by other members of their
respective putative classes"); *DirecTV*, 330 F.R.D. at 267 ("Plaintiff's claims are typical
of the class because they arise from the same course of conduct and she suffered the same
injury as the putative Class and Subclass members").

[66] Former Named Plaintiff Ed Cox did not sit for a deposition prior to his death.
Kotchen Decl. ¶ 4. His surviving spouse, Ann Cox, was substituted for Mr. Cox on
December 10, 2021. *See* Dkt. #229 at 5.

---

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 17-CV-6848 DMG (PLAx)

discrimination litigation,[67] have vigorously litigated this case for over four years, including expending considerable time and resources engaging in briefing numerous motions and oppositions, research, and discovery, and are unaware of any conflicts of interest. Accordingly, Kotchen & Low LLP and Yadegar, Minoofar & Soleymani LLP should be appointed Class Counsel pursuant to Rule 26(g).[68]

## E.   Each of Plaintiffs' Proposed Classes Satisfy Rule 23(b)(3).

Plaintiffs satisfy the predominance and superiority requirements of Rule 23(b)(3). *See Lucas R.*, 2018 WL 7200716, at *3 (party must "also satisfy one of the criteria of Rule 23(b)."). First, "questions of law or fact common to the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Plaintiffs are not required to show that each element of the underlying cause of action is susceptible to classwide proof … only … that common questions will predominate with respect to their case as a whole." *In re High-Tech*, 985 F. Supp. 2d at 1187. "Where common questions 'predominate,' a class action can achieve economies of time, effort, and expense [and will]

---

[67] *See, e.g.*, *Buchanan*, 2017 WL 6611653, at *1 (appointing K&L as class counsel for terminations class); *Heath v. Google Inc.*, 215 F. Supp. 3d 844, 855 (N.D. Cal. 2016) (granting Plaintiffs' motion for conditional certification and K&L's appointment as collective action counsel); *In re Delta/AirTran Baggage Fee Antitrust Litig.,* 317 F.R.D. 675, 693, 700 (N.D. Ga. 2016) (certifying class of between 28 and 57 million members and appointing K&L as class counsel); *In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09-MD-2090, 2016 WL 4697338, at *15 (D. Minn. Sept. 7, 2016) (appointing K&L as class counsel).

[68] While some courts "have implied an additional requirement under Rule 23(a)[] that the proposed class be ascertainable," *Patel v. Trans Union*, 308 F.R.D. 292, 301 (N.D. Cal. 2015), the Ninth Circuit has not adopted a separate "ascertainability" requirement. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017). Regardless, Plaintiffs' classes are ascertainable as they are defined based on objective criteria, namely: class members' race, national origin, job band, and whether they were terminated (including from the bench) or not hired. *See Buchanan*, 2017 WL 6611653, at *21 (class ascertainable where "plaintiffs define the class based on three objective criteria, namely (i) race, (ii) national origin, and (iii) whether TCS terminated that employee from the bench during the class period").

... permit adjudication of disputes that cannot be economically litigated individually." *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 236 (C.D. Cal. 2003).

### 1. **Predominance**

Common questions of fact and law will predominate because Phase One – the liability phase – will focus on the common question of ██████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████ any individual defenses and damages reserved for Phase Two. *See Chi. Teachers Union v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015) (finding question "was the selection process discriminatory?" to predominate over individual questions because "it will certainly be efficient and fair to answer the question once for all plaintiffs rather than in piecemeal litigation"). Determining adverse impact and "'pattern and practice question[s] predominate[] because [they] ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to ... monetary relief.'" *Ellis*, 285 F.R.D. at 538 (citation omitted).[69]

### 2. **Superiority**

Class treatment and adjudication of Plaintiffs' pattern-or-practice and disparate impact claims will also be "superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3) (considering whether "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating

---

[69] *See also Morgan*, 2019 WL 7166978, at *9 (predominance met where "the members of the putative class allege the same discriminatory employment practices of Defendant . . . [and t]he same evidence would be used to prove the claims against Defendant whether the claims proceed as a class action or as individual lawsuits."); *Moore v. Napolitano*, 926 F. Supp. 2d 8, 33 (D.D.C. 2013) (predominance met where "[a]ll members of the class will rely on the same statistical evidence to make the same claim"); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (finding predominance where "[t]here is a single, central, common issue of liability").

