Daniel Low, SBN 218387
dlow@kotchen.com
Daniel Kotchen (*pro hac vice*)
dkotchen@kotchen.com
Lindsey Grunert (*pro hac vice*)
lgrunert@kotchen.com
**KOTCHEN & LOW LLP**
1918 New Hampshire Ave. NW
Washington, DC 20009
Telephone: (202) 471-1995
Fax: (202) 280-1128

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTY PALMER, VARTAN PIROUMIAN, BRIAN COX, and JEAN-CLAUDE FRANCHITTI<br><br>*Plaintiffs*,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and, COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION,<br><br>*Defendants*. | Case No. 2:17-cv-06848 DMG (PLA)<br><br>**PLAINTIFFS' NOTICE OF AND MOTION FOR SANCTIONS**<br><br>**<u>Hearing</u>**<br>Date:  July 29, 2022<br>Time: 9:30 a.m.<br>Place: Courtroom 8C<br>Judge: Hon. Dolly M. Gee<br><br>Complaint Filed: September 18, 2017<br>Discovery Cut-Off: April 22, 2022<br>Pre-Trial Conference Date: Nov. 29, 2022<br>Trial Date: January 3, 2023 |

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

Please take notice that on July 29, 2022 or as soon as they may be heard, at 9:30 a.m., in Courtroom 8C of the United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Plaintiffs will and hereby do move the Court to sanction Cognizant for falsifying evidence in this matter. Specifically, in an effort to defeat class certification and reduce its exposure for terminating ███ employees from the bench for whom Cognizant identified as having a ████████████████ Cognizant manufactured evidence specifically for this case that misrepresented Cognizant's ████████████████ ████████████. In its normal course of business, ████████████████ ████████████████████████████ In the document Cognizant manufactured for this case, Cognizant altered its usual ████████████████ termination coding so that it was coded as "Voluntary" instead of "Involuntary." Cognizant then uses this falsified evidence to try to defeat class certification and argue to the Court that ███ employees who it fired in fact resigned.

Accordingly, Plaintiffs respectfully request that the Court sanction Cognizant by (1) entering a default judgment against Cognizant as to liability at Phase I of *Teamsters* and (2) issuing an Order striking Cognizant's Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Dkts. 272-1, 273) and Motion to Exclude the Testimony of Dr. Phillip Johnson (Dkts. 280-1, 281), or, in the alternative, striking Cognizant's arguments in the briefs for which the "evidence" is used.

This motion is based upon this notice of motion, the Memorandum of Points and Authorities, the Declaration of Daniel Kotchen, all accompanying exhibits, and such argument as the Court may allow. This motion is made following the conference of counsel pursuant to L.R. 7-1 which took place on June 17, 2022.

DATED:  June 28, 2022

By: /s/Daniel Kotchen
Daniel Kotchen

*Attorney for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

I.      FACTS ..................................................................................................2

        A.      Overview of Cognizant's Termination. .................................2

        B.      Cognizant's Falsification of Evidence. .................................6

        C.      Cognizant's "Justification" For Exhibit 25. ......................11

II.     LEGAL STANDARD ........................................................................13

III.    ARGUMENT ....................................................................................14

        A.      Cognizant's Falsification of Evidence Merits a Default
                Judgment .............................................................................14

        B.      The Court Should Also Strike Cognizant's Opposition and
                Motion to Exclude or, in the Alternative, Strike Cognizant's
                Arguments That Rely on Cognizant's Falsified Evidence. ..........18

IV.     CONCLUSION ................................................................................20

# **TABLE OF AUTHORITIES**

**Cases**

*Addison v. Monarch & Assocs., Inc.*, No. 514CV00358GWJEMX, 2017 WL 10562596 (C.D. Cal. May 8, 2017), *report and recommendation adopted*, No. EDCV 14-358-GW(CWX), 2017 WL 10651147 (C.D. Cal. June 5, 2017) ..................................... 13

*Biron v. Wyndham Vacation Ownership, Inc.*, No. 219CV01695RFBEJY, 2021 WL 7160716 (D. Nev. Aug. 27, 2021) ........................................................................ 14, 17

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) .............................................................. 13

*Combs v. Rockwell Int'l Corp.*, 927 F.2d 486 (9th Cir. 1991) ...................................... 13

*Englebrick v. Worthington Indus., Inc.*, 620 F. App'x 564 (9th Cir. 2015) ............ 14, 17

*In re Anderson*, No. 14-22147 (RDD), 2022 WL 1926608 (Bankr. S.D.N.Y. June 3, 2022) ................................................................................................................................ 13

*Indiezone, Inc. v. Rooke*, 720 F. App'x 333 (9th Cir. 2017) ......................................... 16

*Leverty & Assocs. v. Exley*, No. 317-CV-00175, 2018 WL 6728415 (D. Nev. Nov. 5, 2018) ................................................................................................................................ 13

*Monsanto Co. v. E.I. Du Pont de Nemours and Co.*, 748 F.3d 1189 (2014) ................ 18

