UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | | Date | June 1, 2023 |
|---|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | | Page | 1 of 21 |
|---|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE MOTIONS *IN LIMINE* [440] [441] [442] [443] [450] [453] [454] [459] [463] [464] [466] [472] [473]**

Before the Court are 12 fully-briefed motions *in limine* ("MILs") and a motion to strike. The Court held a hearing on May 16, 2023. Having carefully considered the parties' briefs, the Court renders the following rulings.

## I.
## PLAINTIFFS' MIL NO. 1

In MIL No. 1, Plaintiffs move to exclude the testimony of Cognizant's expert, Dr. Justin McCrary, pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). [Doc. ## 440, 509 (under seal), 496 (opposition), 512 (under seal).] Plaintiffs contend that Dr. McCrary's regression analysis, provided in his report, should be excluded because it is (a) irrelevant and (b) unreliable.

Plaintiffs object to Dr. McCrary's opinion that "performance"-based variables can partly explain the termination disparities identified by Plaintiffs' expert, Dr. Philip Johnson. The basis for Plaintiffs' relevance argument is that "performance" is not relevant to bench terminations, because employees terminated from the bench are practically by definition not terminated for poor performance. The Court agrees with Cognizant that Plaintiffs' arguments miss the mark.

Although Dr. McCrary calls them "skill" or "performance" variables, they do not necessarily have anything to do with employees' performance. *See* McCrary Depo. 272:7-10 [Doc. # 440-2] ("You could replace 'performance' with 'characteristics,' and I think that's actually probably more accurate."). The variables included in Dr. McCrary's regression analysis are education, job code, hire year, experience in the U.S., business unit, location, willingness to travel, and willingness to relocate. McCrary Report ¶¶ 88, 93 & Ex. 11 [Doc. # 440-2]. These variables appear to impact the disparities identified by Plaintiffs' expert, Dr. Phillip Johnson. For the reasons stated below, Plaintiffs dispute the relevance of these characteristics to Dr. McCrary's analysis, but that is a basis for cross-examination, not exclusion. *See Giuliano v. Sandisk Corp.*, No. C 10-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | Date | June 1, 2023 |
|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 2 of 21 |
|---|---|---|---|

02787 SBA, 2015 WL 10890654, at *11 (N.D. Cal. May 14, 2015) (collecting cases and concluding that "[t]he selection of variables to include in a regression analysis is normally a question that goes to weight of the expert's analysis rather than its admissibility"); *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (under *Daubert*, "[t]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.") (citations omitted).  Accordingly, the Court declines to exclude Dr. McCrary's opinion on relevance grounds.[1]

Nor are Plaintiffs' reliability arguments persuasive.  Plaintiffs do not dispute that a regression analysis is an appropriate method for testing Dr. Johnson's conclusions.  But Plaintiffs contend that certain variables should not have been included because they are "tainted" or "flawed."  For example, Plaintiffs' expert, Dr. Johnson, previously testified that controlling for "tenure" at Cognizant could be an unreliable variable, because any discrimination in terminations would "taint" that variable.  Johnson Depo. 160:11-18 [Doc. # 440-3].[2]  Even if the "taint" might reduce the probative value of that variable, it does not require exclusion of Dr. McCrary's opinion.

Likewise, Dr. McCrary purports to have used "education" as a proxy for performance.  But, as Plaintiffs explain, Dr. McCrary only had education data for approximately 26% of the employees in the group.  In the absence of actual data about most employees' educational achievement, he used a proxy to supplement the data—but only for H-1B visa holders, for whom Dr. McCrary assumed at least a college degree.  For the remaining employees, he used a missing-indicator variable to indicate the absence of data.  The fact that Dr. McCrary used a missing-indicator variable for only some of the employees for whom data was missing, and supplemented as to others, appears to distinguish this case from *Chen-Oster v. Goldman, Sachs & Co.*, No. 10CIV6950ATRWL, 2022 WL 814074, at *12 (S.D.N.Y. Mar. 17, 2022), *on reconsideration in part*, No. 10CIV6950ATRWL, 2022 WL 3586460 (S.D.N.Y. Aug. 22, 2022).  In that case, the district court approved of use a missing-indicator variable, but it does not appear that the expert *combined* the use of such a variable with the use of a proxy for a different variable.  In this case, Plaintiffs correctly criticize the use of a missing-indicator variable because it is not random, but is closely associated with non-visa-holding status.  Still, because the H-1B program does generally require that visa applicants hold a college degree or possess commensurate experience, Dr.

---

[1] The Court did not find at class certification that "minimum qualifications are not relevant," nor that performance would be irrelevant.  The Court's finding that a bench terminations class was manageable partly because it avoided potential issues around *basic* qualifications for employment at Cognizant and *basic* levels of performance does not mean that some other measure of performance or qualifications could not explain the disparities identified by Plaintiffs' expert.

[2] For the reasons set forth with respect to Cognizant's motion to strike Dr. Johnson's supplemental reports, the Court declines to strike those reports, and therefore considers Dr. Johnson's opinions contained therein in ruling on this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | | Date | June 1, 2023 |
|---|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | | Page | 3 of 21 |
|---|---|---|---|---|

McCrary's selection of a proxy is plausible. Accordingly, the Court declines to exclude Dr. McCrary's opinion on this basis.

Plaintiffs also critique Dr. McCrary's use of a business unit control (and inclusion of Global Corporate Resources Pool, which is the bench, as a business unit) and location control on the basis that he failed to adequately explain why he used those variables, rendering the analysis unreliable. Plaintiffs also critique the analysis for incorporating variables (including job code and location) that actually have no effect on the analysis, or impact the analysis in unexpected ways (such as willingness to travel or relocate). For the reasons already stated, these are proper subjects for cross-examination or the presentation of contrary evidence, not exclusion.

Finally, Plaintiffs critique Dr. McCrary for explaining the remaining disparities by pointing to potential unquantifiable differences in performance between immigrants and non-visa-holding individuals. *See* McCrary Decl. ¶ 91. But Dr. McCrary performs an additional analysis comparing bench termination rates between visa-holding South Asian employees and non-visa-holding South Asian employees to explain the remaining disparities. This analysis is not unreasonable, and the Court declines to exclude the opinion on that basis.

Accordingly, Plaintiffs' MIL No. 1 is **DENIED**.

## II.
## PLAINTIFFS' MIL NO. 2

By their MIL No. 2, Plaintiffs seek to overrule Cognizant's authentication and foundation objections to 300 exhibits Cognizant produced in discovery. [Doc. # 441.] Cognizant filed an opposition, in which it argues that Plaintiffs' MIL is an improper blanket motion. [Doc. # 504.]

