Daniel Low, SBN 218387
dlow@kotchen.com
Daniel Kotchen (*pro hac vice*)
dkotchen@kotchen.com
Lindsey Grunert (*pro hac vice*)
lgrunert@kotchen.com
Mark Hammervold
mhammervold@kotchen.com (*pro hac vice*)
**KOTCHEN & LOW LLP**
1918 New Hampshire Ave. NW
Washington, DC 20009
Telephone: (202) 471-1995
Fax: (202) 280-1128

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CHRISTY PALMER, VARTAN PIROUMIAN, BRIAN COX, and JEAN-CLAUDE FRANCHITTI,<br><br>Plaintiffs,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION,<br><br>Defendants. | CASE NO. 17-CV-6848 DMG (GJSx)<br><br>**DECLARATION OF DANIEL LOW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF INTERIM FEES AND EXPENSES**<br><br>Hearing Date: December 13, 2024<br>Time: 9:30 a.m.<br>Place: Courtroom 8C<br>Judge: Hon. Dolly M. Gee |

I, Daniel Low, declare as follows:

1. I am a Partner with Kotchen & Low LLP and represent Plaintiffs and the Class in the above-captioned matter. I am over the age of eighteen. The facts set forth herein are within my personal knowledge or knowledge gained from review of the pertinent documents. I present this Declaration in support of Plaintiffs' Motion for Award of Interim Fees and Expenses.

## EDUCATION AND EXPERIENCE

2. I have been licensed to practice law in California since 2001, and in Washington, DC since 2005. I remain in good standing in both states and have never been disciplined by either bar.

3. I am admitted in the federal district courts for, *inter alia*, the Central, Eastern, Northern, and Southern Districts of California, and the District of Columbia. I am admitted in the U.S. Courts of Appeals for the Fourth, Sixth, Ninth, Tenth, and D.C. Circuits, and am also admitted in the U.S. Supreme Court.

4. I attended Yale Law School, where I was an editor on The Yale Law Journal, and graduated in 2001. I received my undergraduate degree *summa cum laude* from U.C. Berkeley.

5. From 2001 to 2002, I clerked on the Tenth Circuit Court of Appeals for Chief Judge Deanell Tacha. From 2002 to 2004, I worked in the U.S. Department of Justice Civil Rights Division as a Trial Attorney. From 2004 to 2007, I worked at Boies, Schiller & Flexner LLP, where I worked on complex commercial litigation matters alongside Daniel Kotchen. From 2007 to 2008, I clerked for the Supreme Court of Guam. In 2008, Daniel Kotchen and I founded Kotchen & Low LLP ("K&L"), where we have focused on class action litigation, including employment discrimination and antitrust price-fixing.

6. K&L has served as class counsel in a number of class or collective action lawsuits, including:

 a. *Heath v. Google, Inc.*, No. 5:15-cv-01824 (N.D. Cal.) (age discrimination collective action on behalf of 227 class members that settled for $11 million);

b. *Buchanan v. Tata Consultancy Services, Ltd.*, No. 4:15-1696-YGR (N.D. Cal.) (pattern or practice discrimination case alleging favoritism towards South Asians and Indians, tried to a jury);

c. *In re Wholesale Grocery Antitrust Litigation*, MDL 2090 (D. Minn.) (antitrust market allocation case that settled for $8.75 million);

d. *In re Delta / AirTran Baggage Fee Antitrust Litigation*, MDL 20989 (N.D. Ga.) (class action price-fixing lawsuit in which a class of millions of class members was certified);

e. *In re McKesson Governmental Entities Average Wholesale Price Litigation*, No. 08-cv-10843-PBS (D. Mass.) (RICO lawsuit in the pharmaceutical industry that settled for $82 million);

f. *Mr. Dee's Inc. v. Inmar, Inc.*, No. 1:19CV00141 (M.D.N.C.) (certified class action involving price fixing and market allocation, awaiting trial);

g. *Palmer v. Cognizant Tech. Sols. Corp.*, No. 2:17-cv-0648 (C.D. Cal. Oct. 27, 2022) (pattern or practice discrimination case alleging favoritism towards South Asians and Indians, jury verdict in favor of Plaintiffs and the class); and

h. *Meyenhofer v. Larsen & Toubro Infotech Ltd.*, No. 19-CV-9349 (S.D.N.Y.) (certifying class of approximately 460 individuals for purposes of $4.65 million settlement).

