Daniel Low, SBN 218387
dlow@kotchen.com
Daniel Kotchen (*pro hac vice*)
dkotchen@kotchen.com
Lindsey Grunert (*pro hac vice*)
lgrunert@kotchen.com
Amanda Burns (*pro hac vice*)
aburns@kotchen.com
Mark Hammervold (*pro hac vice*)
mhammervold@kotchen.com
**KOTCHEN & LOW LLP**
1918 New Hampshire Ave. NW
Washington, DC 20009
Telephone: (202) 471-1995
Fax: (202) 280-1128

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CHRISTY PALMER, VARTAN PIROUMIAN, BRIAN COX, and JEAN-CLAUDE FRANCHITTI,<br><br>Plaintiffs,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION,<br><br>Defendants. | CASE NO. 17-CV-6848 DMG (GJSx)<br><br>**DECLARATION OF DANIEL LOW IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR AWARD OF INTERIM FEES AND EXPENSES**<br><br>Hearing Date: January 10, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 8C<br>Judge: Hon. Dolly M. Gee |

I, Daniel Low, declare as follows:

1. I am a Partner with Kotchen & Low LLP ("K&L") and represent Plaintiffs and the Class in the above-captioned matter. I am over the age of eighteen. The facts set forth herein are within my personal knowledge. I present this Declaration in support of Plaintiffs' Reply in Support of Their Motion for Award of Interim Fees and Expenses.

## BILLING RECORDS

2. In response to the concerns raised by Cognizant in its opposition brief, K&L has revised its fee spreadsheet to, e.g., correct computational errors; provide additional details; and remove time entries in the exercise of billing judgment. I reviewed my own time entries and those of former employees. While I found a number of computational errors, which I corrected, the errors tended to undercount rather than overcount hours. I searched K&L's fee spreadsheet for billing entries related to "hiring" or "promotions" and ensured that such time entries were removed.

3. Cognizant suggested in its opposition brief that Plaintiffs only eliminated 60 hours from their time records as a matter of billing judgment. I compared the original time entries of Plaintiffs' attorneys to the hours in the revised spreadsheet, and found that over 500 hours have been removed. In addition, I estimate that I under-recorded my own time by approximately 100 hours.

4. A revised fee spreadsheet is attached as Exhibit A. Plaintiffs' fees on the revised spreadsheet amount to $12,614,367, including both fees for both K&L and Yadegar, Minoofar & Soleymani, LLP.

5. In revising his time entries and changing initials to names, Daniel Kotchen informed me that he came across a number entries related to communications with MH, which he realized referred to Matthew Henken, who was a Partner at K&L from approximately January through May 2021. *See* https://www.linkedin.com/in/matthew-henken-03794086/. Plaintiffs overlooked his time in their initial submission, partly because it was saved in the wrong subfolder on K&L's server. Henken is a 2004 graduate of Yale Law School who received a Ph.D. from UC-Berkeley in 1997. He worked for the

1  law firm Boies Schiller Flexner LLP from September 2004 to December 2020. Henken
2  billed a total of 70.3 hours to the case. At an hourly rate of $1025, his total lodestar is
3  $72,057.50. A copy of his billing records is attached as Exhibit B. To account for the
4  belated production of the time records, and that some of his time entries could be
5  considered block billing, Plaintiffs will reduce their request for his time by 20% to
6  $57,646. *Cf. Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (vacating
7  district court's 20% reduction for block billing that was applied across-the-board instead
8  of only to specific time entries that were block billed).

9        6.    Plaintiffs have incurred additional time on this case after the preparation of
10 the fee spreadsheet submitted with Plaintiffs' opening brief. A spreadsheet with that
11 additional time is attached as Exhibit C, and totals $243,540.

12       7.    Plaintiffs' total fees are $12,915,553, which includes the fees from Exhibits
13 A, B, and C.

14       8.    Plaintiffs will not be compensated until 2025, but Plaintiffs' fee calculations
15 use 2024 billing rates because the hearing on the fee motion was originally scheduled for
16 2024 before Cognizant requested a delay. Courts have recognized that, to compensate for
17 a delay in payment, fees should be awarded at current hourly rates, or historical rates plus
18 interest based on the prime rate. *Fischel v. Equitable Life Assurance Soc'y of the United
19 States*, 307 F.3d 997, 1010 (9th Cir. 2002). The current prime rate is 7.75%. *See*
20 https://www.wsj.com/market-data/bonds/moneyrates. Anticipated law firm billing rates
21 for 2025, including K&L's rates, are expected to increase more than 7.75%. *See* Valeo
22 Partners, 2025 Attorney Rate-Setting Trends ("we gather hourly rate data from hundreds
23 of public sources"), *available at* https://www.valeopartners.com/wp-
24 content/uploads/2024/06/Valeo-Partners-2025-Attorney-Rate-Setting-Trends.pdf
25 (reporting that hourly billing rates are expected to grow 9-12% for partners and 8-11% for
26 associates at large firms). Applying a 7.75% interest rate to Plaintiffs' $12,915,553 in fees
27 results in total fees of $13,916,508 based on lodestar.
28

## APPORTIONMENT

9.  Cognizant argues that Plaintiffs should apportion their fees to account for: (1) the denial of a motion to decide disparate impact; (2) the partial denial of class certification; and (3) the hung jury during the first trial. While Plaintiffs believe each of those categories of time are fully compensable, I have attempted to apportion that time in the alternative.