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 17-CV-6848 DMG (PLAx)

the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action").

First, permitting this case to proceed as a class action is the *only fair and efficient way* to adjudicate whether Cognizant systemically discriminated against non-South Asian and non-Indian employees and applicants. If the class is certified and, in Phase One, Plaintiffs prove their pattern-or-practice or disparate impact claims, these issues will be resolved for the classes as a whole, obviating the need for further litigation on these central issues, saving judicial and class member resources, and avoiding the possibility of inconsistent judgments. *See, e.g.*, *Bell v. PNC Bank, Nat'l Assoc.*, 800 F.3d 360, 379-80 (7th Cir. 2015) (explaining that if the class prevails in demonstrating the defendant had an illegal policy, individual class member trials may follow, but "[a]t least it will not be necessary in each of those trials to determine whether [the defendant] had an illegal policy" affecting the class). If the classes are certified, but Cognizant prevails after Phase One, that will also efficiently resolve the entire classes' claims in "one stroke."[70]

Due to the nature of the claims at issue, Plaintiffs' *prima facie* case requires proof that Cognizant engaged in a pattern or practice of discrimination and that Cognizant's policies had a classwide disparate impact, *regardless* of whether those claims were tried as a class action, or as individual claims.[71] If this case is *not* certified to proceed as a class,

---

[70] *See Fla. Educ. Ass'n v. Dep't of Educ.*, No. 4:17cv414, 2019 U.S. WL 8219403, at *3 (N.D. Fla. Jan. 3, 2019) ("First, the Department says the plaintiffs cannot prove a disparate impact. If the Department is correct, it will win on the merits, resolving the claims of all the class members in one stroke. This is a reason to certify a class, not a reason not to.").

[71] Although the Ninth Circuit has not addressed the issue, some district courts in this Circuit have held that claimants cannot individually pursue a pattern or practice claim. *See e.g., Buchanan v. Tata Consultancy Servs.*, *Ltd.*, No. 15-cv-01696, 2018 WL 3537083, at *4 (N.D. Cal. July 23, 2018). As such, an adverse ruling on class certification could prevent any claimants from challenging Cognizant's systemic discrimination.

individual claimants will have to either (1) duplicate Plaintiffs' significant efforts[72] in their own separately-filed case, or (2) abandon their claims because doing so would be too resource-intensive. Certifying this case as a class action is superior to either thousands of individual suits (all litigating the same threshold liability issues), or *zero* individual suits.

In reality, very few, if any, claimants will elect to pursue individual claims against Cognizant if this class is not certified.[73]  Besides the significant resource barriers required to pursue a case, many claimants may be too afraid of retaliation to sue Cognizant.[74] Employees who questioned Cognizant's practices have ███████████ ████████████████.[75] Cognizant is now suing Plaintiffs Piroumian, Franchitti, and Cox[76] in New Jersey because they *preserved* documents in their possession related to this

---

[72] Plaintiffs and their Counsel have already expended significant effort and resources in conducting discovery and preparing for a classwide Phase One trial addressing Cognizant's systemic discrimination. Since this case was filed in 2017, they have invested significant resources to compel documents and data (including moving twice for sanctions) and then to meaningfully review and analyze that information. *See* Dkt. #235 at 16-17 ("This Court has been involved in considering a number of discovery disputes in this action, and at every step of the way it appears that defendants have gone out of their way to interpret their discovery obligations in as narrow a way as possible[.]"); *see also* Dkt. #180 at 19. Cognizant has ultimately produced hundreds of thousands of pages of documents and "troves of data for more than 100,000 employees and even more applicants." *See* Dkt. #235 at 3, 11-12.

[73] *See Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004) ("few potential class members could afford to undertake individual litigation … [and] few class members would have any meaningful redress against [defendant] as a practical matter.").