*Nanak Fdn. Trust v. GMAC Mort., LLC*, No. C–12–5647 EMC, 2012 WL 5818284 (N.D. Cal. Nov.15, 2012) ............................................................................................... 16

*Newman v. Brandon*, No. 1:10-CV-00687 AWI JL, 2012 WL 4933478 (E.D. Cal. Oct. 16, 2012) ......................................................................................................................... 15

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ................................................. 13

*Valley Eng'rs, Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051 (9th Cir. 1998) ....................... 15

*Weidner v. Carroll*, No. 06-CV-782-DRH, 2008 WL 11379998 (S.D. Ill. Mar. 31, 2008) ................................................................................................................................ 13

iii

Plaintiffs file this motion to address a serious and concerning case development. A ███████████ of employment terminations at issue in this case involve terminations of employees placed in unallocated status, known as the "bench."  The vast majority of this case's bench terminations—████—involve employees Cognizant coded as terminated for having a job location preference.  █████████████████ is the ████████ Cognizant documents for these terminations.  In its normal course of operations, Cognizant reports ██████████ ███████ terminations as ████████ and the terminations are administered through Cognizant's ████████████████████████████████████████████████████ ██████.

In support of its Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Dkts. 272-1, 273) ("Cognizant's Opposition") and its Motion to Exclude the Testimony of Dr. Phillip Johnson (Dkts. 280-1, 281) ("Motion to Exclude"), Cognizant submits and heavily relies on a single evidentiary chart—Exhibit 25 to Cognizant's Opposition (Dkt. 272-22)—purporting to show that ████████ ██████" as a matter of fact reflects █████████████████████ ████████████  Exhibit 25 was created specifically for this litigation, and the information contained within it is demonstrably false and fabricated, designed to alter a single fact in this case that could substantially reduce Cognizant's exposure:  to falsely indicate that ████████████████████████████████████████ ███████████████████.

On February 14, 2019, Cognizant's former Chief Legal Officer and former President were indicted for falsifying evidence by creating a false "claims list" and "change order request" to conceal a $2 million bribery payment.[1]  Cognizant's creation of Exhibit 25 involves strikingly similar conduct, made worse in that Exhibit 25's false evidence is presented to the Court to prove a fictitious fact.

---

[1] Indictment ¶¶ 23-25, *United States v. Coburn*, 2:19-cr-00120 (KM) (D.N.J. Feb. 14, 2019), https://www.justice.gov/opa/press-release/file/1132691/download.

While Cognizant has undertaken in this case a litany of discovery abuses and litigation misconduct to shield information from disclosure,[2] its creation and use of false evidence is its worst tactic yet, warranting severe sanctions.  To remedy Cognizant's misconduct, Plaintiffs respectfully request a default judgment as to liability—i.e., a finding that Cognizant engaged in a pattern or practice of discrimination against a class of terminated non-South Asian and non-Indian former employees and a class of non-South Asian and non-Indian applicants who were denied employment. Plaintiffs further ask that the Court strike Cognizant's briefs in which it relies on the falsified evidence or, in the alternative, strike the arguments in the briefs for which the evidence is used.

## I.  FACTS

**A.     Overview of Cognizant's Termination.**

[2] *See*, *e.g.*, Order at 17 (Dkt. 235) (finding that "key documents from critical custodians have likely been lost, destroyed, and/or not timely produced as a result of Cognizant's discovery actions and inactions, and that plaintiffs have been prejudiced as a result" and finding "sufficient evidence . . . to support a strong inference of defendants' intent to deprive plaintiffs of the use of those documents in this litigation, or at a minimum of defendants' gross negligence."); Order at 19, Dkt. 180 (noting that Cognizant's decision to "designat[e] a [30(b)(6)] witness with absolutely no personal knowledge of the issues herein and then minimally educating him about a thin slice of those issues . . . . leaves the Court wondering if defendants are concerned that designating a witness with detailed knowledge about these issues, or properly preparing a witness to testify, might somehow be damaging to them").

[3] *See* Ex. 1 at 743 ; Ex. 2 at 247 ).



As part of its federally mandated affirmative action program, Cognizant

Benched employees are

---

[4] *See, e.g.,* Ex. 2 at 247 (

; Ex. 3 at 792
(); Ex. 4 at 647 (same); Ex. 5 at 666 (same); Ex. 6 at 262 (same); Ex. 7 at 416 (same); Ex. 8 at 951 (same); Ex. 9 at 352 (same); Ex. 10 at 306 (same); Ex. 35 at 715 (same); Ex. 11 at 246 (); Ex. 12 at 929 (same); Ex. 13 at 750 ().

[5] Ex. 14 at 979.

[6] *See* Padmanabhan Decl. ¶ 13 (Dkt. 272-9) (); Cognizant's Opp'n at 10 (Dkt. 272-1) (); Padmanabhan Dep. Tr. 53:12-14 (Oct. 12, 2021) (Ex. 15) (; Ex. 16 at 472-73.