Plaintiffs' MIL No. 2 is an improper blanket motion, and is **DENIED**. Still, because the Court potentially must rule on hundreds of those objections at trial, the Court sets forth the following guidelines to help the parties navigate the admission of these documents at trial.

Cognizant does not dispute that it produced all the documents at issue in discovery. It explains that it objected to evidence "where a document was not authored or otherwise connected to any witness on the parties' joint witness list, because it is entirely unclear how Plaintiffs could establish sufficient foundation to present these exhibits to the jury at trial"; (2) "emails or draft presentations that were not introduced in any deposition and that reflect data or data analysis for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | | Date | June 1, 2023 |
|---|---|---|---|---|
| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | | Page | 4 of 21 |

which no source is identified"; and (3) "documents that were introduced in depositions but that Plaintiffs failed to authenticate and/or about which the deponents had no personal knowledge."

The Court's Scheduling and Case Management Order ("CMO") provides that "[t]he parties shall stipulate to the authenticity and foundation of exhibits *whenever possible*, and the pretrial exhibit stipulation shall identify any exhibits to which authenticity and/or foundation has not been stipulated *and the specific reasons for the parties' failure to stipulate*." CMO at 5 (emphasis added) [Doc. # 75]. In other words, the CMO makes clear that the *default* should be that the parties will have stipulated to authenticity and foundation to streamline trial testimony.

The Court intends to set strict time limits for the trial of this action. To the extent that Cognizant intends to stand on all of its authenticity or foundation objections, the Court's will charge Cognizant for the trial time spent calling witnesses to authenticate or lay a foundation for documents as to which the Court concludes that Cognizant lacks a legitimate authenticity or foundation objection. To the extent Plaintiffs are required, for example, to call a Cognizant witness to establish that a document was produced by Cognizant during discovery and therefore is authenticated, or if a document is clearly a business record, that time will be charged to Cognizant. On the other hand, if Cognizant raises, for example, a colorable hearsay objection to Plaintiffs' use of a given document, any time spent establishing an applicable exception will be charged to Plaintiffs.

**III.**
**PLAINTIFFS' MIL NO. 3**

In MIL No. 3, Plaintiffs seek to exclude evidence regarding Plaintiff Jean-Claude Franchitti's 2003 lawsuit against his former employer, Bloomberg, L.P., for national origin discrimination and retaliation under Title VII of the Civil Rights Act. [Doc. ## 442 (MIL), 481 (opposition).] At trial in the *Bloomberg* matter, after Franchitti's case concluded, the court issued a strongly-worded ruling dismissing Franchitti's claims under Federal Rule of Civil Procedure 52(c), based on the court's conclusion that Franchitti had repeatedly and intentionally lied during trial. *See Franchitti v. Bloomberg, L.P.*, 411 F. Supp. 2d 466, 467 (S.D.N.Y. 2006) (denying Bloomberg's motion for attorney's fees but quoting credibility findings). At trial, Cognizant seeks to question Franchitti about the lawsuit generally and this finding specifically, and to introduce both the credibility finding and Franchitti's complaint. *See* Opp. at 3. Plaintiffs seek to exclude this evidence under Federal Rules of Evidence 403, 404, 608(b), and 802.

The credibility finding is hearsay not subject to any exception. Prior judgments and "judicial findings of facts are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists." *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007). Cognizant suggests that either the public records exception or the residual exception "may" apply.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | Date | June 1, 2023 |
|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 5 of 21 |
|---|---|---|---|

Neither does. The Ninth Circuit has held that the public records exception does not apply to permit such use in criminal cases, *see id*. at 1037 n.16, and other circuits and district courts in this circuit have concluded that the exception does not apply in civil cases. *See Cardinal v. Buchnoff*, No. 06CV0072-MMA BLM, 2010 WL 3339509, at *2 (S.D. Cal. Aug. 23, 2010) (collecting cases). Cognizant does not explain how the residual exception could apply, but invites the Court to defer ruling on this question until trial. The Court declines to do so, and concludes that the rule against hearsay makes the credibility finding inadmissible.

Moreover, in *Sine*, the Ninth Circuit concluded that another judge's findings that the defendant had been untruthful in another lawsuit were inadmissible under Rule 403 because "the nature of the facts found and comments made by [the other judge]—directly opining on [the defendant's] motivations and truthfulness, thereby implicating [the defendant's] overall credibility as a witness—heavily weigh[ed] on the unfair prejudice side of the balance." 493 F.3d at 1034. This Court intends to exclude the prior finding on Rule 403 grounds, lest the matter devolve into a mini trial as to what happened in a wholly different lawsuit against a different defendant.

Cognizant focuses its arguments on the credibility finding, and not the existence of the other lawsuit. The mere existence of a similar lawsuit, however, is not particularly probative of anything except perhaps Franchitti's litigiousness. The Court therefore excludes it.

Accordingly, Plaintiffs' MIL No. 3 is **GRANTED**.

## IV.
## PLAINTIFFS' MIL NO. 4

Plaintiffs' MIL No. 4 seeks to overrule Cognizant's Rule 602 and 701 objections to more than 350 documents created by Cognizant employees and produced in the course of discovery in this action. [Doc. # 443.] Cognizant filed an opposition, in which it objects that Plaintiffs' MIL No 4 is an improper blanket MIL. [Doc. # 503.]

Plaintiffs represent that the documents at issue are "intracompany emails, presentations, and other Cognizant records/documents." MIL No. 4 at 6. The Court cannot rule on the admissibility of the documents in a vacuum, and therefore the MIL is **DENIED** without prejudice. As with Plaintiffs' MIL No. 2, the Court urges Cognizant to stipulate to the authenticity and admissibility of exhibits in good faith where possible. The Court will charge time spent establishing the applicability of Rule 801(d)(2)(D) against Cognizant's allotted time if Cognizant's objection appears to the Court to lack a good-faith basis and wastes time, such as by requiring Plaintiffs to call Cognizant's custodian of records to testify as to the authenticity and non-hearsay nature of documents it produced.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | Date | June 1, 2023 |
|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 6 of 21 |
|---|---|---|---|

## V.
## COGNIZANT'S MIL NO. 1

Cognizant's MIL No. 1 seeks to exclude evidence of the U.S. Equal Employment Opportunity Commission's ("EEOC") Letters of Determination ("LODs") regarding allegations of discrimination lodged against Cognizant. [Doc. # 450.] Plaintiffs oppose. [Doc. ## 487, 486 (under seal).]

An EEOC probable cause determination is *per se* admissible in the Ninth Circuit, but admission of an EEOC "decision and order" is within the trial court's discretion. *See Amantea-Cabrera v. Potter*, 279 F.3d 746, 749 (9th Cir. 2002) (explaining that a conclusive determination of a violation is more likely than a probable cause determination to prejudice a jury). The parties agree that the LODs at issue here fit into the "letter of violation" category. Cognizant argues that they should be excluded under Rules 403, 1002, 802, 701, and 408.