7. I have served as first or second chair in several trials.

8. I have served as lead counsel in several appeals. For example, I successfully briefed and argued *Rajaram v. Meta Platforms, Inc.*, 105 F.4th 1179 (9th Cir. 2024), in which the Ninth Circuit held that 42 U.S.C. § 1981 extends to U.S. citizens alleging citizenship discrimination, creating a circuit split on the issue.

## **BILLING RECORDS**

9. I am a custodian of records for K&L. I have knowledge of the process utilized by K&L in keeping and maintaining billing records. A true and correct copy of K&L's

billing records in this case are attached as Exhibits 1 and 2. K&L created these billing records at or near the time the activities described therein were performed and these records were created and kept in the ordinary course of business. Exhibit 1 calculates fees based on 2024 hourly rates, whereas Exhibit 2 calculates fees based on historical rates, adjusted based on the prime rate to account for the delay in payment. Based on current rates, the total fees are $12,568,480 for K&L plus $103,455 for Yadegar, Minoofar & Soleymani, LLP, for a combined total of $12,671,935.

10. Based on historical rates plus interest at the prime rate, the total fees are similar: $12,016,810 for K&L and $104,545 for Yadegar, Minoofar & Soleymani, LLP, for a combined total of $12,121,355. In applying prime rate interest, I first calculated the average annual prime interest rate for each year from 2018 to present. I then calculated how much one dollar of fees incurred in a given year would increase to with interest for each year, compounding annually through the end of 2024. For example, for fees incurred in 2017, interest from 2018 to 2024, compounded annually, meant that $1 in fees would be increased to $1.45, or a 45% increase. I calculated fees incurred each year based on historical billing rates, then multiplied by the relevant percentage increase for the year in which the fees were incurred.

11. The rates reflected in the billing records are the standard hourly rates that K&L would charge fee-paying clients for similar hourly matters. Five timekeepers who billed time to the case for K&L are no longer employed by K&L, namely Michael von Klemperer, Amy Roller, Karishma Shah, Stephen Cobb, and David Schifrin. When calculating rates for attorneys who have left the firm, courts can "use either current rates for attorneys of comparable ability or experience or historical rates coupled with a prime rate enhancement." *In re: Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994). At the time of their billings, all five of those attorneys were associates at K&L, but some have been promoted by their new employers.

12. Attached hereto as Exhibit 3 are resumes and/or website bios of each timekeeper. For former employees, the resumes are those provided at the time of their

applications to K&L (with personal information removed). Plaintiffs' calculations in Exhibit 1 rely on current rates for comparable attorneys, which I believe to be conservative. For example, David Schifrin has been promoted by his subsequent employer to Partner, and his market billing rate as a partner is much higher than the rate used here.

13. In preparing the fee motion in this case, I have studied hourly rates approved as reasonable by courts in this District, the rates listed in the Laffey Matrix, and the rates in the 2023 Real Rate Report. The Laffey Matrix is "a widely recognized compilation of attorney and paralegal rates based on various levels of experience." *Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc.*, 731 F. Supp. 2d 937, 948 (N.D. Cal. 2010). Some courts have found it appropriate to modify the Laffey Matrix rates for the local market by adjusting based on "federal locality pay differentials based on federally compiled cost of living data." *Id.*; *accord Langer v. Dodaiton, Inc.*, No. CV 14-00372-MMM(JEMx), 2015 U.S. Dist. LEXIS 64805, at *37 (C.D. Cal. May 18, 2015) (adjusting Laffey Matrix based on locality pay adjustment); *Young v. Polo Retail, LLC*, No. C-02-4546, 2007 U.S. Dist. LEXIS 27269, at *20-21 (N.D. Cal. Mar. 28, 2007) (same).