10. First, I have prepared a spreadsheet of time related to the motion to decide disparate impact (Dkt. 603), and reply in support (Dkt. 611), which is attached as Exhibit D. The time spent on those two briefs totals $72,718. Ex. D.

11. Second, Plaintiffs have removed time entries that are specifically related to hiring or promotion. I reviewed Plaintiffs' motion for class certification, and found that Plaintiffs devoted only one page of their 35-page class certification motion exclusively to hiring, or approximately 3% of that motion. Dkt. 255-1 at 23:22-24:16, 27:1-2. While a larger percentage of the class certification reply was dedicated to hiring, it was still a fraction of the reply brief. Considering that all of the briefing on the motion to decide disparate impact totaled $72,718, I would estimate that the fees related to the hiring portion of class certification briefing amounted to less than $50,000, and likely significantly less.

12. Third, the first trial took place from June 13-26, 2023. I have prepared a spreadsheet of K&L's billings from June 13-26, 2023, which is attached as Ex. E. Those billings total $582,655.

## RECORDS OF EXPENSES

13. Cognizant raised concerns about the expense of a post-trial group dinner at an upscale restaurant. In my experience and understanding, a post-trial group dinner at an upscale restaurant is traditional and appropriate to bill to a fee-paying client in appreciation of the attorneys' hard work at trial. The meal, $723.27, was consistent with what I believe would be appropriate to bill a client, and K&L's other meals during trial were much more modest. Nonetheless, in response to the concerns raised by Cognizant,

Plaintiffs are reducing the challenged meal expense by 50% ($361.64), reducing Plaintiffs' total expenses from $716,530.78 (Dkt. 688-1 ¶ 30) to $716,122.51 (a slightly larger reduction after accounting for interest).

## HARDSHIP AND PRECLUSION OF OTHER EMPLOYMENT

14. If K&L were not awarded fees until the final resolution of this matter, it would impose a significant hardship on K&L, which anticipates that it will need to devote substantial resources to Phase Two of this case, and understands that Phase Two could continue for a substantial period of time. Denial of interim fees would also discourage K&L from bringing similar suits until after this case is resolved, as it would increase the expected risk of extended financial drain from such cases, and reduce the resources available to K&L.

15. K&L's attorneys are busy and have very limited excess capacity. This litigation has occupied over 15,000 hours of their time, and if not for this case, K&L would have devoted that time to other employment. If K&L had devoted their resources to billable matters or other successful contingency matters, K&L would have hired additional associates, which would have allowed them to take on additional matters. *Cf. Leuzinger v. Cty. of Lake*, No. C 06-00398 SBA, 2009 U.S. Dist. LEXIS 29843, at *29-30 (N.D. Cal. Mar. 27, 2009) (awarding 2.0x multiplier partly based on preclusion of other employment).

16. At times, this case has required the bulk of K&L's resources, including during both two-week trials, and during the more intense periods of discovery and briefing. For example, in January and February 2022, Cognizant made 17 productions of ESI totaling 371,973 documents as part of Cognizant's "migration glitch" supplemental productions. Because fact discovery was set to close on April 22, 2022, K&L had to review documents very quickly to be able to arrange several depositions related to the documents and drafted a joint letter brief to move to compel the reopening of a deposition. This intense litigation work in similar to an enhancement case cited by Cognizant in its brief. Opp'n at 20 ("*Kelly v. Wengler*, 822 F.3d 1085, 1093, 1105 (9th Cir. 2016) (awarding

enhancement after contempt proceeding where two attorneys had only 26 days to conduct discovery, which included 'review[ing] roughly 7,000 pages of discovery,' many produced 'only five days before' or 'the first evening' of the hearing)").

17. During the seven-year course of this litigation, three of the attorneys who have worked on this matter resigned and left for other law firms. One reason for the resignations is that K&L is unable to offer market-rate salaries for its associates (though the expectation is that the associates will receive bonuses from contingency payouts to make up for the shortfall). For example, one K&L associate resigned after less than one month to accept a higher-paying position at a larger law firm that he had interviewed with around the same time as his interview with K&L. *Cf. Kelly*, 882 F.3d at 1104 (stating that a lodestar figure based on a rate insufficient to attract competent attorneys for a meritorious civil rights case is by definition not a reasonable fee).

18. In taking on this case and other contingency cases, K&L reasonably anticipates and expects to be paid a risk enhancement if it prevails, either in the form of a lodestar multiplier or a percentage of the fund award. It would be uneconomical for K&L to take on contingency cases if it received only its lodestar in cases it won, and nothing in the cases it did not win. K&L anticipates that if there is a common fund recovery in this case, it will seek a percentage of the recovery, less the amount paid as interim fees. K&L understands that in the Ninth Circuit, 25% is a commonly used benchmark for attorneys' fees in common fund cases.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: December 20, 2024                             By: s/Daniel Low