[74] *See* 2012 Scholarship Series: Tsunami: AT&T Mobility LLC v. Concepcion Impedes Access to Justice, 90 Or. L. Rev. 703, 723 (noting that employment class actions also benefit absent class members because they need not "endure many emotional or other costs of bringing a claim.").

[75] ████████████████████████████████████████████████ ██████████████████████████████████████████████ Ex. 1 at 72 ("Credible evidence supports [Franchitti's] contention that he was discharged in retaliation for his complaints regarding national origin discrimination.").

[76] After learning of Mr. Cox's death, Cognizant has moved to substitute his widow as a defendant in the case. Ex. 105 (Mot. to Substitute and Remand)

---

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 17-CV-6848 DMG (PLAx)

case, as the EEOC instructed them do. Ex. 106 (Compl.); Ex. 107 (EEOC preservation notice). In that lawsuit, Cognizant is demanding that those Plaintiffs repay the entirety of the compensation received from their employment with Cognizant. *See* Ex. 106 at 14.

The strong likelihood that all – or, at least, most – claimants will simply abandon their claims if the class is not certified demonstrates the superiority of proceeding as a class. A class action is the only feasible way that Cognizant's discriminatory conduct will ever be evaluated on the merits, or that victims of Cognizant's discrimination will receive compensation. Class actions also serve an important deterrent function with respect to conduct like systemic discrimination, which is resource-intensive and difficult to prove in individual lawsuits. *See Gay*, 549 F.2d at 1333 (Title VII class actions by private litigant play an important role in "eliminating discrimination in employment").

Second, "[g]iven the class[es'] common questions affecting [them] as a whole at the liability stages of this matter, and given class members' ability to opt out of the … class or to pursue their claims for relief in the second state of the proceedings under (b)(3), class members have a diminished interest in individually controlling the common portions of this action." *Ellis*, 285 F.R.D. at 539-40.

Finally, a review of PACER revealed just four pending individual Title VII or Section 1981 lawsuits against Cognizant, but none involving the pattern-and-practice allegations at issue in this case. Kotchen Decl. ¶ 3; Ex. 108.

### 3.   *Manageability*

There are no foreseeable manageability issues with classwide adjudication of the common issues in Phase One, as the issues to be decided will be common to all, and neither party needs to present individualized evidence. *Ellis*, 285 F.R.D. at 539 (individual questions regarding class members' entitlement to relief addressed by "employing the *Teamsters* framework" which reserves individual relief and Defendant's individualized defenses for Phase Two). And if Cognizant prevails in Phase One, there will never be any management issues to weigh against the benefits of certifying the class. *See United States v. City of N.Y.*, 276 F.R.D. 22, 34 (E.D.N.Y. 2011) ("Individual issues arise in disparate

impact and pattern-or-practice disparate treatment cases only if the class establishes the employer's liability and the litigation proceeds to the remedial phase.").

If this case proceeds to Phase Two, it will be because a jury or the Court has found that Cognizant *engaged in a pattern or practice of discrimination or employment practices that result in a disparate impact*. The benefits of having these issues resolved on a classwide basis will outweigh any difficulties that may arise with respect to the process for determining individual class member's damages during Phase Two. *See* Fed. R. Civ. P. 23(b)(3)(D); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1045 (N.D. Miss. 1993) ("the management of individual interests which may arise are an acceptable trade-off and are not particularly compelling when compared to the advantages of consolidated treatment of common issues of liability."); *Ellis*, 285 F.R.D. at 539 ("The need for individualized hearings does not, on its own, defeat class certification."). For Phase Two, "'there are a number of management tools available to a district court to address any individualized damages issues, such as bifurcation, *the use of a magistrate or special master*, [sample trials], alteration of the class definition, the creation of subclasses, or even decertification after a finding of liability.'" *City of N.Y.,* 276 F.R.D. at 50 (citation omitted); *see* Ex. 109 (Phase Two alternatives).