[7] Ex. 17 (); *see also* Ex. 18 at 954 ().

placed in Cognizant's "Practice Deployable Pool" ("PDP") or "Corporate Deployable Pool" ("CDP") and, from there, expected to look for new jobs within Cognizant. Pls.' Mot. for Class Cert. at 4 (Dkt. 262-1). Benched U.S. employees are given five weeks to find a new role before being terminated. *Id*. During this time,



Cognizant's data tracking and reporting, as well as internal documents,

_____

[8] *See* Ex. 19 at 287.

[9] *See* Ex. 2 at 247.

[10] Johnson Rpt., Fig. 6, p. 12 (Dkt. 255-2).

[11] *See, e.g.*, Ex. 20 at 914

); Ex. 21 at 521

; Ex. 13 at 750

; Ex. 18 at 954 (

Ex.17



<sup>13</sup>

On February 5, 2020, the Equal Employment Opportunity Commission ("EEOC") issued Letters of Determination to five former Cognizant employees who Cognizant terminated from the bench. *See* Letters of Determination ("LOD") (Dkt. 256-4). In each letter, the EEOC announced its determination that Cognizant discriminated "against a nation-wide class of [non-Indian] employees on the basis of race and national origin by removing them from assignments that they were qualified for, refusing to assign them to new projects and terminating them when they remained unassigned." *Id.* Also in each letter, the EEOC explains why Cognizant's purported defense and/or justification of its termination of the employees lacks credibility. *Id.* For instance, the EEOC found no evidence to support Cognizant's claim that one of the terminated employees was "unable or unwilling to work outside of his current locality" and found that "[a]t no time was the prospect of relocation made."[14] The

---

[black redaction]

)

[12] *See, e.g.*, Ex. 22 at 615 ([black redaction]

[black redaction] ; *see also* Ex. 23 at 624

[black redaction] .

[13] *See, e.g.*, Ex. 22 at 615.

[14] *Id.* at 667 (LOD re: Richard Stewart noting "Credible evidence supports Charging Party's contention that he was not considered for positions which he was eligible and willing to take. Charging party was not provided assistance . . . . There is

███████████████ Cognizant applied to its termination of each of the employees who received an EEOC Letter of Determination (with the exception of Jean-Claude Franchitti) was ███████████████"[15]

## B.     Cognizant's Falsification of Evidence.

On June 10, 2022, Cognizant filed its class certification opposition brief with the Court. In that brief, Cognizant argues that Plaintiffs, in moving for class certification, incorrectly categorized as "Involuntary" the ██████████████ termination reason. Cognizant represents that ███████████████" is in fact a "Voluntary" termination due to an employee's decision "to reject relocation," as follows:

> Dr. Johnson's analysis rests upon allegedly 'involuntary' bench terminations codes, which he has categorized incorrectly. The number one bench termination reason identified by Dr. Johnson is 'location preference,' which is, in fact, a *voluntary* termination based on the individual's decision to reject relocation. Smith Dec. Ex. 25; Ex. 1, ¶¶ 133-134.

Cognizant's Opp'n at 19-20 (Dkt. 272-1) (emphasis in original); *see also id.* at 21 n.7 ("Dr. Johnson incorrectly classifies all of these terminations codes as involuntary. *Compare* Dkt. 262-2, ¶ 23 *with* Smith Dec. Ex. 25. Plaintiffs' entire explanation of what constitutes an involuntary termination rests on a single document lacking foundation or reliability—Exhibit 9[16] to Westphal's deposition. *See* Dkt. 262-2, ¶ 23."). Cognizant similarly argues that the expert report of Dr. Phillip Johnson should be excluded because it "disregard[s] . . . evidence that categorized each of Cognizant's termination codes as voluntary or involuntary[.]" Mot. to Exclude at 5 (Dkt. 280-1); *see also id.* at 15 ("he then treats as involuntary other termination codes such as █████

---

no evidence that Charging Party was unable or unwilling to work outside of his current locality. At no time was the prospect of relocation made[.]").

[15] Kotchen Decl. ¶ 2.

[16] Exhibit 9 to Mr. Westphal's Rule 30(b)(6) deposition is also attached here as Ex. 9, and Cognizant's "███████████████ of that document. *See* Ex. 9 at 352.

████████████████'—the most common termination reason that he analyzed—despite evidence directly contradicting that categorization.").

Cognizant's representations to the Court are based on Exhibit 25 to Ms. Smith's declaration, filed in support of Cognizant's Opposition (Dkt. 272-22).  Exhibit 25 is an evidentiary spreadsheet that Cognizant created in advance of a December 7, 2021 Rule 30(b)(6) deposition.  At that deposition, Plaintiffs intended to depose Cognizant on a broad range of topics,[17] as Cognizant had terminated almost all this case's document custodians, depriving Plaintiffs of the ability to depose critical custodians (who lived in India).[18]  Cognizant objected to the breadth of Rule 30(b)(6) deposition notice, and the parties conferred about a way to minimize the burden on Cognizant of preparing a Rule 30(b)(6) witness.[19]

One noticed deposition topic concerned the meaning of Cognizant's termination codes, including whether the codes were voluntary or involuntary.[20]  Cognizant had produced in discovery a list of ████████████████████████████████, which it referred to as a "data dictionary."[21] ███████████████████████████████

---

[17] *See* Ex. 24.