An EEOC determination is probative of an individual's discrimination complaint. *See Plummer v. W. Int'l Hotels Co.*, 656 F.2d 502, 505 (9th Cir. 1981) (collecting cases and holding EEOC probable cause determinations are *per se* admissible). Still, it also presents a risk of prejudice, because a jury may find it difficult to independently evaluate the evidence. *See Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1500 (9th Cir. 1986) ("The probative value of a letter of violation may not, in every case, outweigh the potential for prejudice."). This is particularly true where the letters of violation, like these LODs, contain primarily legal conclusions, without a detailed description of the agency's process or the evidence on which the agency relied. *See, e.g.*, *Robin v. City of Monrovia*, No. CV 09-6235 PJW, 2010 WL 11506880m at *2 (C.D. Cal. Dec. 3, 2010) (reluctantly admitting a reasonable cause determination in light of *Plummer's* holding that they are *per se* admissible, but reasoning that the conclusory letter had little probative value because it did not explain the process of the investigation or the evidence on which it relied, and there was a substantial risk the jury would put too much emphasis on it).

In this case, the Court finds that the risk of prejudice outweighs the limited probative value of the letters' conclusion that there has been a *violation* of the statute. The letters contain a description of each charge, a description of Cognizant's response to the charge, and a description of the evidence on which the agency relied in finding reasonable cause to conclude that Cognizant engaged in discriminatory behavior. *See, e.g.*, Maryott Decl., Ex. A [Doc. # 450-2 at 2-3]. The letters proceed to state that "based on the above, the Commission has determined that there is a violation of the statute." *Id.* at 2; *see also id.* at 5, 7, 9, 11. While the letters provide an explanation for the reasonable cause finding, they do not explain how the agency progressed from finding reasonable cause to finding a violation. This creates a risk of unfair prejudice and confusion. Even with the limiting instruction proposed by Cognizant, which is nearly identical to that given in *Gilchrist*, jurors may be uncertain how much weight to give the agency's finding of a violation,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | Date | June 1, 2023 |
|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 7 of 21 |
|---|---|---|---|

given the dearth of reasoning in support of that finding. Moreover, the fact that the agency has unequivocally found a violation may unduly influence the jury. *See Amantea-Cabrera*, 279 F.3d at 749.

At the same time, the Court is mindful of *Plummer*'s holding that reasonable cause findings are *per se* admissible, and of *Plummer*'s admonition that "[a] civil rights plaintiff has a difficult burden of proof, and should not be deprived of what may be persuasive evidence." 656 F.2d at 505. Accordingly, the Court will admit the letters, except that the two sentences finding a *violation* of the statute, rather than merely reasonable cause, must be redacted. *Accord Crawford v. Hosp. Enterprises, Inc.*, No. CIV.A. 01-2323, 2002 WL 1905883, at *6 (E.D. La. Aug. 16, 2002) (admitting letters of violation but requiring redaction of sentence stating that a violation has occurred); *Senecal v. B.G. Lenders Serv., LLC*, No. 1:12-CV-0487 (MAD), 2015 WL 13650048, at *2 n.2 (N.D.N.Y. Feb. 9, 2015) (noting that redaction of "categorical legal conclusions" could cure prejudice from EEOC letter).

Any prejudice also can be addressed through a limiting instruction explaining the nature of the EEOC's reasonable cause determination and that the jury, not the EEOC, is solely responsible for determining whether a violation of Title VII or Section 1981 has occurred in this case. *See Gilchrist*, 803 F.2d at 1500–01 (providing a similar instruction rendered admission of letter of determination without performing Rule 403 analysis harmless error).

Cognizant's remaining arguments do not persuade the Court that the reasonable cause determinations should be excluded. The EEOC's references to the agency's reliance on "data" and "statistics" in forming their reasonable cause conclusion do not violate the best evidence rule, because they are not offered to prove the content of the data. *See* Fed. R. Evid. 1002. The statements of the charging parties contained in the letters, describing the charges, are not hearsay, because they are not offered for their truth. Rather, they are offered merely to show what the charges were and to provide context for the EEOC's reasonable cause determination.[3]  The statements in the LODs that the charging parties believe they were subject to discrimination are not "testimony," but even if they were, the basis for those opinions is explained in the LODs. *See* Fed. R. Evid. 701. Finally, the mere invitation to participate in "conciliation" is not evidence that Cognizant settled with the EEOC. *Cf.* Fed. R. Evid. 408. Plaintiffs will not argue that Cognizant

---

[3] The letters themselves are admissible as public records. *See* Fed. R. Evid. 803(8); *Crenshaw v. Sun Microsystems, Inc.*, No. C-05-02387 RMW, 2007 WL 1174844, at *2 (N.D. Cal. Apr. 19, 2007) (reaching same conclusion).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | | Date | June 1, 2023 |
|---|---|---|---|---|
| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | | Page | 8 of 21 |

settled with the EEOC.  *See* Opp. at 25.  Those sentences in the letters do not raise a risk of presenting evidence of a settlement.

Accordingly, Cognizant's MIL No. 1 is **GRANTED in part** and **DENIED in part**.  The Court will admit the EEOC letters, except that the two sentences finding a violation of the statute must be redacted.

## VI.
## COGNIZANT'S MIL NO. 2

By its MIL No. 2, Cognizant seeks to exclude evidence of alleged "visa fraud" or "misuse" of the visa process, including references to a False Claims Act lawsuit filed by Franchitti raising those allegations.  [Doc. # 454.]  Plaintiffs filed an opposition in which they agree not to refer to Franchitti's lawsuit, but oppose Cognizant's request to exclude all the evidence potentially covered by Cognizant's motion.  [Doc. ## 495, 494 (under seal).]

As a general matter, the issue in this case is not whether Cognizant has violated the Immigration and Nationality Act ("INA")—or any statute other than Title VII and section 1981— or otherwise defrauded the United States government.  Arguments that Cognizant violated other statutes likely will be excludable on Rule 403 grounds.

Cognizant's MIL is vague, however, as to the specific evidence it seeks to exclude.  This is a problem because Cognizant's visa application policies are the very policies that Plaintiffs say effectuated employment discrimination.  Plaintiffs' Opposition capably explains how evidence of another alleged bad act may, therefore, be relevant to prove the claims at issue in this case. Evidence tending to show Cognizant "underpays" its visa-holding employees could be relevant to explain, for example, Cognizant's motive or plan to institute the allegedly discriminatory policies at issue here.  *See* Fed. R. Evid. 404(b)(b)(2).  For this reason, the Court cannot evaluate whether a specific piece of evidence should be excluded under Rule 403 without referring to the specific evidence.