14. The rates in the Laffey Matrix are available at http://www.laffeymatrix.com/see.html. The below chart compares the billing rates of Plaintiffs' attorneys to the billing rate in the Laffey Matrix for an attorney of comparable experience:

| Timekeeper | Title | Admitted (Years) | Laffey Rate | Rate | Difference | % Difference |
|---|---|---|---|---|---|---|
| Kotchen & Low LLP | | | | | | |
| Daniel Kotchen | Partner | 1998 (26) | $1141 | $1060 | $81 | 7.1% |
| Daniel Low | Partner | 2001 (23) | $1141 | $1055 | $86 | 7.5% |
| Mark Hammervold | Counsel | 2013 (11) | $948 | $800 | $148 | 15.6% |
| Lindsey Grunert | Counsel | 2014 (10) | $839 | $750 | $89 | 10.6% |
| Amanda Burns | Associate | 2014 (10) | $839 | $725 | $114 | 13.6% |
| Mike von Klemperer | Counsel | 2013 (11) | $948 | $800 | $148 | 15.6% |
| Amy Roller | Senior Associate | 2016 (8) | $839 | $675 | $164 | 19.5% |
| Stephen Cobb | Trial Attorney | 2016 (8) | $839 | $675 | $164 | 19.5% |

| Timekeeper | Title | Admitted (Years) | Laffey Rate | Rate | Difference | % Difference |
|---|---|---|---|---|---|---|
| David Schifrin | Partner | 2017 (7) | $581 | $650 | -$69 | -11.9% |
| Karishma Shah | Associate | 2020 (4) | $581 | $515 | $66 | 11.4% |
| | | | | | | |
| Yadegar, Minoofar & Soleymani, LLP | | | | | | |
| Navid Yadegar | Partner | 1999 (25) | $1141 | $950 | $191 | 16.7% |
| Navid Soleymani | Partner | 2001 (23) | $1141 | $950 | $191 | 16.7% |

This chart reflects that, with one exception, Plaintiffs' attorneys are billed below the Laffey rate by 7.1% to 19.5%.

15. The only attorney whose billing rate is higher than the Laffey rate is David Schifrin, who graduated with honors from Georgetown Law, has 7 years' experience, was promoted to partner in 2024 by Hollingsworth LLP—a litigation firm in Washington, DC, and whose Laffey rate with one more year of experience would be $839 (for attorneys with 8 to 10 years' experience) rather than $581 (for attorneys with 4 to 7 years' experience). *See* Laffey Matrix, http://www.laffeymatrix.com/see.html. Mr. Schifrin's $650 billing rate is 43.9% *lower* than the 2023 Real Rate Report third quartile rate for partners in Los Angeles, $1,159, as discussed below, suggesting that his rate in this case is substantially below the prevailing market rate. He also billed the lowest number of hours to the case (34.5) of any timekeeper.

16. The below lists the current Laffey Matrix rates, and calculates adjusted rates incorporating a locality pay adjustment for Los Angeles compared to Washington, DC:

| | | Years Out of Law School | | | | |
|---|---|---|---|---|---|---|
| Year | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/24-5/31/25 | $258 | $473 | $581 | $839 | $948 | $1141 |
| Adjusted Rate | $265 | $485 | $596 | $861 | $972 | $1170 |

The locality pay adjustment for Los Angeles is 35.84% compared to 33.26% in the Washington, DC area, or a positive difference of 2.58%. *Compare* Salary Table 2024-LA, *available at* https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/24Tables/html/LA.aspx ("Locality Payment of 35.84%" for L.A.), *with* Salary Table 2024-DCB, Washington-Baltimore-Arlington, *available at* https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/24Tables/html/DCB.aspx ("Locality Payment of 33.26%" for D.C.).