First, as a practical matter, if the jury (or Court) makes a liability finding in Phase One, it is likely that the Parties will consider a classwide settlement. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014) ("if the class prevails [in Phase One], 'the case would probably be quickly settled.'" (citation omitted)); *Powell v. Tosh*, 280 F.R.D. 296, 310 (W.D. Ky. 2012). Settlement would, of course, obviate any management issues with adjudicating individual defenses or damages. *See T.K. v. Bytedance Tech. Co.,* No. 19-CV-7915, 2022 WL 888943, at *13-14 (N.D. Ill. Mar. 25, 2022).

Second, even without a settlement, the Parties and the Court can agree on a structure for Phase Two proceedings to resolve individual questions in an orderly, efficient manner. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cr. 2004); *see also Powell*, 280 F.R.D. at 310 (the Parties and the Court "can agree on a plan to streamline any damage

trial should Plaintiff's prevail on the issue of liability"). As discussed in *Powell,* if unable to agree upon a classwide settlement following Phase One, the Court could "encourage both parties to submit to a magistrate or special master for damage determinations" and then streamline the process by "agree[ing] to place the plaintiffs in groups of plaintiffs with similar damages and perhaps try representative cases with others being bound." 280 F.R.D. at 311. Or, the Court could "conduct[] individual jury trials on the damage claims until the parties have enough information to finalize settlement negotiations." *Id.*

In any event, this Court need not address and resolve the exact process that may be used in the remedial phase if Plaintiffs are successful in Phase One. *See Williams*, 225 F.R.D. at 638 (finding it is prudent to refrain from this decision until after Phase One).

**F.     Certification of Phase One Issues is Appropriate Under Rule 23(c)(4).**

If the Court remains concerned regarding certification under Rule 23(b)(3) (which it should not), Plaintiffs request that the Court certify the proposed classes only as to the following Phase One issues pursuant to Rule 23(c)(4): (1) whether Cognizant engaged in a pattern or practice of discrimination against each class/subclass, (2) whether Cognizant's employment policies and practices resulted in a disparate impact on each class/subclass that was not justified by business necessity; (3) the availability of punitive damages.

"'Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues.'" *Ellis*, 285 F.R.D. at 544 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "Courts faced with a proposed issue class should consider 'whether the adjudication of the certified issues would significantly advance the resolution of the underlying case, thereby achieving judicial economy and efficiency.'" *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176 (N.D. Cal. 2015) (quoting *Valentino*, 97 F.3d at 1229). Rule 23(c)(4)(A) "is particularly helpful in enabling courts to restructure complex cases to meet the other requirements for maintaining a class action." 7A Wright & Miller, Federal Practice And Procedure § 1780 at 562 (2d ed.1986). Here, certifying the classes as to these Phase One issues will resolve the most important issues common to the

classes, streamline proceedings, prevent inconsistent judgments, and conserve the resources of the Parties, the Court, and class members.

**G.      Nature of the Notice to the Proposed Classes Required.**

Pursuant to Rule 23(c)(2)(B) and L.R. 23-2.2, Plaintiffs request that class notice containing all the information outlined in Rule 23(c)(2)(B) be sent to all putative class members whose personal email is available in Cognizant's systems via email, and, if the email bounces or the email address is unknown, then via United States mail. Because the EEOC has already found that Cognizant engaged in a pattern-or-practice of discrimination, Cognizant shall bear the cost of the notice.[77]

## IV.      CONCLUSION

For the foregoing reasons, the Court should certify the proposed classes and subclass, appoint Plaintiffs Cox and Piroumian as class representatives, and appoint Kotchen & Low LLP and Yadegar, Minoofar & Soleymani LLP as counsel.

DATED: May 13, 2022                          **KOTCHEN & LOW LLP**

                                             By: /s/Daniel Kotchen
                                             Daniel Kotchen (*pro hac vice*)
                                             Daniel Low, SBN 218387
                                             Lindsey Grunert (*pro hac vice*)

                                             Attorneys for Plaintiffs

---

[77] *See* 3 William B. Rubenstein, et al., Newberg on Class Actions § 8:6 (4th ed. 2007) (class notice costs[] may be shifted to defendant after plaintiff's showing of some success on the merits").

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Court's CM/ECF system.

DATED: May 13, 2022                    By: /s/Daniel Kotchen
                                       Daniel Kotchen

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 17-CV-6848 DMG (PLAx)