[18] Kotchen Decl. ¶ 3.

[19] *Id*. ¶ 4.

[20] *See* Ex. 24 at Topic 6 ("The terminations data maintained by Cognizant for employees who worked for Defendants in the United States from January 1, 2013 to the present, including but not limited to, the meaning of each termination reason/code . . ."); Ex. 32 at Topic 6 (providing "areas of inquiry" for the noticed deposition topics, including "[t]he meaning of each termination code listed in Cognizant's data (e.g., COGNIZANT-103742), and whether the code reflects a voluntary or involuntary termination."); Nov. 15, 2021 Email from L. Grunert to Cognizant (Ex. 26) (specifying that Plaintiffs were seeking, with respect to topic 6 "an explanation of each code (including which code(s) indicate terminations from the bench), and whether each termination reason is voluntary or involuntary.").

[21] Jan. 20, 2021 Ltr. from Cognizant to Pls. (Ex. 27) ("Today, you will receive a link to download a production that contains termination code reasons."); Ex. 28 (data dictionary); Jan. 27, 2021 Ltr. from Cognizant to Pls. at 2 (Ex. 31) (describing Ex. 28 as a "data dictionary").

Case No. 2:17-cv-6848-DMG-PLA

PLAINTIFFS' MEMORANDUM ISO OF THEIR MOTION FOR SANCTIONS

*See* Ex. 28.  Throughout discovery, in seeking data from Cognizant, Plaintiffs had repeatedly asked whether Cognizant maintained data as to whether terminations were voluntary or involuntary and whether the terminations data that Cognizant agreed to produce would include that information.[22]  Cognizant ignored these questions outright until January 2021 when Cognizant directed Plaintiffs to Cognizant's data dictionary in response to Plaintiffs' inquiry as to whether termination reasons codes distinguished voluntary from involuntary terminations.[23]  Plaintiffs understood this as a representation that Cognizant did not categorize terminations as voluntary or involuntary, which, of course, was not the case.[24]  Based on Cognizant's representation, Plaintiffs intended to depose the Rule 30(b)(6) witness as to Cognizant's internal classifications of terminations and their voluntariness in order to apply those classifications to the employment data Cognizant had produced. In discussing ways to minimize Cognizant's burden of preparing a Rule 30(b)(6) witness, Plaintiffs and Cognizant agreed that Cognizant would create a chart that described each termination reason code (including terminations from the bench)

---

[22] *See*, *e.g.*, Feb. 24, 2020 Letter from Pls. to Cognizant at 4 (Ex. 29) (requesting data concerning "Termination or resignation reason (including whether it was voluntary or involuntary)"); Sept. 29, 2020 Email from L. Grunert to Cognizant (Ex. 30) ("You mention in your email below that PeopleSoft also contains a termination code, which Cognizant will produce. Is this a numerical code? If so, will Cognizant also be providing a data dictionary indicating what the code represents? As noted in our February 2020 letter, we are seeking data concerning the reason for each employee's termination, as well as whether the termination was voluntary or involuntary.").

[23] Jan. 27, 2021 Ltr. from Cognizant to Pls. (Ex. 31) (responding to November 2020 questions from Plaintiffs: Q: "Please confirm that the 'job action code' shows whether a termination was voluntary or involuntary." A: "We've provided you with a data dictionary for termination and resignation reasons.").

[24] This is the sort of conduct for which Cognizant has been chastised and sanctioned during the course of discovery. *See* Order at 20 (ECF 235) ("[D]efendants' false certifications have primarily been acts of *omission* during the discovery process").

and identify whether each code reflected a voluntary or involuntary termination.[25]

Cognizant provided Plaintiffs with Exhibit 25 in response.  In the chart, Cognizant describes "████████████████" as follows: "████████████████ ████████████████████████████████████████. This description is false, as former employees whose terminations are coded ████████████████" are not offered jobs or support while benched, and, many (or most) may have been willing to relocate.[27]

Also in Exhibit 25, Cognizant designated the "Voluntary/Involuntary" nature of a "████████████████" termination as "Voluntary."[28] In so doing, Cognizant altered its internal, normal-course-of-business termination data coding. Specifically, in its attrition reporting, affirmative action adverse impact analyses, bench exit reports, operational improvement reports, and other normal-course-of-business documents, ████████████████████████████████████ ████████████████████████████████████ Yet in creating Exhibit 25, Cognizant changed the "████████████████" data coding from "Involuntary" to

[25] Nov. 15, 2021 Email from L. Grunert to Cognizant (Ex. 26).

[26] See Ex. 25.