The Court therefore **DENIES** Cognizant's MIL, without prejudice to raising its objections with respect to specific evidence at trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | Date | June 1, 2023 |
|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 9 of 21 |
|---|---|---|---|

## VII.
## COGNIZANT'S MIL NO. 3

In its MIL No. 3, Cognizant seeks to exclude evidence of Cognizant's separate lawsuit against named Plaintiffs Vartan Piroumian, Franchitti, and the late Edward Cox.[4]  [Doc. # 464.] Plaintiffs oppose.  [Doc. # 502.]

On July 23, 2021, Cognizant filed an action in New Jersey state court, alleging Piroumian, Franchitti, and Edward Cox violated the terms of non-disclosure agreements ("NDAs") they signed during their employment with Cognizant by failing to return documents at the end of their employment.  *See generally* Compl., *Cognizant Tech. Sols. Corp. v. Franchitti*, Civil Action No. 21-16937 (PGS) (RLS) (D.N.J.) [Doc. # 1].  After Edward Cox died, Cognizant sought to substitute his wife, Ann Cox, as a defendant.  After she, too, passed away, Brian Cox was substituted as a defendant, and Cognizant stipulated to dismiss its claims in return for Brian Cox's agreement to destroy the documents that were wrongfully retained.  In its lawsuit, Cognizant seeks the return of all salary earned by those Plaintiffs during their time at Cognizant.  *Franchitti* Compl. at 15. Cognizant has represented in the other action that it has never before sued an employee for retaining Cognizant assets or confidential documents.  *See Cognizant Tech. Sols. Corp. v. Franchitti*, Civil Action No. 21-16937 (PGS) (RLS) (D.N.J.) [Doc. # 48 at 29].

Plaintiffs seek to introduce evidence regarding that lawsuit.  They also seek to introduce an email from Cognizant's counsel, sent during discovery in this case, stating that Cognizant did not have two former employees' laptops because they had not been returned after the other employees left Cognizant.  *See* Maryott Decl., Ex. H [Doc. # 464-9].[5]  Cognizant apparently did not file a separate suit against those individuals who are non-plaintiffs, and Plaintiffs therefore seek to offer the letter to show that Cognizant's lawsuit against Plaintiffs was not routine, but was retaliatory.

Cognizant argues that evidence of this lawsuit, and evidence that Cognizant did *not* sue other former employees who retained information in violation of their NDAs, is irrelevant and unfairly prejudicial.  Cognizant's lawsuit against Plaintiffs is not, however, an "unrelated" lawsuit—the parties are largely the same, and that lawsuit arose out of information obtained in this lawsuit.  And it is relevant, at least, to Plaintiffs' request for punitive damages.  Nor is the lawsuit

---

[4] Cox's son, Brian Cox, has been substituted as a named Plaintiff in this action.  Brian Cox and Piroumian are the Class Representatives.

[5] Plaintiffs had sought discovery in the possession of those employees, which Cognizant was unable to produce because it did not have their laptops.  Cognizant also objects that Plaintiffs seek to improperly introduce evidence regarding prior discovery disputes.  The email does not indicate to an outside observer that the parties disagreed about the scope of discovery, so presents little risk of prejudice to Cognizant on that issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | | Date | June 1, 2023 |
|---|---|---|---|---|
| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | | Page | 10 of 21 |

against Plaintiffs impermissible evidence of other bad acts, because it does not show that, on a prior occasion, Cognizant acted in a discriminatory manner. Rather, it is offered to show that Cognizant went to apparently extraordinary lengths to avoid or punish Plaintiffs for their claims. Attempts to intimidate parties or witnesses may bear on credibility. *See, e.g.*, *Petrosyan v. Hustedt*, No. CV 14-4145 DMG (JCX), 2015 WL 13917735, at *2 (C.D. Cal. Sept. 24, 2015) (admitting evidence that certain plaintiffs made threats relating to their membership in a gang because witness intimidation is probative of credibility); *Hickey v. Myers*, No. 09-CV-01307 MAD/DEP, 2013 WL 2418252, at *5 (N.D.N.Y. June 3, 2013) (evidence that plaintiff threatened to sue defendant and others admissible to show effort "to intimidate others" and as an acknowledgment that he was not adequately fulfilling his duties); *cf. Moore v. Principi*, No. 00 C 2975, 2002 WL 31767802, at *6 (N.D. Ill. Dec. 10, 2002) (evidence of the plaintiff's threat to sue an unrelated moving company was "too collateral to be probative of [his] credibility" in a Title VII suit against his former employer, the Department of Veterans Affairs).

For these reasons, Cognizant's MIL No. 3 is **DENIED**.

## VIII.
## COGNIZANT'S MIL NO. 4

Cognizant's MIL No. 4 seeks to exclude statements by Abigail Israel, its former Senior Director of EEO Compliance, in emails and chat messages, as well as her deposition testimony regarding the same. [Doc. ## 453, 506 (under seal).] Cognizant objects to all of Ms. Israel's statements on the basis that they are hearsay not subject to any exception, and raise other objections as well. *See id.*, Appendix (identifying specific statements and objections thereto). Plaintiffs counter that Ms. Israel's statements constitute Cognizant's admissions. [*See* Doc. # 491.]

Federal Rule of Evidence 801(d)(2)(D) provides that a statement is not hearsay if the statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019) (quoting Fed. R. Evid. 801(d)(2)(D)). "The Rule sets forth three elements necessary for admitting a statement that would otherwise be excluded as hearsay: (1) the statement must be made by an agent or employee of the party against whom the statement is being offered; (2) the statement must concern a matter within the scope of that employment relationship; and (3) the statement must be made while the declarant is yet employed by the party." *Id.* Such a statement "need only concern matters within the scope of the agency"; it is not necessary that the statement "be made within the scope of the agency." *Id.* Here, the parties agree that Ms. Israel was a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | | Date | June 1, 2023 |
|---|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | | Page | 11 of 21 |
|---|---|---|---|---|

Cognizant employee at the time the statements at issue were made, but dispute whether the statements "concern[ed] a matter within the scope of" her employment with Cognizant.

As Senior Director of EEO Compliance, Ms. Israel's responsibilities included "manag[ing] Department of Labor regulations for Cognizant U.S." Maryott Decl., Ex. A. (Israel Depo.) at 16:9–18 [Doc. # 453-2].[6] This included overseeing Cognizant's affirmative action program, *see id.* at 16:22–23, 20:20–23, including performing statistical analyses of Cognizant's workforce to identify underrepresented groups and propose "placement goals" for use in hiring and promotions, *id.* at 21:14–22. Later in her tenure, Ms. Israel became Senior Director of Global Risk, where her work also included COVID-19 policies and "work[ing] on a few *ad hoc* type of projects like making sure [a] background check process was complete." *Id.* at 14:2–9; *see also id.* at 13:18–14:9 [Doc. # 491-2]. Her work also involved pay equity analysis. *See id.* at 101:22–103:2 (Cognizant's counsel asserting privilege over question regarding results of pay equity analysis), 113:11–18.