17. The chart in paragraph 13, *supra*, compared the billing rates being used to the equivalent unadjusted rate in the Laffey Matrix. The below chart compares Plaintiffs' billing rates to the Laffey Matrix rates with the 2.58% adjustment:

| Timekeeper | Title | Admitted (Years) | Adjusted Laffey Rate | Rate | Difference | % Difference |
|---|---|---|---|---|---|---|
| Daniel Kotchen | Partner | 1998 (26) | $1170 | $1060 | $110 | 9.4% |
| Daniel Low | Partner | 2001 (23) | $1170 | $1055 | $115 | 9.9% |
| Mark Hammervold | Counsel | 2013 (11) | $972 | $800 | $172 | 17.7% |
| Lindsey Grunert | Counsel | 2014 (10) | $861 | $750 | $111 | 12.9% |
| Amanda Burns | Associate | 2014 (10) | $861 | $725 | $136 | 15.8% |
| Mike von Klemperer | Counsel | 2013 (11) | $972 | $800 | $172 | 17.7% |
| Amy Roller | Senior Associate | 2016 (8) | $861 | $675 | $186 | 21.6% |
| Stephen Cobb | Trial Attorney | 2016 (8) | $861 | $675 | $186 | 21.6% |
| David Schifrin | Partner | 2017 (7) | $596 | $650 | -$54 | -9.1% |
| Karishma Shah | Associate | 2020 (4) | $596 | $515 | $81 | 13.6% |
| | | | | | | |
| <u>Yadegar, Minoofar & Soleymani, LLP</u> | | | | | | |
| Navid Yadegar | Partner | 1999 (25) | $1170 | $950 | $220 | 18.8% |
| Navid Soleymani | Partner | 2001 (23) | $1170 | $950 | $220 | 18.8% |

Based on the adjusted Laffey rate, with the exception of Mr. Schifrin, Plaintiffs' rates are 9.4% to 21.6% lower.

18. Another relevant benchmark is the Real Rate Report, which is prepared and published by Wolters Kluwer. It "is based on actual legal billing, matter information, and paid and processed invoices from more than 90 companies — not just on posted or advertised rates." *Vogel v. MS Food Servs.*, No. 16-cv-8433 DSF, 2018 WL 11027947, at *3 (C.D. Cal. Dec. 26, 2018). The 2023 version of the Real Rate Report (excerpts of which are attached as Ex. 4) is based on "$160B+ in anonymized legal data" from "corporations' and law firms' e-billing and time management solutions." Ex. 4 at 4. Real Rate Reports have been relied on by courts in determining the reasonableness of hourly rates. *See, e.g.*, *French v. City of L.A.*, No. EDCV 20-00416 JGB (SPx), 2022 U.S. Dist. LEXIS 111194, at *52 (C.D. Cal. May 10, 2022) ("this Court has found that the [2021] Real Rate Report provides a helpful reference point and consults it here," citing Report's Third Quartile rates); *RG Abrams Ins. v Law Offices of C.R. Abrams*, 342 F.R.D. 461, 524 n.13 (C.D. Cal. 2022); *Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, No. CV 16-03157-PSG(JEMx), 2024 U.S. Dist. LEXIS 167594, at *12 (C.D. Cal. Sep. 17, 2024).

19. In the 2023 Real Rate Report, the third quartile hourly rate in Los Angeles for litigation was $1,159 for partners and $880 for associates, as reflected in the following excerpt:

**Section I: High-Level Data Cuts — Cities By Matter Type**

**2023 - Real Rates for Associate and Partner — Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2023 | 2022 | 2021 |
|---|---|---|---|---|---|---|---|---|---|
| Los Angeles CA | Litigation | Partner | 302 | $525 | $840 | $1,159 | $867 | $815 | $739 |
| | | Associate | 353 | $431 | $680 | $880 | $674 | $650 | $606 |

2023 Real Rate Report at 16; *accord Grey Fox*, 2024 U.S. Dist. LEXIS 167594, at *12 (citing 2023 Real Rate Report third quartile rates for litigation attorneys in Los Angeles).