[27] See Ex. 33 (████████████████████████████████ ████████████████████████████████████").

[28] See Ex. 25.

[29] See, e.g., Ex. 20 at 914 ████████████ ████████████"); Ex. 21 at 521 ████████████"); Ex. 13 at 750 ████████████); Ex. 18 at 954 (████████████ ████████████████████████████████████); Ex. 17 ████████████ ████████████ Ex. 34 at 475 ████████████ ████████████

PLAINTIFFS' MEMORANDUM ISO OF THEIR MOTION FOR SANCTIONS

"Voluntary."  Cognizant also made the exact same alterations in Exhibit 25 to the
█████████████████████████████████████████████████████████████████
████████████████████████████.

Altering the "Voluntary/Involuntary" nature of a "CDP-Location Preference"
termination required affirmatively changing—that is, falsifying—the
"Voluntary/Involuntary" coding designation that normally attaches to a ████████
████████████████████████████:

█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
**Exhibit 25**
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████

Cognizant then uses this falsified evidence to argue to the Court that ██████████
████████████████████████████████████████████████████████, such that
they cannot be included in any terminations class and that Plaintiffs' expert, Dr.
Johnson, should not be allowed to testify in this case because he incorrectly treated
█████████████████████████████████████████████." In other words, Cognizant
seeks to impede the federally protected rights of ████████ of former Cognizant
employees terminated from the bench through simple and artful deception.

---

[30] *See* Ex. 20 at 914.

C.      Cognizant's "Justification" For Exhibit 25.

On June 13, 2022, Plaintiffs sent Cognizant a letter raising concerns that, by relying on Exhibit 25 in its Opposition, Cognizant was presenting the Court with falsified evidence and representing it as fact.[31] In response, Cognizant does not argue that Exhibit 25 in fact reflects how Cognizant codes and treats "███████ ███████" terminations.[32] Instead, Cognizant justifies its creation and use of Exhibit 25 in arguments to the Court as follows:

> [W]hether a particular code might be considered to be generally "voluntary" or "involuntary" could depend upon the circumstances under which someone is considering such codes or who is putting together a particular document.[33]

Accepting Cognizant's position here would mean that a litigant can alter/adjust immutable, discrete facts depending on "circumstances" and the need to fit a narrative, which is not how litigation works. This is particularly concerning where, as here, Cognizant's alteration of the terminations coding would impact ███████ of potential class members.

Cognizant also notes that Dr. Johnson, in assessing statistical disparities, himself removed from his discrimination analysis of terminations several involuntary termination codes, such that Plaintiffs should not be concerned about Cognizant changing its coding of ████████████████" from Involuntary to Voluntary for the purposes of this case.[34] But Dr. Johnson removed the following Involuntary codes from his expert analysis simply to be conservative, as the names of the codes did not

---

[31] *See* Ex. 36; Class Cert. Opp. at 19-20 ("The number one bench termination reason identified by Dr. Johnson is 'location preference,' which is, *in fact,* a *voluntary* termination based on the individual's decision to reject relocation." (citing Exhibit 25)); Class Cert. Opp. at 21, n.7 ("Dr. Johnson *incorrectly* classifies all of these terminations codes as involuntary.") (emphasis added).

[32] Ex. 37

[33] *Id.* at 3.

[34] *Id.*

PLAINTIFFS' MEMORANDUM ISO OF THEIR MOTION FOR SANCTIONS

suggest they should be included in a discrimination analysis of involuntary
terminations: "█████████████████████████████████████████████
███████████████████."[35]  In offering his expert opinion, Dr. Johnson did
not falsify information and present it as fact.

Finally, Cognizant argues that any concerns Plaintiffs had about Exhibit 25
should have been raised during the 30(b)(6) deposition.[36]  But Plaintiffs did not intend
to introduce Exhibit 25 in the deposition at all and instead wanted to ask the witness
about Cognizant's involuntary termination coding, using a normal-course-of-business
document—Exhibit 9 to this motion—that accurately reflected Cognizant's coding of
involuntary terminations.[37]  Cognizant objected to Plaintiffs' questions and directed
Plaintiffs to Exhibit 25, as to which the witness had been prepared to testify.[38]  Then,
when asked about Exhibit 25, the witness ████████████████████████████
██████████████████████████."[39]  Plaintiffs quickly moved on in the
deposition, as the witness had previously testified (accurately) as to the difference

---

[35] Johnson Tr. 171:21-172:5 (Ex. 38); *id.* at 173:5-18 (testifying that he made certain exclusions "[t]o be conservative").

[36] Ex. 37 at 2-3.

[37] Ex. 9 at 21; Westphal 30(b)(6) Dep. Tr. 152:17-23 (Ex. 39) (████████████████
███████████████████████████████████████████████████.").

[38] Westphal 30(b)(6) Dep. Tr. 153:10-154:8 (Ex. 39) ("███████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████.