**Exhibit 247.** In a March 30, 2020 chat, Ms. Israel tells a colleague in recruiting, Alex Brensike, that she is "trying to figure out why folks from India hired in the U.S come in so low compared to Whites etc" with regard to employee compensation. She says she is "[looking at the] last 5 years really.. it's kind of a mess. There is a lean towards Asian (india) folks making less on avg for tech roles." After some discussion regarding why this might be true, Mr. Brensike says that it is "an open secret: we hired H1s for the longest because they were cheaper labor that would relocate anywhere and everywhere and as often as needed . . . this has been our core biz model." Ms. Israel responds, "see...that's race discrimination" and "Cognizant is going to pay dearly one day." [Doc. # 506-2 (under seal).]

Mr. Brensike worked in recruiting at Cognizant. [*See* Doc. # 453-2 at 18:6–11.] These statements were made in a conversation between Mr. Brensike and Ms. Israel, in which Ms. Israel specifically expressed that she was trying to understand the source of a pay disparity she had identified. The statements by Mr. Brensike to which Cognizant objects were all made to explain the disparities to Ms. Israel. The fact that Mr. Brensike's statements would not necessarily have been sanctioned by Cognizant does not make them a matter outside the scope of his employment. *Accord Weil*, 922 F.3d at 998 (statement made by participant in hiring process to rejected applicant that the applicant's race and gender were "against [him]," made after hiring process was over and after speaker had taken on a new role within the company, were admissions of the company); *cf. Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950 (7th Cir. 1998) (complaints about discriminatory managerial decisions made by the *subjects* of those decisions, rather than by the decisionmakers, were outside the scope of their employment with the company). Moreover, Mr. Brensike's

---

[6] Because both parties have submitted different portions of the Israel deposition for the Court's review, the Court cites to the original page numbers herein, rather than the page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | Date | June 1, 2023 |
|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 12 of 21 |
|---|---|---|---|

statements are probative of an internal understanding at Cognizant that this was the reason for Cognizant's hiring of H-1B visa holders.  The Court concludes that the statements of Ms. Israel and Mr. Brensike are admissions and are admissible under Rule 801(d)(2)(D).[7]

Ms. Israel's statements that the "comp grids" show employees of Indian national origin being paid less than white employees do not violate the best evidence rule.  Plaintiffs are correct that the originals of the "comp grids" are within Cognizant's control or, if they have been lost or destroyed, are not subject to the best evidence rule.  *See* Fed. R. Evid. 1004.

Finally, the fact that Ms. Israel was responsible for administering affirmative action policies at Cognizant does not render her statements *unfairly* prejudicial.  The basis for that opinion will be subject to cross-examination.  Her statement is relevant because it supports her testimony elsewhere that she raised issues regarding pay disparities to Cognizant leadership.

Accordingly, the Court **DENIES** Cognizant's MIL as to Exhibit 247.

**Exhibit 257.**  In a February 6, 2020 chat, Ms. Israel criticizes Cognizant leadership to Alisha Johnson, one of her direct reports.  Ms. Israel describes leadership as "not goal oriented and they lack accountability" and says she heard Hector Garcia (Ms. Israel's supervisor) didn't want to hire her because she was "too goal oriented."  Ms. Johnson says she "ha[s] heard from others that [lower level managers have] been thrown under the bus by people they trusted and that for a while it was getting really ugly in upper leadership."  [Doc. # 453-5.]

Plaintiffs characterize the statements to which Cognizant objects as describing Cognizant leadership' lack of interest in making changes to implement state diversity goals.  *See* Opp. at 16.  The context of the above-described exchange is unclear.  Accordingly, the Court **DEFERS** ruling on this statement until trial.  If Plaintiffs can establish that was, in fact, the context of the conversation, then it concerns a matter within the scope of Ms. Israel's and Ms. Johnson's

---

[7] Cognizant argued at the hearing that Ms. Israel's statement about race discrimination should be excluded because it is a legal conclusion.  *See* Fed. R. Evid. 701.  But because the Court concludes they are Cognizant's own statements, Rule 701 does not apply.  *See Jordan v. Binns*, 712 F.3d 1123, 1128 (7th Cir. 2013) ("Because trustworthiness is not the touchstone for admissibility of party admissions, they are not subject to the personal-knowledge requirement of FRE 602 . . . or the restrictions of the opinion rule of FRE 701 . . . .") (citations omitted); *see also* Advisory Committee Notes to Fed. R. Evid. 801 ("The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | | Date | June 1, 2023 |
|---|---|---|---|---|
| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | | Page | 13 of 21 |

employment and is not hearsay. But without establishing that context, the relevance of this conversation is not clear.

**Exhibit 258.** In a February 21, 2020 chat with Aliya McLendon Horne, to explain why "people" are not "successful," Ms. Israel said "because of the culture here . . . EAS & CIS is 99% India." Ms. Horne responded "yep – they have to be forced to work with not like people." [Doc. # 453-6.] Although ambiguous, Ms. Horne apparently means that Cognizant employees "have to be forced to work with" people of a different race or cultural background.

While it appears that Ms. Horne is a Cognizant employee, it is not clear what the scope of her job duties were.[8] Accordingly, the Court cannot say that her statements are within the scope of her employment and, on that basis, excludes her statement. Ms. Israel's statements are an admission and are admissible. The Court therefore **GRANTS in part** and **DENIES in part** the MIL as to Exhibit 258.

**Exhibit 241.** In an April 11, 2019 email, Ms. Israel relays policy changes regarding sharing affirmative action placement results and explains that "[t]his is mostly because HR Leads don't believe in affirmative action. . . . Basically we are creating [affirmative action] plans for zero reason if this is our long-term strategy." Manoj Tiwari, who is not a Cognizant employee, responds: "Just between you and I, I don't believe Cognizant is creating AAPs for any purpose other than to meet requirements of Prime Contractors they work with on government contracts or otherwise. I don't think affirmative action is something they care for or believe in." [Doc. # 453-7.]