20. Plaintiffs' hourly rates are lower than the 2023 Real Rate Report third quartile rates by 8.5% to 43.9%, as follows:

| Timekeeper | Title | Admitted (Years) | Real Rate Report | Rate | Difference | % Difference |
|---|---|---|---|---|---|---|
| <u>Kotchen & Low LLP</u> | | | | | | |
| Daniel Kotchen | Partner | 1998 (26) | $1159 | $1060 | $99 | 8.5% |
| Daniel Low | Partner | 2001 (23) | $1159 | $1055 | $104 | 9.0% |
| Mark Hammervold | Counsel | 2013 (11) | $880 | $800 | $80 | 9.1% |
| Lindsey Grunert | Counsel | 2014 (10) | $880 | $750 | $130 | 14.8% |
| Amanda Burns | Associate | 2014 (10) | $880 | $725 | $155 | 17.6% |
| Mike von Klemperer | Counsel | 2013 (11) | $880 | $800 | $80 | 9.1% |
| Amy Roller | Senior Associate | 2016 (8) | $880 | $675 | $205 | 23.3% |
| Stephen Cobb | Trial Attorney | 2016 (8) | $880 | $675 | $205 | 23.3% |
| David Schifrin | Partner | 2017 (7) | $1159 | $650 | $509 | 43.9% |
| Karishma Shah | Associate | 2020 (4) | $880 | $515 | $365 | 41.5% |
| | | | | | | |
| <u>Yadegar, Minoofar & Soleymani, LLP</u> | | | | | | |
| Navid Yadegar | Partner | 1999 (25) | $1159 | $950 | $209 | 18.0% |
| Navid Soleymani | Partner | 2001 (23) | $1159 | $950 | $209 | 18.0% |

21. In preparing the fee application in this case, I have studied fees that courts in this district have found reasonable. Plaintiffs' rates are lower than many of the rates that have been approved in this district. *See, e.g.*, *Grey Fox*, 2024 U.S. Dist. LEXIS 167594, at *12 (citing $1,159 third quartile hourly rate for litigation partners in Los Angeles and $880 for associates in 2023 Real Rate Report in approving fees based on plaintiffs' billing rates that mostly fell at or below those rates, including a small litigation firm that billed up to $1450 for partners and $875 for associates);[1] *Zelaya v. City of L.A.*, No. 2:20-cv-

---

[1] Billing rates grew approximately 6.5% in 2024 compared to 2023. *See Law Firm Rates in 2024*, Thomson Reuters (Sept. 17, 2024), *available at* https://www.thomsonreuters.com/en-us/posts/legal/law-firm-rates-report-2024/. With a

08382-ODW(MAAx), 2024 U.S. Dist. LEXIS 112652, at *6-7 (C.D. Cal. June 25, 2024) (finding reasonable $1,300 rate for experienced civil rights attorney); *N.T.A.A. (No. Talk All Action), Inc. v. Nordstrom, Inc.*, No. 2:21-cv-00398 DDP-AGRx, 2024 U.S. Dist. LEXIS 72914, at *13-14 (C.D. Cal. Apr. 19, 2024) (finding reasonable partner rates from $848 to $1,364.70 and associate rates from $565 to $808) (collecting cases); *Sandra P. v. O'Malley*, No. CV 20-6687-KS, 2024 U.S. Dist. LEXIS 49845, at *6 (C.D. Cal. Feb. 12, 2024) ("the Central District of California has frequently found reasonable fees with effective hourly rates [for combined attorney and paralegal time] exceeding $1,000") (collecting cases); *Yuga Labs, Inc. v. Ripps*, No. CV 22-04355-JFW(JEMx), 2024 U.S. Dist. LEXIS 24303, at *7-12 (C.D. Cal. Jan. 11, 2024) (finding reasonable 2023 rates ranging from $1,240 to $1,410 for partners, and $640 to $1,185 for associates); *Valenzuela v. City of Anaheim*, No. SACV 17-278-CJC-DFMx, 2023 U.S. Dist. LEXIS 32012, at *10 (C.D. Cal. Feb. 23, 2023) (finding $1,075 hourly rate in 2023 reasonable for attorney with eighteen years of experience).