[39] *Id.* at 155:12-18 ("█████████████████████████████████████████
████████████████████████████████████████████████████████.").

between voluntary and involuntary separations,[40] and it was clear that the witness was ███████████████████████████████████.

## II. LEGAL STANDARD

Courts have "the inherent power to impose sanctions for . . . bad-faith conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980) (recognizing the "well-acknowledged inherent power of a court to levy sanctions in response to abusive litigation practices"). While inherent authority "must be exercised with restraint," it nevertheless gives courts significant discretion "to fashion an appropriate sanction for conduct which abuses the judicial process," up to and including "outright dismissal" in egregious circumstances. *Chambers*, 501 U.S. at 44-45. Thus, the Court may issue "fines, awards of attorney's fees and expenses, contempt citations, issue and evidence preclusion, default judgment and even dismissal." *Leverty & Assocs. v. Exley*, No. 317-CV-00175, 2018 WL 6728415, at *8 (D. Nev. Nov. 5, 2018). The Ninth Circuit holds that falsifying evidence is a ground for imposing the sanction of dismissal. *See Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991).

In addressing bad faith conduct analogous to Cognizant's falsification of evidence, this Court and others, in class cases, have entered default judgments against the offending party or, as a sanction, simply certified a class, which the offending party opposed. *See*, *e.g.*, *Addison v. Monarch & Assocs., Inc.*, No. 514CV00358GWJEMX, 2017 WL 10562596, at *6 (C.D. Cal. May 8, 2017), *report and recommendation adopted*, No. EDCV 14-358-GW(CWX), 2017 WL 10651147 (C.D. Cal. June 5, 2017) (ordering certification of a class and default judgment as a sanction for "'conduct tantamount to bad faith'" pursuant to Rule 37 and the court's inherent authority to impose sanctions); *In re Anderson*, No. 14-22147 (RDD), 2022 WL 1926608, at *7, *32

---

[40] *Id*. at 152:19-153:2 (testifying that "[a] voluntary separation is . . . an associate resigning on their own volition" and an involuntary separation is "being separated for performance" or "going through the bench process and not finding another project.").

Case No. 2:17-cv-6848-DMG-PLA

(Bankr. S.D.N.Y. June 3, 2022) (granting a default judgment based on "improper discovery conduct" and separately considering whether the Rule 23 class certification requirements (as incorporated by federal bankruptcy rules) had been met); *Weidner v. Carroll*, No. 06-CV-782-DRH, 2008 WL 11379998, at *2 (S.D. Ill. Mar. 31, 2008) (entering judgment on liability as a discovery sanction and separately considering class certification).

Given the severity of Cognizant's misconduct, Plaintiffs seek a default judgment as to liability—i.e., a finding of a finding that Cognizant engaged in a pattern or practice of discrimination against a class of terminated non-South Asian and non-Indian former employees and a class of non-South Asian and non-Indian applicants who were not hired by Cognizant during the class period. Plaintiffs further seek an order striking Cognizant's Opposition and Motion to Exclude, both of which incorporate and rely on Cognizant's falsified Exhibit 25, or, in the alternative, striking the arguments within Cognizant's Opposition and Motion to Exclude that rely on the falsified evidence.

## III.   ARGUMENT

### A.   Cognizant's Falsification of Evidence Merits a Default Judgment.

When assessing whether to impose dismissal pursuant to the Court's inherent authority, Courts must determine: (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, and (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case. *Englebrick v. Worthington Indus., Inc.*, 620 F. App'x 564, 566 (9th Cir. 2015). Courts may also consider prejudice to the offended party, although such a consideration is optional. *Id.*

Cognizant's conduct meets all four criteria for terminating sanctions under the Court's inherent authority. First, "[f]abrication of evidence material to the merits of a case certainly meets the 'extraordinary circumstances' prong." *Biron v. Wyndham Vacation Ownership, Inc.*, No. 219CV01695RFBEJY, 2021 WL 7160716, at *4 (D.

Nev. Aug. 27, 2021) (citing *Englebrick*, 620 F. App'x at 567). In the Ninth Circuit, "extraordinary circumstances exist where there is a pattern of disregard for Court orders and deceptive litigation tactics that threaten to interfere with the rightful decision of a case." *Valley Eng'rs, Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). Here, Cognizant's willingness to fabricate evidence and misrepresent facts makes it impossible to trust any of Cognizant's evidence. *See Newman v. Brandon*, No. 1:10-CV-00687 AWI JL, 2012 WL 4933478, at *4 (E.D. Cal. Oct. 16, 2012) ("the Court has no confidence that it can accept Plaintiff's account of the events set forth in his own declarations when deciding the motion for summary judgment, given he has shown his willingness to fabricate evidence").