The statement by Ms. Israel to which Cognizant objects was made in the course of an email conversation with peers from other firms regarding how those firms shared data regarding affirmative action placements. *See* Israel Depo. at 55:13-20. Although Cognizant argued at the hearing that Ms. Israel testified at her deposition she did not send that email (or others in the same email chain) "as part of [her] job duties," *id*. at 55:25-56:1-9, she testified that she sent them in order to crowdsource "suggestions, helpful tips to navigate the situation." *Id*. at 56:20-22. The email concerned matters within the scope of her employment, and is not hearsay. To the extent Cognizant considers her statement inaccurate, that is a basis for cross-examination or the

---

[8] Plaintiffs' citation to a screenshot of her LinkedIn page is insufficient to establish a foundation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | | Date | June 1, 2023 |
|---|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 14 of 21 |
|---|---|---|---|

presentation of contrary evidence, not exclusion.  Finally, its probative value is not substantially outweighed by the risk of unfair prejudice.

Because Mr. Tiwari is not a Cognizant employee, his statements are hearsay.  The Court therefore **DENIES** the MIL as to Ms. Israel's email statement, but **GRANTS** it as to Mr. Tiwari's reply.

**Exhibit 243.**  In an April 17, 2019 email, Ms. Israel says she "fear[s]" a potential change in Cognizant policy "is just a way for non-affirmative action believers to hide DOL regs under a rug."  [Doc. # 453-8.]

The April 17, 2019 email is part of the same broader conversation as Exhibit 241.  For the reasons stated with respect to Exhibit 241, the Court **DENIES** the MIL as to Exhibit 243.

**Exhibit 246.**  In an April 17, 2019 email, Ms. Israel says Cognizant's "federal spend is low and we have not been a target of the OFCCO to date.  Which is making folks around here way to [sic] comfortable – caring less and less about AA regulations."  On April 18, 2019, in the same email chain, she says "many [leaders at Cognizant] do not believe in affirmative action."  On April 19, 2019, Ms. Israel says that because "Cognizant is a subcontractor . . . mostly a sub of a sub at this point," "they really don't give two @#*!" about affirmative action.  [Doc. # 453-9.]

The MIL is **DENIED** as to Exhibit 246 for the same reasons as apply to Exhibits 241 and 243.

**Exhibit 255.**  In an April 24, 2020 email, Ms. Israel says to a colleague that "no one mentioned [an AA/EEO Advisory Committee] to me when I started."  The colleague, Maureen Greene James, replies:  "That's because it was probably useless (just look at some of the members) and they knew YOU would come in and actually hold them accountable.  It only existed so that they could say they had one."  Ms. Israel replies:  "Absolutely useless – check the box activity, plus CTS thought they would receive a DOL audit."  [Doc. # 453-10.]

Ms. James was a senior director at Cognizant with responsibilities for organizational development and diversity, equity, and inclusion efforts.  *See* MIL at 11 n.4.  Accordingly, the existence of an affirmative action committee appears to relate to a matter within the scope of both

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | | Date | June 1, 2023 |
|---|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | | Page | 15 of 21 |
|---|---|---|---|---|

her and Ms. Israel's employment.  The MIL is **DENIED** as to Exhibit 246 for the same reasons as apply to Exhibits 241 and 243.

## IX.
## COGNIZANT'S MIL NO. 5

By its MIL No. 5, Cognizant seeks to exclude evidence of other complaints of discrimination Cognizant received, as well as additional EEOC charges.  [Doc. # 472.]  Cognizant argues that these documents violate Rules 802, 701, 403, and in some cases 805.  Plaintiffs oppose, although they do not seek to introduce the complaints and charges themselves, only the number of complaints and the dates on which they were filed.  [Doc. # 482.]

Plaintiffs seek to use these documents only to show that complaints about a particular subject were made, not for the truth of the statements contained therein.  The documents are therefore not hearsay.  *See United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) ("[O]ut-of-court statements that are offered as evidence of legally operative verbal conduct are not hearsay.").  Nor would they be inadmissible under Rule 701, since they are not offered as opinion testimony.  Assuming Plaintiffs can lay an adequate foundation for Cognizant's maintenance of these complaints as business records (all of which were apparently produced by Cognizant in discovery), the complaints themselves do not appear to be inadmissible.  Still, without the complaints themselves, the Court cannot evaluate whether they might contain hearsay within hearsay.  And Plaintiffs' characterization of these documents could be unduly prejudicial, and violate the best evidence rule.

Accordingly, the Court **GRANTS in part** and **DENIES in part** Cognizant's MIL No. 5.  Plaintiffs may not simply summarize the complaints and EEOC charges as "complaints" or "charges" and enumerate them.  But because the existence of the complaints and EEOC charges themselves appear to be admissible for the purposes for which Plaintiffs seek to use them, Plaintiffs may introduce the complaints and charges themselves, subject to laying an adequate foundation regarding Cognizant's maintenance of the complaints in the course of doing business.  If the parties wish to streamline trial testimony, they may, in the alternative, agree on an appropriate stipulation regarding the number and nature of such complaints in advance of trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | Date | June 1, 2023 |
|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 16 of 21 |
|---|---|---|---|

## X.
## COGNIZANT'S MIL NO. 6

In MIL No. 6, Cognizant seeks to exclude evidence of its finances and wealth. [Doc. # 473]. Plaintiffs oppose. [Doc. ## 484, 483 (under seal).]

Cognizant argues that evidence of its "revenues, profits, and assets" is irrelevant to this action. Cognizant is correct that such evidence would not be relevant to liability for punitive damages. *See Sturm v. Davlyn Invs., Inc.*, No. CV 12-7305-DMG (AGRs), 2013 WL 8604661, at *6 (C.D. Cal. Nov. 6, 2013) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 539 (1999)). But Plaintiffs correctly argue that the effect on Cognizant's profit margins of the policies at issue here would be relevant. It also appears to be relevant to Plaintiffs' argument that Cognizant's expansion of "local" hiring was allegedly in response to an expansion in Cognizant's business, and not an effort to end its discriminatory policies. Plaintiffs may introduce evidence tending to show that Cognizant's practices impacted its profit margins, as well as of the expansion of Cognizant's business during the Class Period. Plaintiffs should refer to percentage increases, however, and not to gross or net profits.

On the other hand, evidence of Cognizant's wealth is only tangentially related to whether it had "the financial means to address [the] racial disparities caused by its policies and practices." Opp. at 10. Using evidence of Cognizant's finances for this purpose would improperly suggest that Cognizant's wealth gave it a heightened obligation to comply with the law. Plaintiffs may not use this evidence for that purpose.

The Court therefore **GRANTS in part** and **DENIES in part** Cognizant's MIL No. 6.

## XI.
## DR. JOHNSON *DAUBERT* MOTION

Cognizant moves to exclude the testimony of Dr. Philip Johnson pursuant to *Daubert*. [Doc. # 459.] Plaintiffs oppose. [Doc. # 501.]