22. Thus, to the best of my knowledge, after a reasonable inquiry, the rates reflected in Plaintiffs' counsel's billing records are comparable to or less than the market rates customarily charged for complex litigation matters by lawyers of comparable skills, experience, and reputation in the Central District of California.

23. K&L billed over 15,000 hours on this case. Throughout my involvement in this case, I tried to ensure that tasks were conducted efficiently, without unnecessary duplication of effort, and at minimal expense. Because K&L was not being paid by the hour, and recovery was uncertain, counsel had an incentive to conduct their efforts efficiently. All of the time I am claiming, and to the best of my knowledge, all of the time K&L is claiming, was reasonably devoted to advancing the interests of Plaintiffs and the class, and would have been billed to a fee-paying client. In the exercise of billing judgment, I and other attorneys have excluded hours that were not clearly billable.

---

6.5% upward adjustment, the third quartile rates referenced in the 2023 Real Rate Report would be $1,234 for partners and $937 for associates in 2024.

24. I did not bill all of the time I expended on this case. For example, I did not bill for tasks that could have been performed by a paralegal or administrative time related to this case. On many occasions, I did not record time for reviewing emails or conferring with other K&L attorneys if those tasks took a short amount of time. Although K&L does not have a full-time paralegal, K&L has employed part-time contractors on this case on a project basis who have performed paralegal-level work on this case. K&L has not included the billings for those individuals in this fee request.

25. In preparing this submission, I exercised billing judgment and removed (and instructed others to remove) a number of hours billed to this case by myself and other attorneys. These totaled dozens of hours.

26. A number of hours that I and other K&L attorneys incurred in connection with this case would have been unnecessary if not for Cognizant's litigation tactics. For example, I took a Rule 30(b)(6) deposition related to document preservation issues, and Cognizant's counsel did not properly prepare the witness and made numerous improper objections and gave numerous improper instructions not to answer, impeding the deposition. As a result, I was forced to draft a motion to reopen the deposition and for sanctions, which was granted in part. *See* Dkt. 180 at 20 ("the Court determines that defendants underprepared Mr. Fullerton for his deposition, and that defendants' counsel's conduct at the deposition further impeded, delayed or frustrated the fair examination of Mr. Fullerton."). In addition, I spent a significant number of hours preparing to cross-examine Cognizant's expert economist at trial because Cognizant listed him on its witness list at both trials, and during the first trial, included him on their list of upcoming witnesses, but Cognizant did not call him to testify at either trial.

## RECORDS OF EXPENSES

27. I have knowledge of the process utilized by K&L in keeping and maintaining records of expenses and am a custodian of expense records. K&L uses cloud accounting software, Xero, for tracking expenses. In the accounting software, each expense reflected in K&L's online bank statement is imported electronically, and then categorized by case,

e.g., *Palmer v. Cognizant* (or categorized as an internal K&L administrative expense), and by expense category, and a description of each expense is entered. The software allows reports to be created and exported, such as a report of expenses by case.

28. K&L has a policy of maintaining invoices and receipts electronically on a shared drive folder. For expenses incurred by individual K&L attorneys, expense reports are created through expense reporting software, Expensify, for reimbursement. The Expensify software creates expense reports that include individual line items. Consistent with IRS requirements, Expensify does not require receipts for expenses of less than $75 if the expenses are reflected in a credit card billing statement. (Credit card expenses can be imported electronically into Expensify). Reimbursements made through Expensify are reflected in K&L's Xero accounting software.