Cognizant has claimed that Exhibit 25 is not a fabrication of evidence because it merely represents Cognizant's *opinion* as to whether a particular termination type is voluntary or involuntary. But Exhibit 25 was not presented as a legal or expert opinion, but rather as a stand-in for Rule 30(b)(6) factual testimony—i.e., as evidence of Cognizant's actual practices. Cognizant not only fails to acknowledge in its Opposition that the chart does not represent how terminations are actually coded and treated (which is confirmed through copious internal documents and data), but uses it to claim that Plaintiffs' classifications—which reflect how Cognizant *actually* codes and treats terminations—are unreliable and not based in fact. *See* Cognizant's Opp'n at 19-20 (Dkt. 272-1) ("The number one bench termination reason identified by Dr. Johnson is 'location preference,' which is, ***in fact,*** a *voluntary* termination based on the individual's decision to reject relocation." (citing Exhibit 25)) (emphasis added); *id*. at 21 n.7 ("Plaintiffs' entire explanation of what constitutes an involuntary termination rests on a single document lacking foundation or reliability"). Further, Cognizant's representation that the ███████████████" coding is used only when an employee was █████████████████████ is objectively and verifiably false. *See* p. 9, *supra*.

Moreover, these tactics are part of a pattern of deceptive litigation tactics for

15

which Plaintiffs have repeatedly been forced to seek Court relief.  As Judge Abrams put it, Defendants have refused to recognize "the full and proper scope of their discovery obligations, notwithstanding this Court's repeated guidance." Order at 26 (Dkt. 235). In imposing sanctions (which the Court has now done *twice*), Judge Abrams pointed to multiple false or misleading representations made by Cognizant during discovery. *Id*. at 20[41] (listing false certifications). However, the Court has so far imposed only monetary sanctions, which, as recent events show, are not sufficient to dissuade Cognizant from continuing its pattern of deception.

Second, "'recklessly or intentionally misrepresenting facts constitutes the requisite bad faith' to warrant sanctions[.]" *Indiezone, Inc. v. Rooke*, 720 F. App'x 333, 337-38 (9th Cir. 2017). Indeed, courts in the Ninth Circuit consistently find the falsification of evidence to constitute bad faith. *See, e.g., Nanak Fdn. Trust v. GMAC Mort., LLC*, No. C–12–5647 EMC, 2012 WL 5818284, at *4 (N.D. Cal. Nov.15, 2012) (omitting a page of a document that was submitted as an exhibit constituted bad faith). Here, there is no question that Cognizant's misrepresentations were intentional. For example, the EEOC investigated and found that the very terminations that Cognizant tried to recode as voluntary resignations were part of "nationwide pattern or practice of discrimination against non-Indian employees." Dkt. 256-4 at 666. Further, Cognizant's creation and use of the Cognizant 30(b)(6) Chart came after it spent years resisting

---

[41] "[D]efendants' false certifications have primarily been acts of omission during the discovery process. For instance, defendants narrowly construed the scope of their discovery obligations to include only email ESI from certain locations; they failed to search all available drives, servers, and other locations for custodians' documents, for email and non-email ESI and documents; they failed to inform plaintiffs about the narrowed searches they were conducting and where they were conducting their searches; they engaged in obstructionist tactics at the Rule 30(b)(6) deposition of the individual designated to be defendants' most knowledgeable on document collection; they failed to produce arbitration agreements . . . despite having entered into them starting in 2019; and they repeatedly attempt to paint plaintiffs as the reason behind any discovery misunderstandings and lack of perfection evidenced by defendants in this action."

Plaintiffs' requests for data as to which terminations Cognizant codes as voluntary and which it codes as involuntary. *See* pp. 7-8, *supra*. After refusing to provide truthful answers as to how it codes terminations (through 30(b)(6) testimony or otherwise) Cognizant now claims that the evidence Plaintiffs have uncovered about how Cognizant *actually* and *contemporaneously* coded terminations cannot be trusted. Cognizant's course of conduct shows that its misrepresentations were not mere missteps.

Third, there is sufficient nexus between Cognizant's misconduct and the case at hand. Accepting the definitions in Exhibit 25 could substantially reduce Cognizant's exposure at the liability phase, and Cognizant relies heavily on Exhibit 25 in asking the Court to deny class certification, claiming that the voluntary/involuntary coding in the falsified exhibit "*disproves* commonality" and calls into question the entire expert report of Dr. Johnson, such that class certification is improper. *See* pp. 18-19, *infra*.

Fourth, no lesser sanction than a default judgment would suffice. Merely excluding the evidence would put Cognizant in the same position that it would have been in had it not falsified evidence in the first place and would incentivize further misconduct, including additional falsification of evidence. And any alternative short of a default judgment would force Plaintiffs to litigate liability against a party whose evidence cannot be trusted. As the Ninth Circuit has recognized, this form of deceptive conduct makes it "impossible for the Court to believe a word" that the party says. *Englebrick*, 620 F. App'x at 566-67; *see also Biron*, 2021 WL 7160716, at *4 ("In fact: Dismissal is particularly warranted where one party submits falsified evidence" because "[t]he submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout this litigation."). Under these circumstances, "[n]o lesser sanctions would be adequate." *Englebrick*, 620 F. App'x at 567.