The Court previously ruled on a *Daubert* motion regarding the testimony of Dr. Johnson, and Cognizant raises many of the same arguments here. *See* Class Cert. Ord. at 21. Dr. Johnson offers no new opinions. Yet, Cognizant once again argues that Dr. Johnson's opinion is unreliable because he failed to control for relevant variables.[9] The Court has already rejected that contention,

---

[9] In this motion, Cognizant characterizes the argument in terms of Dr. Johnson's failure to choose a relevant "benchmark" for comparison, on the basis that the Court's previous ruling on whether Dr. Johnson chose a relevant benchmark applied only to his opinion regarding hiring discrimination, and not bench discrimination. But Cognizant's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | Date | June 1, 2023 |
|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 17 of 21 |
|---|---|---|---|

and declines to take it up again here. Because it is possible that bench terminations are "a function of a variety of things," Cognizant will be allowed to introduce contrary evidence, in the form of Dr. McCrary's regression analysis, to show that other factors explain the disparity. Moreover, Dr. Johnson's supplemental report, at the very least, addresses potentially nondiscriminatory explanations for the disparities he identifies.[10]

Cognizant also argues—again—that Dr. Johnson's opinion is unhelpful because he fails to offer an opinion on causation, while arguing elsewhere in the brief that Dr. Johnson's suggestion that he can think of no non-discriminatory cause is improper. The Court did not find this argument persuasive at class certification, and does not find it persuasive now. Dr. Johnson's report is probative of disparities in bench terminations, and is helpful insofar as it identifies those disparities in a reliable manner. Dr. Johnson need not identify the cause for those disparities for his report to be admissible.

Finally, Cognizant argues that Dr. Johnson's report should be excluded under Rule 403. Dr. Johnson's report is highly probative, and is not unfairly prejudicial. Cognizant's suggestion that the jury might improperly rely on Dr. Johnson's "aura of authority" is precisely why the *Daubert* standard exists.

Cognizant also argues that Dr. Johnson's report improperly concludes that the disparities "likely" persisted after 2020 because he did not have complete data for post-2020. If Cognizant raises this at trial, it will open the door for Plaintiffs to explain that the data deficit was a result of Cognizant's failure to produce the data. This is not a basis to exclude the opinion.

Accordingly, Cognizant's *Daubert* motion as to Dr. Johnson is **DENIED**.

---

argument here—that a regression analysis controlling for different factors would have revealed less stark disparities than does Dr. Johnson's—is a retread of a different argument Cognizant made at class certification. *See* Class Cert. Ord. at 27–28 (rejecting argument that Dr. Johnson failed to control for relevant variables).

[10] Cognizant's citation to *Bickerstaff v. Vassar College*, 196 F. 3d 435 (2d Cir. 1999), to which it also cited at the class certification stage, does not help it. Although the Second Circuit held that the district court in that case did not abuse its discretion by excluding a regression analysis for failing to account for potentially explanatory variables, the facts of that case were different in that the salary system challenged therein relied on three specific variables, and the regression analysis did not attempt to account for two of them. *Id.* at 449. The court in *Bickerstaff* acknowledged that including "less than all the relevant variables" would not justify exclusion. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | | Date | June 1, 2023 |
|---|---|---|---|---|
| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | | Page | 18 of 21 |

## XII.
## DR. HIRA *DAUBERT* MOTION

Cognizant moves to exclude the expert report of Dr. Ronil Hira, pursuant to *Daubert*. [Doc. ## 463, 508 (under seal).] Plaintiffs oppose. [Doc. ## 499, 514 (under seal).]

Cognizant argues that Dr. Hira's report relies on only a few, hand-picked documents to draw conclusions about the motivations behind Cognizant's staffing practices. The Court has previously declined to exclude Dr. Hira's analysis on this basis. *See* Class Cert. Ord. at 33. It is true that an expert "cannot simply rely on cherry-picked facts selected by plaintiffs' counsel in forming his opinions." *See Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 302, 300 (D.D.C. 2018) (excluding testimony based primarily on a *summary* created by plaintiffs' counsel of the defendant's policies, where expert failed to verify those statements by reference to any underlying information). In this case, Dr. Hira relied on a substantial number of relevant Cognizant documents. To the extent Dr. Hira could have consulted different documents to reach a different conclusion, that is a proper basis for cross-examination, not exclusion. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004); *see also In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 931 (N.D. Cal. 2017) (contention that expert relied on too limited a set of documents was proper subject for cross-examination, not exclusion).

Nor are the documents on which Dr. Hira does rely so thin as to justify the exclusion of his opinions. He reasonably relies on Dr. Johnson's analysis of an increase in bench termination rates to opine that they increased. To the extent the causal connection he draws between that increase and the implementation of new Cognizant policies is tenuous, Cognizant may cross examine him about that.

Cognizant's objections to Dr. Hira's statement of the facts of Cognizant's policies is more difficult. It is "inappropriate for experts to become a vehicle for factual narrative." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013). Dr. Hira's recitation of Cognizant's policies is not "data" that requires "synthesis." *Cf. Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016) (expert testimony that "'synthesizes' or 'summarizes' data" is appropriate). Nonetheless, an explanation of the facts as Dr. Hira understands them is necessary for Dr. Hira to provide an opinion that is specific to Cognizant. Moreover, Dr. Hira's explanation of how the implementation of Cognizant's policies might indicate that they were not, in fact, implemented to address a shortage of Computer Systems Analysts is helpful for "drawing inferences that would not be apparent without the benefit of experience or specialized knowledge." *Id.* Finally, the Court disagrees that Dr. Hira improperly provides an opinion about Cognizant's "intent." Rather,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | | Date | June 1, 2023 |
|---|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 19 of 21 |
|---|---|---|---|

Dr. Hira provides context from which the jury could properly make informed inferences about Cognizant's intent or motive. Accordingly, the Court declines to exclude the analysis on that basis.

Cognizant also attacks Dr. Hira's analysis regarding whether there is truly a shortage of STEM workers in the United States to justify Cognizant's visa application practices. Dr. Hira's failure to exclude visa workers from the analysis renders his analysis somewhat more limited, since it masks any shortages that are already being filled by visa workers. Similarly, his partial reliance on the ten-year-old Salzman study to determine whether there is *currently* a shortage of U.S. STEM workers undermines his conclusions. Still, those are not the only authorities on which he relies, and his citations include more recent papers (including his own, from last year). Likewise, although Dr. Hira's uncritical evaluation of wage growth during a period that includes the COVID-19 pandemic may strike jurors as overbroad, it is still relevant to the validity of Cognizant's claims of a STEM-worker shortage in 2022.