29. A report of expenses incurred in this case that are reflected in K&L's accounting software, totaling $587,570.39, is attached as Exhibit 5. A spreadsheet of additional expenses incurred in this case, totaling $35,554.19, is attached as Exhibit 6. These include expenses that have been incurred but not yet paid (including an invoice from Dr. Hira that was not received until November 9, 2024, and a check that has been issued but not yet cashed for travel expenses), and the portion of eDiscovery and electronic research expenses incurred by K&L that are allocable to this case based on usage.[2] Mark Hammervold has incurred $4683.57 in expenses that have not been reimbursed by K&L. The combined total of Plaintiffs' expenses incurred in this case is $627,808.15.

30. I calculated interest on the expenses that K&L has paid or reimbursed at the prime rate, using the average prime rate for each year. For the year in which expenses were incurred, I calculated interest based on the number of days remaining in that year after the expense was paid. I then calculated the amount of the expense, with interest, for each year through the end of 2024. The interest totals $88,722.63. Ex. 5. With interest, Plaintiffs' total expenses amount to $716,530.78.

---

[2] For eDiscovery expenses, K&L allocated expenses based on the amount of data uploaded and stored to K&L's eDiscovery platform.

31. By far, the largest category of expenses incurred by K&L for this case are professional fees, totaling almost $500,000, which mainly consist of fees for expert witnesses and consultants, and also include court reporting fees and process server fees. Ex. 20 at 7-8. Plaintiffs retained two testifying experts, economist Dr. Philip Johnson, and industry expert Dr. Ronil Hira. Plaintiffs had initially retained labor economist Dr. David Neumark for this case, and he performed some preliminary work, but he was unavailable to serve as the testifying expert in this case, which led Plaintiffs to retain Philip Johnson and his firm, Econ One. Employstats served as a consulting expert and performed statistical analysis at the direction of Dr. Johnson. Plaintiffs also retained a consulting expert who is an industry expert and conducted investigation at the direction of Plaintiffs' counsel. Invoices from experts retained by K&L in this case are attached as Exhibits 7 (Johnson), 8 (Hira), 9 (consulting experts including Neumark), 10 (mediator).[3]

32. Cognizant's expert witness was compensated at a rate of $1,100 an hour in 2022. Dkt. 272-2 ¶ 7. By comparison, Dr. Johnson and Dr. Hira's billing rates were reasonable—$575 and $250 per hour in 2022, respectively. Dkt. 255-2 ¶ 3; Dkt. 255-94 ¶ 2.

33. Plaintiffs had one jury consultant at trial, compared to Cognizant's two. Trial Tr. 5:19-22 (Sept. 24, 2024). Plaintiffs' jury consultant billed $395 an hour in 2023 and $500 in 2024. Plaintiffs' consultant industry expert billed $180 an hour. Exhibit 11.

34. Travel expenses in the case total slightly over $100,000, including meals. These expenses include travel for K&L attorneys for depositions, hearings, and trial, along with trial travel expenses for the named Plaintiffs, witnesses, experts, and consultants. For example, Plaintiffs spent slightly over $20,000 on hotel rooms and a conference room for witnesses and attorneys for the duration of each trial, or over $40,000 for both trials. The

---

[3] Because some expert witness or consultant invoices included travel expenses, those travel expenses are included within the category of professional fees. Other expert or consultant travel expenses were paid directly by K&L or billed separately and appear under travel expenses.

hotel room rate was a reasonable $149 per night plus taxes for the first trial, and $184 per night plus taxes for the second trial. Travel expense reports and other travel receipts are attached as Exhibit 12. Receipts for other case expenses are attached as Exhibits 13 (eDiscovery), 14 (filing fees), 15 (legal research), 16 (printing, copying, postage, or process servers), 17 (trial supplies), and 18 (court reporters).

35. Expenses broken down by category are attached as Exhibit 20.

## UNDESIRABILITY OF THE CASE AND PRECLUSION OF OTHER EMPLOYMENT

36. Several aspects of this case have made it undesirable to litigate. Plaintiffs' counsel has invested substantial time, effort, and resources—over 15,000 hours, over 7.5 years, and over $625,000—to this litigation without compensation. I anticipate that this litigation will continue to require substantial investments of time, effort, and resources.