**B.  The Court Should Also Strike Cognizant's Opposition and Motion to Exclude or, in the Alternative, Strike Cognizant's Arguments That Rely on Cognizant's Falsified Evidence.**

In addition, the Court should strike Cognizant's Opposition (ECF 272-1) and Motion to Exclude (ECF 280-1). No lesser sanction would suffice because both briefs rely heavily on Exhibit 25. And while Plaintiffs propose alternative sanctions below, those sanctions would allow the rest of Cognizant's Opposition (and Motion to Exclude) to stand, and Cognizant's falsification of evidence calls the whole submissions into doubt.  This is particularly true here, where Cognizant's Opposition relies heavily on self-serving declarations rather than contemporaneous documentary evidence to rebut Plaintiffs' allegations as to Cognizant's class-wide practices.[42] Cognizant essentially asks the Court to rely on its word, and it has shown through its submission of Exhibit 25 and supporting arguments that its word cannot be trusted.

In the alternative, the Court should sanction Cognizant by striking arguments in its Opposition and Motion to Exclude that Cognizant chose to tie to the fabricated evidence.  This sanction is narrowly tailored to prevent Cognizant from gaining an advantage from its improper conduct and is comparable to the sanctions upheld by the Federal Circuit for similar (but less severe) conduct in *Monsanto Co. v. E.I. Du Pont de Nemours and Co.*, 748 F.3d 1189 (2014). There, the Federal Circuit affirmed sanctions where a litigant made factual misrepresentations concerning its subjective understanding of evidence. The Federal Circuit found that "DuPont exceeded the bounds of appropriate conduct and stretched its advocacy beyond what was reasonably justified." *Id.* at 1201. Because DuPont "had abused the judicial process and acted in

---

[42] In addition to relying on Exhibit 25, Cognizant submitted 12 declarations from employees or former employees in support of its Opposition. *See* 273-1 (describing Cognizant's 44 exhibits, 5 of which are declarations from employees or former employees); *see also* 272-4, 272-273-23, 273-24, 273-25, 273-26, and 273-27 (additional declarations from employees or former employees submitted in support of Cognizant's Opposition). Other than exhibits that are specific to the Named Plaintiffs, Cognizant relies on only three contemporaneous documents in support of its Opposition: Dkts. 273-12, 273-22, 272-24.

bad faith by making affirmative factual misrepresentations," the Federal Circuit affirmed the "narrowly tailored sanctions" of striking DuPont's counterclaim related to the factual misrepresentations and imposing attorneys' fees. *Id*.

In its Opposition, Cognizant relies heavily on the fabricated evidence to support two arguments. First, Cognizant claims that Plaintiffs have not established commonality for its terminations class. *See* Cognizant's Opp'n at 19-20 (Dkt. 272-1) (arguing that Dr. Johnson's "model *disproves* commonality" because "[t]he number one bench termination reason identified by Dr. Johnson is 'location preference,' which is, in fact, a *voluntary* termination based on the individual's decision to reject relocation." (citing Exhibit 25)). Second, Cognizant argues that Plaintiffs cannot establish predominance for the terminations class because "[i]ndividualized considerations abound . . . including whether a termination was voluntary or involuntary" and that "[f]or bench terminations, questions as to whether decisions by class members themselves—rejecting a position, refusing to relocate, refusing to travel, or being unavailable or unresponsive to potential opportunities—resulted in the termination will predominate[.]" *Id*. at 29-30.  The Court should strike those arguments and evaluate Plaintiffs' arguments under the requirements of Rule 23.

In its Motion to Exclude, Cognizant relies on the falsified evidence to support its argument that Dr. Johnson's opinions regarding termination disparities are unreliable. Mot. to Exclude at 5 (Dkt. 280-1) (arguing that the expert report of Dr. Phillip Johnson should be excluded because it "disregard[s] . . . evidence that categorized each of Cognizant's termination codes as voluntary or involuntary"); *see also id*. at 15 ("he then treats as involuntary other termination codes such as '███████████'—the most common termination reason that he analyzed—despite evidence directly contradicting that categorization."); *id*. at 18 (arguing that Dr. Johnson's failure to "take [Exhibit 25] into account in his analysis" constitutes a "fatal deficiency in Dr. Johnson's termination analysis"). The Court should strike this argument.

## IV.    CONCLUSION

For the foregoing reasons, the Court should sanction Cognizant for falsifying evidence in this matter by granting terminating sanctions and by striking Cognizant's Opposition and Motion to Exclude in their entirety, or at a minimum, the portions of those briefs that are supported by the fabricated evidence.


Dated: June 28, 2022                              Respectfully submitted,


By: /s/Daniel Kotchen
Daniel Kotchen (*pro hac vice*)
Daniel Low, SBN 218387
Lindsey Grunert (*pro hac vice*)

**KOTCHEN & LOW LLP**

*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served today on all counsel of record by electronic service through the Court's CM/ECF filing system.


Dated: June 28, 2022                              /s/Daniel Kotchen