Cognizant's objection that Dr. Hira's unemployment and wage analysis focuses too broadly on *all* STEM fields, rather than just the Computer Systems Analysts who make up the core of Cognizant's visa-holding workforce, is misplaced. As Plaintiffs point out, Cognizant *itself* justifies its visa application practices by reference to a generalized shortage of STEM workers. *See* Opp. at 18. Moreover, Dr. Hira's analysis is clear regarding the actual facts he seeks to measure (STEM workers overall) and the basis for comparison (non-STEM professionals). Jurors may consider any perceived lack of specificity in deciding how much weight to give his testimony.

Cognizant argues that Dr. Hira's conclusion that there is no "principled reason" why Cognizant might apply for so many more H-1B visas for Computer Systems Analysts than do many other companies is unsubstantiated. Still, Dr. Hira's proffered explanation—that Cognizant seeks to "minimize H-1B employee pay" and further a "cultural preference" for staffing Indian nationals—is plausibly supported by his arguments about what the evidence does show. Any overbroad pronouncements about what the evidence does or does not show can be attacked on cross-examination. Similarly, although Dr. Hira's conclusion that Cognizant applies for visas for Computer Systems Analysts because their real pay has declined in the last 10 years is stated with more confidence than appears warranted, it is a plausible explanation, and may be considered by the jury.

Finally, Cognizant also argues that Dr. Hira's wage data analysis violates the Court's prior *Daubert* order. Not so. Although Dr. Hira's prior conclusions that Cognizant engages in "wage theft" were unsupported, the conclusion here—that Cognizant hires H-1B visa workers in order to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | Date | June 1, 2023 |
|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 20 of 21 |
|---|---|---|---|

minimize their rate of compensation—does not relate to Cognizant's wage and hour practices, but appropriately speaks to the policies that are at issue in this action.

For these reasons, Cognizant's motion to exclude Dr. Hira's testimony is **DENIED**.

## XIII.
## MOTION TO STRIKE SUPPLEMENTAL EXPERT REPORT

Cognizant also moves to strike the supplemental expert reports of Dr. Johnson pursuant to Rule 37(c). [Doc. # 466.] Plaintiffs oppose. [Doc. # 485.]

At the class certification stage, Plaintiffs disclosed their expert, Dr. Johnson, and produced an expert report regarding his opinions. Kotchen Decl. ¶ 5 [Doc. # 485-1]. Cognizant produced a rebuttal report from Dr. McCrary. *Id.* at ¶ 3. Dr. Johnson provided a responsive report. *Id.* at ¶ 3. On October 25, 2022, the Court approved the parties' joint stipulation to extend the expert discovery cut-off to January 27, 2023. [Doc. # 383.] Two days later, the Court issued its Class Certification Order.

On the initial expert disclosure deadline, Plaintiffs again disclosed Dr. Johnson as an expert and re-produced his earlier reports. Kotchen Decl. ¶ 5. Cognizant did not disclose any expert report until the rebuttal expert disclosure deadline, when it produced a new report from Dr. McCrary, responding to Dr. Johnson's arguments and including a regression analysis that Dr. McCrary says provides a performance-based explanation for the termination disparities identified by Dr. Johnson. *Id.*; *see also* [Doc. # 440-2]. Plaintiffs deposed Dr. McCrary on January 23, 2023. Kotchen Decl. ¶ 7. On January 27, 2023, the last day of expert discovery, Plaintiff produced a supplemental report by Dr. Johnson, in which he responds to Dr. McCrary's criticisms of his analysis. *See id.* at ¶ 8; *see also* [Doc. # 440-4]. On February 15, 2023, Cognizant produced a complete class list for the first time, after the Court ordered it to do so. [Doc. # 430.] On March 14, 2023, Plaintiffs served a second supplemental report from Dr. Johnson based on the class list. Kotchen Decl. ¶ 10.

Cognizant objects that Dr. Johnson's January 27, 2023 "supplemental" report is in fact an improper and untimely rebuttal to Dr. McCrary's rebuttal report, and seeks to strike it pursuant to Federal Rule of Civil Procedure 37(c). Cognizant likewise objects that Dr. Johnson's March 14, 2023 report was untimely, and seeks to strike it.

The Court declines to strike either report because Plaintiffs' late disclosures were both substantially justified. *Cf.* Fed. R. Civ. P. 37(c)(1) (no sanctions if late disclosure was substantially justified or harmless). Cognizant did not provide an "affirmative" expert report from Dr. McCrary. Yet, Cognizant apparently intends to call him to testify in support of affirmative defenses on which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-6848 DMG (PLAx) | Date | June 1, 2023 |
|---|---|---|---|

| Title | *Christy Palmer, et al., v. Cognizant Technology Solutions Corporation, et al.* | Page | 21 of 21 |
|---|---|---|---|

Cognizant bears the burden of proof. *See* Proposed Final Pretrial Conference Order at 9–10 [Doc. # 467-1]. And Dr. McCrary's rebuttal report, produced on January 6, 2023, provides a regression analysis that did not appear in his class certification rebuttal report.

Cognizant is certainly entitled to respond to Plaintiffs' merits arguments with different evidence than it relied on in opposition to class certification. Still, to the extent Cognizant intends to use Dr. McCrary's opinions based on the regression analysis in support of its business necessity defense, Cognizant should have produced that analysis in an initial expert report, to which Plaintiffs would have had an opportunity to respond. But even if it did not, Cognizant should have provided an expert report explaining what opinions Dr. McCrary would provide in support of Cognizant's affirmative defenses. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (duty to disclose witnesses upon whom a party will rely in support of defenses). Since Cognizant did not, Plaintiffs reasonably provided their own rebuttal report to Dr. McCrary's rebuttal.

Dr. Johnson's "supplemental" report, even if more properly characterized as a rebuttal report, was provided before the close of expert discovery, and could not have been disclosed sooner. Under the circumstances, the Court finds that Plaintiffs' late disclosure of Dr. Johnson's "supplemental" report was substantially justified. *See* Fed. R. Civ. P. 37(c). *Accord Int'l Med. Devices, Inc. v. Cornell*, Case No. CV 20-3503-CBM (RAOx), 2022 WL 2784806, at *3 (C.D. Cal. June 16, 2022) (declining to strike supplemental opinions disclosed in response to arguments raised in rebuttal reports).

Dr. Johnson also provided a supplemental expert report after Cognizant produced a class list. Cognizant does not argue that this report is anything more than a supplement to Dr. Johnson's previous opinions. Although the report was submitted after the close of expert discovery, Cognizant has only itself to blame for that. If Cognizant had not refused to provide Plaintiffs with a list of class members until nearly four months after the Court certified a class, Dr. Johnson could have supplemented his analysis before the initial expert report deadline.

For these reasons, Cognizant's motion to strike the supplemental expert reports of Dr. Johnson is **DENIED**.

**IT IS SO ORDERED.**