37. When Plaintiffs' counsel undertook this matter, there was a substantial risk of non-recovery for Plaintiffs' counsel. Class actions are risky because there was a possibility that Plaintiffs would not prevail at class certification or would not prevail on the merits at summary judgment or trial. For example, K&L has litigated similar pattern or practice discrimination cases alleging favoritism towards Indians, and lost on class certification. *Phillips v. Wipro, Ltd.*, No. 4:18-CV-821, 2022 U.S. Dist. LEXIS 241747 (S.D. Tex. Mar. 14, 2022); *Handloser v. HCL Techs. Ltd.*, No. 19-CV-01242-LHK, 2021 U.S. Dist. LEXIS 45183 (N.D. Cal. Mar. 9, 2021). Because of the resources required for these types of cases, they are generally uneconomical to litigate on an individual basis when class certification is denied. K&L litigated another matter, *Slaight v. Tata Consultancy Services*, that resulted in a defense verdict at trial, and an appeal resulted in an affirmance in a split decision. 842 F. App'x 66 (9th Cir. 2021).

38. Some of the named Plaintiffs in this case were counter-sued by Cognizant in New Jersey because they preserved documents for use in this litigation, as instructed by the EEOC and as required by law. *Cognizant Tech. Sols. Corp., v. Franchitti*, No. 21-cv-16937 (D.N.J.). In order to ensure that those Plaintiffs were willing to continue with this

litigation, K&L felt obligated to defend them in that litigation, which is ongoing and has caused counsel to incur a lodestar of $810,073.50, Ex. 19, and expenses of $3702.55.

39. In my experience and understanding, desirable class action lawsuits often lead to copycat lawsuits, with the most desirable cases sometimes leading to dozens of copycat lawsuits being filed and consolidated through the Judicial Panel on Multidistrict Litigation. I have appeared before that panel in connection with two such cases. There have been zero copycat lawsuits that I am aware of that have been filed by other plaintiffs' counsel making similar allegations to what Plaintiffs allege in this case. For example, other plaintiffs' counsel could have brought a copycat lawsuit against Cognizant for the time period after the class in this case was certified, or lawsuits against other companies in the industry with similar business practices, but they have not done so. One reason is the risk of costly and protracted litigation, which is a near certainty given Cognizant's demonstrated tactics of delay and obstruction, and stated commitment to dedicating an army of resources to a prolonged remedial phase.

40. K&L's work on this case has prevented K&L from undertaking other matters. For example, K&L is contacted on a regular basis by potential clients regarding potential class action employment discrimination claims and individual claims. K&L has a limited capacity to litigate and fund cases, and is forced to turn down potential clients on a regular basis because of those limitations. K&L has devoted over seven years, over 15,000 hours, and approximately $600,000 to litigating this case. If those resources had been freed up for other matters, K&L would have been able to take on additional cases, including putative class action lawsuits. When K&L is unable to take on such representation, K&L typically encourages the potential client to find another attorney to represent them. But other attorneys have not filed such class action lawsuits, which are undesirable cases.

41. Similarly, K&L's work on this case has precluded billable hourly work. For example, on September 10, 2024, I was contacted by a potential client that wanted to retain K&L to perform hourly billable work. After I informed the potential client that K&L

would be unable to begin the work for close to a month because of trial preparation and trial, the potential client decided not to retain K&L.

42. Plaintiffs had difficulty locating local counsel willing to handle this matter on a contingency basis because of the undesirability of the case. For example, on November 15, 2017, I contacted a professional acquaintance who is a named partner at a small Los Angeles firm that specializes in class actions and employment law about serving as local counsel, but he declined representation after expressing concern about the anticipated difficulty of the case. K&L posted on an attorney listserv seeking local counsel, and emailed about a dozen firms about serving as local counsel before Yadegar, Minoofar & Soleymani LLP finally agreed to serve as local counsel on December 7, 2017.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: November 15, 2024                     By: s/Daniel Low